**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **THOR EQUITIES, LLC**, <br> 25 West 39th Street <br> New York, NY 10018, | : <br> : <br> : <br> : | |
| **URBANA OWNER LLC**, <br> 3040 Riverside Drive, Ste 122 <br> Columbus, Ohio 43221, | : <br> : <br> : | Case No. _____ |
| **URBANA OWNER I LLC**, <br> 3040 Riverside Drive, Ste 122 <br> Columbus, Ohio 43221, | : <br> : <br> : <br> : | Judge: _____ |
| **URBANA OWNER II LLC**, <br> 3040 Riverside Drive, Ste 122 <br> Columbus, Ohio 43221, | : <br> : <br> : <br> : | Magistrate Judge: _____ |
| and | : <br> : | **JURY DEMAND ENDORSED HEREON** |
| **HIGHLAND55 INVESTMENTS LLC**, <br> 3040 Riverside Drive, Ste 122 <br> Columbus, Ohio 43221, | : <br> : <br> : <br> : | |
| *Plaintiffs,* | : <br> : <br> : | |
| v. | : <br> : | |
| **CITY OF URBANA, OHIO**, <br> 205 S. Main Street <br> Urbana, Ohio 43078, | : <br> : <br> : <br> : | |
| **URBANA, OHIO CITY COUNCIL**, <br> 205 S. Main Street <br> Urbana, Ohio 43078, | : <br> : <br> : <br> : | |
| and | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |

**URBANA, OHIO BUILDING AND**    :
**ZONING APPEALS BOARD**,         :
205 S. Main Street               :
Urbana, Ohio 43078,              :
                                 :
                *Defendants.*     :

## COMPLAINT

Plaintiffs Thor Equities, LLC ("Thor Equities"), Urbana Owner LLC ("Urbana Owner"), Urbana Owner I LLC ("Urbana Owner I"), Urbana Owner II LLC ("Urbana Owner II"), and Highland55 Investments LLC ("Highland55") (collectively, "Thor" or "Plaintiffs"), for their Complaint against Defendants City of Urbana, Ohio, the Urbana, Ohio City Council ("City Council"), and the Urbana, Ohio Building and Zoning Appeals Board ("BZA") (collectively, "Urbana" or the "City"), aver and allege as follows:

## I.    INTRODUCTION

1.    This action arises from Urbana's unlawful effort to stop a data center that the City expressly permitted.  Over the course of more than a year, the City accepted the annexation of land into the City, rezoned that land, and specifically amended its Zoning Code to make data centers a permitted, by-right use on that land.  Through those successive and deliberate actions, the City paved the way for the development of a data center on the subject property.

2.    In reliance on those actions, Thor leveraged its experience and expertise developing data centers across the globe to design a data center fully aligned with the City's codified requirements.  Thor worked closely with City officials, including the Mayor and Planning Staff, to ensure the data center benefits Urbana, even incorporating significant infrastructure improvements for the City's benefit that were not necessary for the data center itself.  Thor then

- 2 -

invested substantial sums toward development of the project and filed a site plan application under the zoning rules in effect at the time.

3. Instead of processing Thor's application under the City's existing procedures, Urbana denied the application as "incomplete," contrary to the Zoning Code. City Council then abruptly adopted an "emergency" moratorium ("Moratorium") targeting data centers. The City used the Moratorium as a pretext to stop a project it had already authorized under its own zoning laws. But there was no lawful basis to apply the Moratorium to Thor's already-filed application and no true emergency existed under Ohio law.

4. As the Sixth Circuit has explained, once a zoning application has been filed, a city may not "enact a law retroactively, in an attempt to deny a property owner a right to the use of his property when the use of that property is in accordance with the law at the time of the property owner's application." *Golf Vill. N. LLC v. City of Powell*, 826 F. App'x 426, 433 (6th Cir. 2020) (citations omitted). "In other words, filing the application 'freezes' the zoning rules applicable to that use." *Id.* Urbana manufactured inapplicable grounds to deny Thor's application and adopted the Moratorium to indirectly do what Urbana could not do directly: change the zoning rules while Thor's application remained pending.

5. Worse, when Thor attempted to appeal the City's refusal to process the site plan application, the BZA departed from established procedures by failing to provide lawful notice, refusing to grant a continuance, conducting the hearing with insufficient board members, and disregarding all evidence presented to it. And since then, the City has introduced legislation that would permanently remove data centers as a permitted use on Thor's property. The City has

therefore arbitrarily and capriciously stonewalled Thor and deprived it of its vested right to develop its property as a data center under the zoning rules in effect at the time of filing.

6. The City's sudden about-face and unlawful "emergency" Moratorium violate not only local procedural requirements, but also fundamental protections secured by the United States and Ohio Constitutions. The City's actions have caused lost investment, delayed project timelines, impaired business relationships, and deprived the local community of jobs, tax revenue, and the benefits of planned infrastructure improvements.

7. This lawsuit seeks to restore the rule of law and vindicate Thor's vested and constitutional rights. The facts are straightforward: the City made data centers a lawful use on the subject property, Thor relied on that law, invested millions, and filed a conforming site plan application. Only then did the City attempt to change the rules and stop the project. Judicial intervention is necessary to prevent further irreparable harm and to ensure that Urbana cannot retroactively rewrite its zoning scheme to defeat a lawful application after-the-fact.

## II. PARTIES

8. Thor Equities is a Delaware limited liability company. Thor Equities has two members, both of which are New York citizens. As a result, Thor Equities is a New York citizen. Thor Equities is an applicant for the site plan with the City at issue in this case.

9. Urbana Owner is a Delaware limited liability company that is registered as a foreign limited liability company in Ohio. Urbana has a single member, a Delaware limited liability company, whose single member is a Delaware trust. The Delaware trust is a traditional trust and its trustees are citizens of New York. As a result, Urbana Owner is a citizen of New York. Urbana Owner is the contract purchaser of multiple parcels in Urbana, Ohio, including Parcel No. K48-25-11-01-36-001-00 and a portion of Parcel No. K48-25-11-01-37-001-00.

- 4 -

10.     Urbana Owner I is a Delaware limited liability company that is registered as a foreign limited liability company in Ohio.  Urbana Owner I has a single member, a Delaware limited liability company, who has a single member, another Delaware limited liability company, whose single member is a Delaware trust.  The Delaware trust is a traditional trust and its trustees are citizens of New York.  As a result, Urbana Owner I is a citizen of New York.  Urbana Owner I is the owner of Parcel No. K48-25-11-01-30-001-00.

11.     Urbana Owner II is a Delaware limited liability company that is registered as a foreign limited liability company in Ohio.  Urbana Owner II has a single member, a Delaware limited liability company, who has a single member, another Delaware limited liability company, whose single member is a Delaware trust.  The Delaware trust is a traditional trust and its trustees are citizens of New York.  As a result, Urbana Owner II is a citizen of New York.  Urbana Owner II is the owner of Parcel Nos. K48-25-11-01-30-005-00 and K48-25-11-01-30-006-00.

12.     Highland55 is a Delaware limited liability company that is registered as a foreign limited liability company in Ohio.  Highland55 has a single member, a Delaware limited liability company, who has a single member, another Delaware limited liability company, whose single member is a Delaware trust.  The Delaware trust is a traditional trust and its trustees are citizens of New York.  As a result, Highland55 is a citizen of New York.  Highland55 is the owner of Parcel No. K48-25-11-01-32-005-00.

13.     Together, Thor owns approximately 230.346 acres of property, consisting of Parcel Nos. K48-25-11-01-30-001-00, K48-25-11-01-32-005-00, K48-25-11-01-30-006-00, and K48-25-11-01-30-005-00, and is under contract to purchase Parcel No. K48-25-11-01-36-001-00 and a portion of Parcel No. K48-25-11-01-37-001-00, collectively located in Champaign County, Ohio (collectively, the "Property").

14. City of Urbana, Ohio is a chartered municipal corporation located in Champaign County, Ohio.

15. City Council is a legislative governmental body of the City of Urbana, Ohio, comprised of eight elected officials.

16. The BZA is an administrative governmental body of the City of Urbana, Ohio, comprised of five members, responsible for, among other things, hearing appeals related to decisions made by the City's Zoning Inspector.

17. In addition to the foregoing, the Attorney General of the State of Ohio is being served with a copy of this Complaint pursuant to Ohio Revised Code § 2721.12(A).

## III. JURISDICTION AND VENUE

18. This action arises under the Constitution and the laws of the United States, including 42 U.S.C. § 1983.

19. This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1367, and 28 U.S.C. § 2201.

20. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000 exclusive of interests and costs.

21. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

IV.     FACTS COMMON TO ALL CLAIMS

A.     **The City's Authority Derives from Article XVIII, Section 3 of the Ohio Constitution and Is Set Forth in the City's Charter and Zoning Code.**

22.     The City is a municipal corporation whose authority to regulate land use and enact zoning measures is limited.  The City must exercise this authority in conformity with the Ohio Constitution, the City Charter, the Zoning Code, and applicable law.

23.     Article XVIII, Section 3 of the Ohio Constitution states, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

24.     "The City shall have all powers possible for a city to have under the Constitution and laws of the State of Ohio as fully and completely as if they were specifically enumerated in this Charter."  Charter § 1.03.

25.     "All such powers [of the City] shall be exercised in the manner prescribed in this Charter, or if not prescribed herein, in such manner as shall be provided by ordinance of [City] Council, and when not prescribed in this Charter or provided by ordinance of [City] Council, then such powers shall be exercised in the manner provided by the general laws of the State of Ohio until [City] Council shall provide a different manner of exercising such powers."  Charter § 1.04.

26.     Accordingly, the City is required to exercise its zoning and legislative authority strictly in compliance with the procedures and limitations set forth in its Charter, its Zoning Code, and the general laws of Ohio.

B.     **The City Is Required to Follow Specific Procedures for Emergency Legislation and Zoning Amendments.**

27.     Pursuant to Ohio Revised Code Section 731.30, emergency ordinances must be "necessary for the immediate preservation of the public peace, health, or safety[,]" "the reasons

- 7 -

for such necessity shall be set forth in one section of the ordinance[,]" and the emergency ordinance must pass by "a two-thirds vote . . . ."

28. Charter Section 2.11 permits Urbana's City Council to adopt emergency legislation only where such legislation is "necessary for the preservation of public peace, health, welfare, or safety[.]"

29. Pursuant to Charter Section 2.11, if an ordinance or resolution is adopted as an emergency, the ordinance or resolution must "set forth and define the specific facts necessitating the emergency."

30. However, the Urbana City Council's emergency authority is limited. Charter Section 2.12 expressly prohibits the "amendment or repeal of any zoning or building resolution or ordinance" as emergency legislation and instead requires compliance with ordinary legislative procedures.

31. Charter Section 2.10 provides that any action being of a permanent nature requires three readings before passage.

32. Charter Section 2.16 states that Urbana City Council cannot "enact[]" or "amend[] . . . any zoning or building . . . resolution . . . unless the title and summary of the . . . resolution has been published in a newspaper of general circulation within the City at least 7 days before enactment by Council."

33. Zoning Code Section 1113.02 states that "Council may by ordinance after receipt of a recommendation thereon from the Planning Commission and subject to the procedures provided by law, amend, supplement, change or repeal the regulations, restrictions and boundaries or classification of property."

34.     Zoning Code Section 1113.03 then explains: "Amendments to the text of this Part may be initiated in one of the following ways: (a) By adoption of a motion by the Planning Commission; (b) By adoption of a resolution by Council for a referral to Planning Commission; (c) By the filing of an application to the Zoning Inspector, pursuant to Section 1113.05. Transmittal to Planning Commission, by at least one owner or lessee of property within the area proposed to be changed or affected by such amendment."

35.     Zoning Code Sections 1113.04–1113.12 then spell out the typical process that would occur after initiation, which includes referral to the Planning Commission (§ 1113.05), recommendation by the Planning Commission after considering certain factors (§§ 1113.07 and 1113.08); a public hearing by City Council (§ 1113.09); notice of that hearing at least 10 days prior (§ 1113.10); and then City Council takes action (§ 1113.11).

### C.     Urbana Annexes the Property into the City and Rezones the Property to Expressly Permit Data Center Use.

36.     On April 22, 2025, Urbana's City Council unanimously adopted Ordinance No. 4619-25, approving the annexation of nine parcels consisting of approximately 219.986 acres in Urbana, Ohio ("Annexed Property").  A true and accurate copy of Ordinance No. 4619-25 is attached hereto as **Exhibit 1**.

37.     Thor is the owner of two parcels and under contract to purchase two parcels within the Annexed Property.

38.     That same day, City Council adopted Ordinance No. 4625-25, which updated the City's Official Zoning Map to designate certain areas of the Annexed Property as M-1 Manufacturing District, including certain parcels of the Property.  A true and accurate copy of Ordinance No. 4625-25 is attached hereto as **Exhibit 2**.

- 9 -

39. City Council also adopted Ordinance Nos. 4620-25 and 4621-25. Ordinance No. 4620-25 amended Chapter 1102 of Urbana's Zoning Code to add definitions relevant to computing infrastructure providers, including data centers. Ordinance No. 4621-25 amended Chapter 1126 of the Zoning Code to expressly include "Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services" as principally permitted uses in the M-1 Manufacturing District and to update the purpose of M-1 Manufacturing Districts to, among other things, accommodate "technology establishments and related uses." A true and accurate copy of Ordinance No. 4620-25 is attached hereto as **Exhibit 3**. A true and accurate copy of Ordinance No. 4621-25 is attached hereto as **Exhibit 4**.

40. Pursuant to the procedures set forth in Urbana's Charter and Zoning Code, Ordinance Nos. 4619-25, 4625-25, 4620-25, and 4621-25 (collectively, "Ordinances") were unanimously passed after three readings and public hearings.

**D.    Thor Worked Collaboratively with the City Until the City Abruptly Withdrew Its Support.**

41. The Ordinances were a result of Thor's collaboration with the City's Planning and Zoning Staff after Thor began working with them as early as December 2024 to determine what the City would require for Thor's data center project ("Project").

42. At every stage, the City encouraged Thor's investment and provided repeated assurances that the Project was both desired and supported.

43. Thor worked closely with City officials and engaged in positive discussions with the Mayor and City staff, including accommodating requests for infrastructure improvements such as a new road between Highway 68 and State Route 55.

44. Thor has consistently demonstrated its commitment to being a good neighbor, working with the City and community to address concerns and maximize public benefit.

- 10 -

45.     Thor sought to foster transparency and open communication with the community, including outreach to City Council members and participation in public forums.  Thor's representatives consistently expressed willingness to address community concerns and ensure the project's compatibility with the City's long-term interests.

46.     This cooperative relationship was further evidenced by the City's pursuit of a Community Reinvestment Area ("CRA") designation for the Annexed Property.  Beginning in mid-2025 and continuing through November 2025, Thor and the City worked together to expand and create CRA #2, a special tax incentive district intended to spur economic development and specifically to support the Project.  The City adopted Ordinance No. 4631-25 on November 4, 2025, approving such CRA designation.

47.     The City's active engagement in the CRA process, along with its annexation and rezoning of the Property, sent a clear and unequivocal message to Thor and the public that the City supported the Project and intended for it to proceed.

**E.     Thor Relies on the City's Actions and Zoning Code and Makes Substantial Investments Towards a Data Center.**

48.     Based on the City's annexation, rezoning, and amendments to the Zoning Code, and in reliance on the Ordinances, Thor acquired and assembled the Property and committed it to development as a data center.

49.     Thor's reliance on the Ordinances in deciding to purchase a significant portion of the Property has even been recognized by the City.  In a published public notice, the City stated: "In reliance on the passages of Ordinances 4620-25 and 4621-25, the developer proceeded with purchases of 47 acres of land in the newly zoned and annexed territory for just over $2 million, and in November the developer purchased just over 80 acres of land in the newly annexed and

zoned territory for just over $3 million. These purchases were from the property owners, not the City or the County."

50. To date, Thor has prepared civil designs, which are substantially complete, basic elevations, and compiled utility information.

51. Thor has invested more than $19.6 million in reliance on the City's legislative assurances and the express zoning of the Annexed Property for data center use.

52. These investments include over $12.5 million in land purchases, $1,274,198 in TUI costs, $714,135 in due diligence costs, and $5,180,000 in design costs. These expenditures reflect not only the acquisition of the Property but also extensive planning, engineering, and development work necessary to move the Project forward.

53. If the Project is not permitted to proceed as planned, Thor will not only lose its sunk costs but will also be deprived of the opportunity to realize the substantial profits and returns expected from the successful development and operation of the data center. The lost potential profit from the Project exceeds $118 million dollars.

**F.  The City Improperly Denies Thor's Site Plan Application.**

54. On February 13, 2026, Thor submitted a site plan application (the "Application") pursuant to Chapter 1110 of the Code, seeking a zoning certificate to develop a data center on the Property. Chapter 1110 governs site plan review, and Section 1110.02 sets forth the requirements applicable to a site plan application.

55. The Application was prepared in accordance with the City's published checklist and was supported by professional engineering and design services.

56. On February 20, 2026, the City, through Director of Administration Spencer Mitchell, rejected Thor's Application, claiming it was incomplete due to the absence of: (i) a pre-

- 12 -

application meeting pursuant to Section 1161.01 of the Zoning Code; (ii) a preliminary plat pursuant to Section 1161.02 of the Zoning Code; and (iii) a completed traffic impact study.

57. However, none of these items are required for a site plan application under Chapter 1110 of Urbana's Zoning Code. Specifically, Section 1110.02 sets forth the requirements for a site plan application. The City's cited requirements arise from Chapter 1161, which governs major subdivisions, *not* site plan review.

58. By importing subdivision procedures and other extra-textual requirements into the site plan review process, the City acted contrary to its own Code, outside its lawful authority, and in a manner that was arbitrary and unlawful.

59. As later became apparent, the City's stated reasons for denial were pretextual and designed to obstruct the Project.

**G. The City Passes an Illegal Moratorium on Data Centers as an Emergency Without Public Notice.**

60. On February 17, 2026, three days before rejecting Thor's Application as "incomplete," the City Council placed the Moratorium on its meeting agenda for consideration and a potential vote. However, the Moratorium was later removed from the agenda and did not receive a vote.

61. On March 3, 2026, the City abruptly enacted the unlawful Moratorium, which took immediate effect and imposed "a 12-month moratorium on the consideration, approval or authorization of any licenses, permits, permitted uses, special uses, accessory uses or variances that would enable the granting of any permits, allow establishment, construction, conversion of other structures into data centers, or commencement of construction of data centers within the City of Urbana." A true and accurate copy of Resolution No. 2727-26 is attached hereto as **Exhibit 5**.

62.     The Moratorium also provides that "any application for a permit, license, special use permit, building permit, site plan approval or the like, for data centers" "shall [not] be deemed to be approved by the failure of any other public official or official body to approve or deny said application during the time" of the Moratorium.  In effect, the Moratorium removes "Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services" from the list of expressly permitted uses in the M-1 Manufacturing District.

63.     The Moratorium exceeded the City's authority in numerous ways, including but not limited to:

   a. The City failed to provide proper notice of the City's consideration of Resolution No. 2727-26, as required by Charter Section 2.16 and Zoning Code Chapter 1113;

   b. The City's justification for enacting the Moratorium was not the preservation of the public peace, health, welfare or safety; rather, it rested on generalized concerns and a desire to study potential impacts, which are insufficient bases to constitute an emergency under Charter Section 2.11;

   c. The City passed the Moratorium as an emergency in violation of Charter Section 2.12, which prohibits City Council from enacting, amending, or repealing "any zoning or building resolution" as an emergency;

   d. The Moratorium effectively amends the procedures for site plan applications as set forth in the Zoning Code without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code;

   e. The Moratorium constructively rezones private property without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code by forbidding an expressly permitted use of the Property; and

- 14 -

f.  The Moratorium impairs Thor's vested rights by prohibiting a use that was expressly permitted at the time Thor submitted the Application.

64.  Each and every one of these reasons is sufficient – standing alone – to render the Moratorium void as a matter of law.

65.  In a special council meeting convened to discuss the formation of a data center research committee, one council member candidly acknowledged the committee's true purpose, stating: "If [the citizens] really don't want us to research [data centers] and find out, then they were not transparent in what they came to us for."  Another council member asked, "What would change your mind?" – meaning, what information could this committee find that would result in permitting a data center.  A third council member responded, "Nothing."

66.  These statements confirm that the Moratorium and the supposed "research" process were not genuine efforts to gather information or evaluate the Project, but rather were pretexts to delay and ultimately block Thor's Project, regardless of the merits of its Application or compliance with the Zoning Code.

### H.  The City Further Obstructs the Project and Violates Thor's Rights to Public Records.

67.  In addition to unlawfully rejecting the Application and enacting the Moratorium, the City has engaged in a pattern of obstruction and delay designed to frustrate development of the Project and Thor's rights.

68.  On March 10, 2026, Thor made a public records request pursuant to Ohio Revised Code Section 149.43(B) for a copy of the Moratorium.  Thor followed up by email on March 12, 2026, but received no response.

69.  On March 13, 2026, Thor's messenger went in person to the City's municipal building to request a copy of the Moratorium.  The request was denied and Thor was also denied

access to the Law Director.  Despite the City's stated grounds for denial – that the document was not yet "ready" or "processed" – a City Council member had already posted portions of the Moratorium on Facebook.

70.     On March 17, 2026, Thor was forced to send an email to the City stating that the City's lack of response violated Ohio Revised Code Section 149.43.  Only after this written demand did the City finally provide a copy of the Moratorium on March 18, 2026.

71.     Thor appealed the City's rejection of the Application to both the Champaign County Court of Common Pleas and the BZA, as the City's actions made it unclear who had actually denied the Application and to whom an appeal should be directed – yet another example of the City's obstructive and delay tactics.

72.     On March 20, 2026, Thor hand-delivered its BZA appeal documents to the City, but City staff refused to formally accept or mark the documents as served, stating that Spencer Mitchell, Director of Administration, was out of the office all day and that the Law Director could not accept service on his behalf.  The City nevertheless accepted payment for the appeal.  Thor left the documents with City staff and, per Mr. Mitchell's instructions, also emailed the appeal documents to him and other City staff.

73.     On April 3, 2026, Thor made another public records request pursuant to Ohio Revised Code Section 149.43(B) for certain records relating to the Ordinances, the Moratorium, and the Property.

74.     On April 15, 2026, Thor was again forced to send an email to the City stating that the City's lack of response violated Ohio Revised Code Section 149.43.

75.     On May 19, 2026, counsel for the City responded that Thor's imposed deadlines were inapplicable and that the City would respond in a reasonable time – Thor has yet to receive even a single document responsive to its April 3, 2026 public records request.

**I.     The BZA's Procedural Violations and Denial of Thor's Right to a Meaningful Appeal.**

76.     Despite Thor's efforts to obtain a fair review of its Application, the BZA obstructed Thor's right to appeal the denial of its Application.  While the BZA ultimately held a hearing on Thor's appeal, the process was fundamentally flawed and deprived Thor of adequate and lawful process.

77.     The City failed to provide Thor or its counsel, who had submitted the appeal form on Thor's behalf, any notice of the scheduled BZA hearing.

78.     On April 10, 2026, Thor's counsel contacted the City requesting a hearing date.  A true and accurate copy of the letter is attached hereto as **Exhibit 6**.  In that letter, counsel explained that Thor's appeal could not lawfully be considered at the April 13, 2026 hearing due to the lack of notice, as required by Section 1105.30 of the City's Zoning Code:  "Before holding the public hearing required in Section 1105.28, written notice of the hearing shall be mailed by the chairman of the Zoning Inspector, by first class mail, at least ten days before the day of the hearing to all parties in interest including all surrounding properties within 200 feet of the subject property."

79.     In response to Thor's inquiry, the City notified Thor's counsel on Friday at 4:25 p.m. that the hearing would indeed be held on the following Monday, April 13, 2026 – providing Thor with only three calendar days' notice (and one business day's notice) far short of the ten-day requirement.  A true and accurate copy of the BZA's response to the letter is attached hereto as **Exhibit 7**.

80. As a result, Thor filed a motion for continuance, explaining that the lack of adequate notice and time to prepare would deprive Thor of a full and fair opportunity to be heard. A true and accurate copy of Thor's motion for continuance is attached hereto as **Exhibit 8**. Nevertheless, the BZA declined Thor's motion for continuance, disregarding the clear requirements of the Zoning Code.

81. At the April 13, 2026 BZA hearing, Thor presented overwhelming evidence demonstrating that its Application was complete and fully compliant with the requirements of Zoning Code Section 1110.02. Thor's engineer, Ryan J. Lefeld, testified that the Application satisfied all applicable requirements.

82. Thor also presented evidence that the three additional requirements cited by the City were not mandated by Chapter 1110 for site plan applications. Even the City's Engineer testified that he had not fully reviewed the Application and had only focused on the three additional requirements that he himself imposed. Consequently, those additional demands fell outside the Zoning Code's catch-all provision for site applications in Zoning Code Section 1110.02(n), which allows only "[s]uch other information as required *by the Planning Commission* to determine the conformance with this Zoning Code." (Emphasis added.)

83. After Thor presented its case, the BZA opened the hearing to citizen comment, which consisted solely of expressions of disdain for data centers and did not address any substantive issues related to the Zoning Code or Thor's Application. Despite the evidence presented by Thor and the lack of any legitimate basis for denial, the BZA declined Thor's appeal and affirmed the City's decision to deny the Application as incomplete.

84. Compounding these procedural deficiencies, the BZA is a five-member board but only four members were present at the hearing. Under the Zoning Code, a vote of four is required

for a successful appeal, meaning Thor was deprived of the possibility of a full board review. Zoning Code § 1105.06.

85.     The BZA's actions throughout the appeal process, including failure to provide proper notice, refusal to grant a continuance, disregard for the evidence, and failure to follow its own procedural requirements, demonstrate a pattern of obstruction and arbitrary decision-making that deprived Thor of its right to a fair hearing and meaningful opportunity to be heard.

**J.     The City Initiates Permanent Legislation to Remove Data Centers from the M-1 Manufacturing District.**

86.     The City's efforts to block Thor's Project did not end with its rejection of the Application, enactment of the Moratorium, or obstruction of Thor's appeal.  The City is pursuing a permanent amendment to the Zoning Code that would remove data centers as a permitted use in the M-1 Manufacturing District – and consequently – on Thor's Property.

87.     On May 5, 2026, City Council referred Resolution No. 2731-26 to the Planning Commission, thereby initiating the process to amend the M-1 Manufacturing District regulations to eliminate data center use from that district.

88.     On May 18, 2026, the Planning Commission voted to recommend approval of the proposed amendment.

89.     The proposed amendment then returned to City Council as Ordinance No. 4635-26. On June 2, 2026, City Council held its first reading of Ordinance No. 4635-26, which would adopt the Planning Commission's recommendation and remove data centers as a permitted use in the M-1 Manufacturing District.  A true and accurate copy of Ordinance No. 4635-26 is attached hereto as **Exhibit 9**.

**K.      Thor Faces Irreparable Harm Due to the City's Actions.**

90.      Thor continues to suffer irreparable harm that cannot be remedied by monetary damages due to the City's unlawful and unconstitutional Moratorium.

91.      Thor has a constitutionally protected right to build a data center on the Property under the Ordinances and by virtue of the Property's zoning.

92.      Through the Moratorium, the City has rezoned the Property without following the procedures set forth in the City's Charter and Zoning Code.  Thor has made substantial investments into the development plan for its data center.  However, due to the Moratorium, Thor's development has been halted, causing Thor to lose significant market share.  While the Moratorium is framed as a twelve-month pause on data center developments, as shown above, the City has now initiated legislation to revise its Zoning Code and remove data centers as an expressly permitted use.  The Moratorium therefore immediately – and permanently – eviscerates Thor's right to use the Property as a data center.

93.      A municipality may amend its zoning laws prospectively.  But once a zoning application has been filed, it may not retroactively change the rules to defeat a use that was lawful at the time of filing.  As the Sixth Circuit has explained, while "[z]oning is not a contract which forecloses its subsequent amendment[,]" a city may not "enact a law retroactively, in an attempt to deny a property owner a right to the use of his property when the use of that property is in accordance with the law at the time of the property owner's application." *Golf Vill. N. LLC v. City of Powell*, 826 F. App'x 426, 433 (6th Cir. 2020) (quoting *City of Ann Arbor v. Nw. Park Constr. Corp.*, 280 F.2d 212, 216 (6th Cir. 1960) and *Zaremba Dev. Co. v. City of Fairview Park*, 84 Ohio App. 3d 174, 175 (8th Dist. 1992)).  Filing the Application therefore froze the zoning rules applicable to Thor's proposed use.

## V.    CLAIMS FOR RELIEF

### COUNT I – Violation of Procedural Due Process
### Under 42 U.S.C. § 1983 and the Ohio Constitution

94.    Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

95.    The City has deprived Thor of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

96.    At all relevant times, the City acted under the color of law and within its governmental authority.

97.    Thor's property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

98.    Thor possesses legitimate claims of entitlement and justifiable expectations in its property interests, for among other reasons:

a. Thor has the right to use the Property for Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services – i.e., a data center – under the Zoning Code;

b. Thor undertook significant actions and made substantial investments in the Property;

c. Thor justifiably relied on the City's representations and assurances when taking significant actions and making substantial investments in the Property;

d. Thor expended significant sums to design and plan the development of the Property as a data center and submitted its Application in accordance with existing regulations;

e. Thor had the right to submit a site plan application for a data center use that was expressly permitted under the Zoning Code;

f. Thor submitted the Application that was complete and compliant with the requirements of Zoning Code Section 1110.02;

g. Thor timely appealed the City's denial of its Application to the BZA, as provided by the Zoning Code;

h. Thor had a legitimate expectation that its Application and appeal would be reviewed and decided in accordance with the City's established procedures, including proper notice, a fair hearing, and consideration of the evidence; and

i. Thor has the right to a meaningful and impartial appeal process under the Zoning Code and applicable law.

99.    Thor has the right to develop its Property and to have its complete Application and timely appeal fairly considered by the BZA, free from arbitrary restrictions imposed by government officials.

100.    The City deprived Thor of those interests without proper process in several ways:

a. The City failed to provide proper notice of the City's consideration of Resolution No. 2727-26, as required by Charter Section 2.16 and Zoning Code Chapter 1113;

b. The City's justification for enacting the Moratorium was not the preservation of the public peace, health, welfare or safety; rather, it rested on generalized concerns and a desire to study potential impacts, which are insufficient bases to constitute an emergency under Charter Section 2.11;

c. The City passed the Moratorium as an emergency in violation of Charter Section 2.12, which prohibits City Council from enacting, amending, or repealing "any zoning or building resolution" as an emergency;

d. The Moratorium effectively amends the procedures for site plan applications as set forth in the Zoning Code without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code;

e. The Moratorium constructively rezones private property without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code by forbidding an expressly permitted use of the Property;

f. The City denied Thor's Application by applying procedures and requirements not contained in Chapter 1110 of the Zoning Code and thereby deprived Thor of the lawful process to which they were entitled under the City's own regulations;

g. The City did not provide Thor or its counsel with the required ten-day written notice of the hearing, as required by Zoning Code Section 1105.30;

h. The BZA declined to grant Thor's motion for a continuance of the April 13, 2026 BZA hearing;

i. Only four members of the BZA were present during the April 13, 2026 BZA hearing; and

j. The BZA disregarded substantial evidence presented by Thor and failed to consider the evidence presented in a meaningful manner, including testimony from Thor's engineer confirming the Application's completeness and admissions by the City's own engineer that he had not reviewed the actual Application for completeness and

- 23 -

that the Planning Commission had not imposed the additional requirements cited by the City.

101. The City's actions have deprived Thor of its constitutionally protected property and liberty interests to use the Property as a data center.

102. Thor was entitled to have its filed Application processed under the zoning rules and site plan standards in effect at the time of filing. The City deprived Thor of that process by refusing to apply the rules as written and by attempting to suspend the permitted use through a later-enacted moratorium.

103. As a direct and proximate result of the City's actions, Thor has suffered and will continue to suffer the deprivation of its vested rights under the United States Constitution and the Ohio Constitution, along with substantial damages to be proven at trial.

### COUNT II – Violation of Substantive Due Process
### Under 42 U.S.C. § 1983 and the Ohio Constitution

104. Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

105. The City has deprived Thor of its property and liberty interests under color of law without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

106. At all relevant times, the City acted under the color of law and within its governmental authority.

107. Thor's property and liberty interests are types that are protected by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution.

108. Thor possesses legitimate claims of entitlement and justifiable expectations in its property interests, for among other reasons:

a. Thor has the right to use the Property for Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services – i.e., a data center – under the Zoning Code;

b. Thor undertook significant actions and made substantial investments in the Property;

c. Thor justifiably relied on the City's representations and assurances when taking significant actions and making substantial investments in the Property;

d. Thor expended significant sums to design and plan the development of the Property as a data center in accordance with existing regulations;

e. Thor had the right to submit a site plan application for a data center use that was expressly permitted under the Zoning Code;

f. Thor submitted the Application that was complete and compliant with the requirements of Zoning Code Section 1110.02;

g. Thor timely appealed the City's denial of its Application to the BZA, as provided by the Zoning Code;

h. Thor had a legitimate expectation that its Application and appeal would be reviewed and decided in accordance with the City's established procedures, including proper notice, a fair hearing, and consideration of the evidence; and

i. Thor has the right to a meaningful and impartial appeal process under the Zoning Code and applicable law.

109. Thor has the right to develop its Property free from arbitrary restrictions imposed by government officials.

110.    The City's adoption of the Moratorium, rejection of Thor's Application, and handling of Thor's appeal were arbitrary, capricious, unreasonable, and lacking any substantial relationship to legitimate land-use regulation because:

    a.   The City had already annexed and zoned the Property to permit the proposed use;

    b.   The City had amended its Zoning Code to expressly authorize Thor's proposed data-center use in the M-1 Manufacturing District;

    c.   The City denied Thor's filed Application by imposing requirements not found in Chapter 1110;

    d.   The City then adopted a targeted moratorium after the Application was filed in an effort to retroactively defeat a lawful proposed use;

    e.   The City failed to provide proper notice of the City's consideration of Resolution No. 2727-26, as required by Charter Section 2.16 and Zoning Code Chapter 1113;

    f.   The City's justification for enacting the Moratorium was not the preservation of the public peace, health, welfare or safety; rather, it rested on generalized concerns and a desire to study potential impacts, which are insufficient bases to constitute an emergency under Charter Section 2.11;

    g.   The City passed the Moratorium as an emergency in violation of Charter Section 2.12, which prohibits City Council from enacting, amending, or repealing "any zoning or building resolution" as an emergency;

    h.   The Moratorium effectively amends the procedures for site plan applications as set forth in the Zoning Code without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code;

i.  The Moratorium constructively rezones private property without following the proper procedures in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code by forbidding an expressly permitted use of the Property;

j.  The City did not provide Thor or its counsel with the required ten-day written notice of the hearing, as required by Zoning Code Section 1105.30;

k.  The BZA declined to grant Thor's motion for a continuance of the April 13, 2026 BZA hearing;

l.  Only four members of the BZA were present during the April 13, 2026 BZA hearing; and

m.  The BZA disregarded substantial evidence presented by Thor and failed to consider the evidence presented in a meaningful manner, including testimony from Thor's engineer confirming the Application's completeness and admissions by the City's own engineer that he had not reviewed the actual Application for completeness and that the Planning Commission had not imposed the additional requirements cited by the City.

111.  The City's actions were an arbitrary effort to change the rules after Thor had relied on the City's zoning actions, committed the Property to a permitted use, and filed a conforming application and were an arbitrary effort to deny Thor's timely appeal and complete Application

112.  As a direct and proximate result of the City's actions, Thor has suffered and will continue to suffer the deprivation of its vested rights under the United States Constitution and the Ohio Constitution, along with substantial damages to be proven at trial.

**COUNT III – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202**
**Declaring the Moratorium Void in Violation of Charter Section 2.12**

113.    Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

114.    A substantial, continuing, and immediate dispute exists between the parties regarding Thor's rights and the City's authority to enact the Moratorium.

115.    Charter Section 2.12 provides that "[n]o action of Council authorizing . . . the enactment, amendment, or repeal of any zoning or building resolution . . . shall be enacted as an emergency . . . resolution."

116.    The Moratorium constitutes a de facto zoning amendment to procedures for site plan applications and zoning district permitted uses such that the Urbana City Council could not enact it on an emergency basis.

117.    Thor is therefore entitled to a declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio for violation of Charter Section 2.12.

**COUNT IV – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202**
**Declaring the Moratorium Void in Violation of Charter Section 2.11**

118.    Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

119.    A substantial, continuing, and immediate dispute exists between the parties regarding Thor's rights and the City's authority to enact the Moratorium.

120.    Charter Section 2.11 permits Urbana's City Council to adopt emergency legislation only where such legislation is "necessary for the preservation of public peace, health, welfare, or safety[.]"

121.    Pursuant to Charter Section 2.11, any emergency resolution must "set forth and define the specific facts necessitating the emergency."

122. Resolution No. 2727-26 is not "necessary for the preservation of public peace, health, welfare, or safety" and does not "set forth and define the specific facts necessitating the emergency." Charter § 2.11. Rather, the Moratorium is based on generalized concerns and a desire to study potential impacts data centers may have, which is insufficient to necessitate an emergency. *See Snyder v. City of Bowling Green*, 1996 Ohio App. LEXIS 5580, *8–9 (6th Dist. Dec. 13, 1996).

123. Thor is therefore entitled to a declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio for violation of Charter 2.11.

<u>**COUNT V – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202**</u>
<u>**Declaring the Moratorium Void in Violation of Article XVIII, Section 3 of the Ohio**</u>
<u>**Constitution and Ohio Revised Code Section 731.30**</u>

124. Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

125. A substantial, continuing, and immediate dispute exists between the parties regarding Thor's rights and the City's authority to enact the Moratorium.

126. Article XVIII, Section 3 of the Ohio Constitution states, "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

127. Pursuant to Ohio Revised Code Section 731.30, emergency ordinances must be "necessary for the immediate preservation of the public peace, health, or safety[,]" and "the reasons for such necessity shall be set forth in one section of the ordinance . . . ."

128. Resolution No. 2727-26 is not "necessary for the immediate preservation of the public peace, health, or safety" and does not state "the reasons for such necessity . . . ." Ohio

Rev. Code § 731.30. Rather, the Moratorium is based on generalized concerns and a desire to study potential impacts data centers may have, which is insufficient to necessitate an emergency. *See Snyder v. City of Bowling Green*, 1996 Ohio App. LEXIS 5580, *8–9 (6th Dist. Dec. 13, 1996).

129. The City exceeded its limited authority pursuant to Article XVIII, Section 3 of the Ohio Constitution by enacting Resolution No. 2727-26 in manner inconsistent with and in violation of Ohio Revised Code Section 731.30.

130. Thor is therefore entitled to a declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio for violation of Article XVIII, Section 3 of the Ohio Constitution and Ohio Revised Code Section 731.30.

## COUNT VI – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202 Declaring the Moratorium Void in Violation of Charter Sections 2.10 and 2.16 and Zoning Code Chapter 1113

131. Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

132. A substantial, continuing, and immediate dispute exists between the parties regarding Thor's rights and the City's authority to enact the Moratorium.

133. Charter Section 2.10 provides that any action being of permanent nature requires three readings before passage.

134. Charter Section 2.16 states that Council cannot "enact[]" or "amend[] . . . any zoning or building . . . resolution . . . unless the title and summary of the . . . resolution has been published in a newspaper of general circulation within the City at least 7 days before enactment by Council."

135. Zoning Code Section 1113.02 states that "Council may by ordinance after receipt of a recommendation thereon from the Planning Commission and subject to the procedures

provided by law, amend, supplement, change or repeal the regulations, restrictions and boundaries or classification of property."

136.    Zoning Code Section 1113.03 then explains: "Amendments to the text of this Part may be initiated in one of the following ways: (a) By adoption of a motion by the Planning Commission; (b) By adoption of a resolution by Council for a referral to Planning Commission; (c) By the filing of an application to the Zoning Inspector, pursuant to Section 1113.05. Transmittal to Planning Commission, by at least one owner or lessee of property within the area proposed to be changed or affected by such amendment."

137.    Zoning Code Sections 1113.04–1113.12 set forth the process following initiation, including: referral to the Planning Commission (§ 1113.05), recommendation by the Planning Commission after considering certain factors (§§ 1113.07 and 1113.08); a public hearing by City Council (§ 1113.09); notice of that hearing at least 10 days prior (§ 1113.10); and then City Council takes action (§ 1113.11).

138.    The Moratorium constitutes a de facto zoning amendment to the City's site plan application procedures and zoning district permitted uses such that the City was required to follow the procedures set forth in Charter Sections 2.10 and 2.16 and Chapter 1113 of the Zoning Code.

139.    The City failed to follow each and every one of these mandatory requirements. Specifically, the City:

    a.  Did not publish the title and summary of Resolution No. 2727-26 in a newspaper of general circulation at least 7 days before enactment, as required by Charter Section 2.16;

    b.  Did not initiate the amendment through the Planning Commission or referral, as required by Zoning Code Section 1113.03;

c. Did not refer the Moratorium to the Planning Commission for review or recommendation, as required by Zoning Code Sections 1113.05 and 1113.07;

d. Did not provide the required 10 days' notice to the public, as required by Zoning Code Section 1113.10; and

e. Improperly read and passed the Moratorium only once, bypassing the three-reading requirement for permanent legislation under Charter Section 2.10.

140. Thor is therefore entitled to a declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio for violation of Charter Sections 2.10 and 2.16 and Zoning Code Chapter 1113.

## COUNT VII – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202
## Declaring the Moratorium an Unlawful Impairment to Thor's Vested Rights

141. Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

142. A substantial, continuing, and immediate dispute exists between the parties regarding Thor's rights and the City's authority to enact the Moratorium.

143. Zoning Code Section 1110.02 sets forth the requirements for a Site Plan Application.

144. On February 13, 2026, Thor submitted the Application for a zoning certificate and site plan approval in full compliance with the Zoning Code in effect at the time of its submittal.

145. At the time of submission, Thor's proposed data center use was expressly permitted as a principal use in the M-1 Manufacturing District, pursuant to Ordinance No. 4621-25 and the City's Official Zoning Map as amended by Ordinance No. 4625-25.

146. Thor's Application satisfied all requirements set forth in Zoning Code Chapter 1110, as confirmed by the detailed plans, engineering documents, and supporting materials

submitted. The City's contrary position depended on importing requirements from Chapter 1161 and other extra-textual demands that do not govern site plan completeness.

147. A property owner's right to an existing zoning classification vests upon the submission of an application for a zoning certificate. *See Gibson v. Oberlin*, 171 Ohio St. 1, 5 (1960); *Andreano v. City of Westlake*, 136 F. App'x 865, 872 (6th Cir. 2005). Under the law summarized by the Sixth Circuit in *Golf Vill. N. LLC v. City of Powell*, once Thor filed its zoning application, the City could not retroactively change the zoning rules applicable to that application in order to deny a use that was lawful at the time of filing. 826 F. App'x 426, 433 (6th Cir. 2020). Thor's filing therefore froze the applicable zoning rules and site plan standards.

148. The City rejected Thor's Application, claiming it was incomplete due to the absence of: (i) a pre-application meeting pursuant to Section 1161.01 of the Zoning Code; (ii) a preliminary plat pursuant to Section 1161.02 of the Zoning Code; and (iii) a completed traffic impact study.

149. The City subsequently enacted the Moratorium, which purports to prohibit the approval of any site plan application for data center use during its pendency.

150. As recognized in *Gibson*, a municipality may not impair vested rights by applying subsequently enacted land-use restrictions to deny vested rights. 171 Ohio St. at 5–6.

151. Thor is therefore entitled to a declaration stating that:

a. The City's Moratorium on data centers is unlawful as applied to Thor's Application;

b. Thor's Application was complete and fully compliant with Zoning Code Chapter 1110;

c. Thor has a vested right to use the Property for a data center under the law and zoning in effect at the time of the Application; and

d. Thor is entitled to approval of its Application, and the City may not deny or delay such approval based on restrictions subsequently enacted after the submission of the Application.

### COUNT VIII – Declaratory Judgment Under 28 U.S.C. §§ 2201–2202
### Declaring the Denial of the Site Plan Application a Violation of
### Zoning Code Chapter 1110

152. Thor incorporates the allegations contained in the previous paragraphs as if fully rewritten herein.

153. A substantial, continuing, and immediate dispute exists between the parties regarding whether Thor's Application was governed by Chapter 1110 of the Zoning Code and whether the City could lawfully impose additional requirements not contained in that Chapter.

154. Zoning Code Section 1110.02 sets forth the requirements for a site plan application.

155. Thor submitted its Application under Chapter 1110.

156. Thor's Application complied with the requirements of Chapter 1110.

157. The City denied the Application as incomplete based on the alleged absence of: (i) a pre-application meeting under Section 1161.01; (ii) a preliminary plat under Section 1161.02; and (iii) a completed traffic impact study.

158. Sections 1161.01 and 1161.02 govern major subdivisions and do not establish mandatory completeness requirements for a site plan application under Chapter 1110. Nor is there a requirement that an applicant submit a traffic study with a site plan application.

159. The City's denial of the Application based on requirements outside Chapter 1110 was contrary to the Zoning Code, ultra vires, unlawful, arbitrary, and void.

160. Thor is therefore entitled to a declaration that the City unlawfully denied the Application and to injunctive relief requiring the City to process the Application under the standards actually applicable to site plan review.

## VI.     PRAYER FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs Thor Equities, LLC, Urbana Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland55 Investments LLC seek:

A) Compensatory damages in an amount to be determined by a jury;

B) A declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio because the Moratorium violates Charter Section 2.12;

C) A declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio because the Moratorium violates Charter Section 2.11;

D) A declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio because the Moratorium violates Article XVIII, Section 3 of the Ohio Constitution and Ohio Revised Code Section 731.30;

E) A declaration stating that the City's Moratorium on data centers is unconstitutional, unlawful, and void ab initio because the Moratorium violates Charter Sections 2.10 and 2.16 and Zoning Code Chapter 1113;

F) A declaration that the City unlawfully denied Thor's Application by imposing requirements not contained in Chapter 1110 of the Zoning Code;

G) A declaration that Thor's Application was complete and fully compliant with Zoning Code Chapter 1110;

H) A declaration that Thor has a vested right to have its filed Application considered and approved under the zoning rules and site plan standards in effect at the time of the Application's filing;

I) A declaration that the Moratorium may not lawfully be applied to Thor's

Application;

J) A preliminary and permanent injunction under Fed. R. Civ. P. 65 prohibiting the City from enforcing the unlawful Moratorium, prohibiting the City from applying the amended Zoning Code to the Property, and directing the City to approve Thor's Application;

K) Pre- and post-judgment interest;

L) Attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

M) Any other declarative, injunctive, or equitable relief this Court deems just and appropriate.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
Garrett M. Anderson (0100121)
Brodi S. Voight (0105912)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6233
Fax: (614) 464-6233
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com
gmanderson@vorys.com
bsvoight@vorys.com

*Counsel for Plaintiffs Thor Equities, LLC, Urbana Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland55 Investments LLC*

- 37 -

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs Thor Equities, LLC, Urbana

Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland55 Investments LLC

demand a trial by jury on all issues so triable.

/s/ Joseph R. Miller
Joseph R. Miller