# EXHIBIT 1

# ORDINANCE NO. 4619-25

**AN ORDINANCE ACCEPTING THE ANNEXATION OF PARCELS (TERRITORY) CONSISTING OF APPROXIMATELY 219.986 ACRES, MORE OR LESS, IN URBANA TOWNSHIP AS PETITIONED BY ANDREW WECKER, ATTORNEY-AT-LAW, APPOINTED AS AGENT BY THE PETITIONERS: URBANA HEALTH FACILITIES, LLC, AN OHIO LIMITED LIABILITY COMPANY; GOVERNING BOARD OF THE MADISON-CHAMPAIGN EDUCATIONAL SERVICE CENTER; BOARD OF COUNTY COMMISSIONERS OF CHAMPAIGN COUNTY, OHIO; AND ORGAN FARMS, LLC, AN OHIO LIMITED LIABILITY COMPANY. (Three (3) readings required, no public hearing required)**

**Department Requesting: Community Development      Sponsor: Councilman Pat Thackery**

**WHEREAS,** a petition was filed with the Champaign County Commissioners on December 3, 2024 by the petitioners: Urbana Health Facilities, LLC, an Ohio limited liability company; Governing Board of the Madison-Champaign Educational Service Center; Board of County Commissioners of Champaign County, Ohio; and Organ Farms, LLC, an Ohio limited liability company, with Andrew Wecker, Attorney-At-Law, appointed as agent by petitioners, for annexation to the City of Urbana, certain real estate in Urbana Township designated in Exhibits "A" & "B", hereto; and

**WHEREAS,** on December 17, 2024, the Urbana City Council passed Ordinance No. 4613-24 to provide a statement of services in the territory to be annexed; and

**WHEREAS,** on December 17, 2024, the Urbana City Council passed Ordinance No. 4614-24 relating to land use and zoning buffers for the territory to be annexed; and

**WHEREAS,** proceedings having been held before the Board of Commissioners of Champaign County on January 14, 2025, wherein said Commissioners approved the annexation, including an annexation plat and legal description; and

**WHEREAS,** more than sixty days having elapsed from the date of filing of the transcript of such approval by the Board of Champaign County Commissioners with the City Clerk.

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

**SECTION ONE:**
That the proposed annexation, pursuant to Sections 709.02 and 709.023 of the Ohio Revised Code, as applied for in the petition with the Board of County Commissioners of Champaign County, Ohio on December 3, 2024 by the petitioners: Urbana Health Facilities, LLC, an Ohio limited liability company; Governing Board of the Madison-Champaign Educational Service Center; Board of County Commissioners of Champaign County, Ohio; and Organ Farms, LLC, an Ohio

limited liability company, with Andrew Wecker, Attorney-At-Law, appointed as agent by petitioners, and which petition prayed for the annexation to the City of Urbana of certain territory adjacent thereto and hereinafter described, which petition was approved for annexation to the City of Urbana by the Board of County Commissioners on January 14, 2025, be, and hereby is, accepted.

**SECTION TWO:**

The territory annexed hereby is described in the legal description attached hereto as Exhibit "A" and made a part hereof as though fully rewritten herein. The certified transcript of the proceedings for annexation with an accurate map (plat) of the territory as Exhibit "B", together with the petition for annexation as Exhibit "C" and other papers relating to the proceedings thereto of the County Commissioners are all on file with the Clerk of the City of Urbana and have been for more than 60 days.

**SECTION THREE:**

That the Clerk be, and hereby is, authorized and directed to make three copies of this Ordinance, to each of which shall be attached a copy of the transcript of proceedings of the Board of County Commissioners relating thereto and a certificate as to the correctness thereof. The Clerk shall then forthwith deliver one copy to the County Auditor, one copy to the County Recorder, and one copy to the Secretary of State, and shall file notice of this annexation with the Board of Elections within 30 days after it becomes effective.

**SECTION FOUR:**

That it is hereby found and determined that all formal actions of this Council concerning and relating to the passage of this Ordinance were adopted in an open meeting of the Council and that all deliberations of the Council and any of the decision-making bodies of the City of Urbana which resulted in such formal actions were in meetings open to the public in compliance with all legal requirements of the City of Urbana.

**SECTION FIVE:**

That this Ordinance shall take effect at the earliest time provided by law.

_____
President, City of Urbana Council

PASSED:_____

ATTEST: _____
           Clerk of Council

This Ordinance approved by me this _____ day of _____, 2025.

_____
Mayor, City of Urbana

REVIEWED: _[signature]_ 3/26/2025
Director of Law     Date

Jumper:      _____ Yay    _____ Nay    _____ N/A

Scott:      _____ Yay    _____ Nay    _____ N/A

Davis:      _____ Yay    _____ Nay    _____ N/A

Truelove      _____ Yay    _____ Nay    _____ N/A

Thackery:      _____ Yay    _____ Nay    _____ N/A

Collier:      _____ Yay    _____ Nay    _____ N/A

Bean:      _____ Yay    _____ Nay    _____ N/A

# EXHIBIT 2

# ORDINANCE NO. 4625-25

**AN ORDINANCE TO UPDATE THE CITY OF URBANA'S OFFICAL ZONING MAP TO ESTABLISH CITY DESIGNATED ZONING CLASSIFICATIONS FOR NINE PARCELS THAT WERE PETITIONED FOR ANNEXATION TO THE CITY OF URBANA ON DECEMBER 3, 2024 AND ARE ANTICIPATED TO BE ANNEXED INTO THE CITY OF URBANA CORPORATION LIMITS ON OR AFTER MAY 23, 2025. (Three (3) readings required, public hearing required, public hearing advertising date: Friday, April 4, 2025)**

**Department Requesting: Zoning  Sponsor: Councilwoman Audra Bean**

**WHEREAS,** Chapter 1113 of the Codified Ordinances of the City of Urbana, Ohio enables amendment of the Official Zoning Map; and

**WHEREAS,** whenever the public necessity, convenience, general welfare or good zoning practices require, Council may by ordinance after receipt of a recommendation thereon from the Planning Commission and subject to procedures provided by law, amend, supplement, change or repeal the regulations, restrictions and boundaries or classification of property; and

**WHEREAS,** on March 24, 2025, the Planning and Zoning Staff formally requested an amendment to the Official Zoning Map for the City of Urbana pursuant to Chapter 1113.03 (a) of the Codified Ordinances of the City of Urbana; and

**WHEREAS,** on March 24, 2025, the City of Urbana Planning Commission recommended by a 6-0 vote, that City Council approve the request to update the City of Urbana Official Zoning Map to establish city designated zoning classifications for nine (9) parcels that were petitioned for annexation to the City of Urbana on December 3, 2024 and are anticipated to be annexed into the City of Urbana corporation limits on or after May 16, 2025: and, to-wit: that City of Urbana staff has proposed designating Parcel # K41-11-11-21-00-016-01 (Urbana Health Facilities LLC), Parcel # K41-11-11-27-00-013-01 (Urbana Health Facilities LLC), Parcel # K41-11-11-27-00-013-02 (Urbana Health Facilities LLC), Parcel # K41-11-11-27-00-013-03 (Governing Board of Madison-Champaign Educational Service Center), and Parcel # K41-11-11-21-00-016-02 (Governing Board of Madison-Champaign Educational Service Center) as R-3 High Density Residential on the city's Official Zoning Map upon the effective date of the annexation of these parcels; and, to-wit: that City of Urbana staff has proposed designating Parcel # K41-11-11-27-00-013-04 (Board of County Commissioners of Champaign County), Parcel # K41-11-11-21-00-016-00 (Board of County Commissioners of Champaign County), Parcel # K41-11-11-28-00-009-00 (Organ Farms LLC) and Parcel # K41-11-11-22-00-032-00 (Organ Farms LLC) as M-1 Manufacturing on the city's Official Zoning Map upon the effective date of the annexation of these parcels; and

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

<u>**SECTION ONE:**</u>
The City Engineer shall amend the Official Zoning Map of the City of Urbana, Ohio to reflect the zoning change depicted in the Planning Commission Staff Report and as recommended by the

Planning Commission. An exhibit of the proposed zoning map change is attached and labeled as "Exhibit A".

**SECTION TWO:**
The Mayor shall sign the amended Official Zoning Map of the City of Urbana, Ohio.

**SECTION THREE:**
The Clerk of Council is now instructed to sign the amended Official Zoning Map to attest to this action of City Council.

**SECTION FOUR:**
That the City of Urbana Planning Commission's recommendation to approve the request to amend the zoning map is attached and labeled as "Exhibit B".

**SECTION FIVE:**
The Planning Commission Staff Report is attached and labeled as "Exhibit C."

**SECTION SIX:**
All actions of City Council and the Planning Commission related to this legislation were conducted in open meetings pursuant to Urbana Codified Ordinance 107.01 and Ohio Revised Code 121.22. City Council held a public hearing under Urbana Codified Ordinance 1113.09, with notice by publication pursuant to Urbana City Charter Section 2.16, on April 4, 2025.

**SECTION SEVEN:**
This ordinance shall become effective at the earliest time provided by law.


_____
President, City of Urbana Council


PASSED:_____

ATTEST: _____
　　　　　Clerk of Council

This Ordinance approved by me this _____ day of _____, 2025.


_____
Mayor, City of Urbana


REVIEWED: _____ 3/26/2025
　　　　　　Director of Law　　　Date

Jumper:        _____ Yay        _____ Nay        _____ N/A

Scott:         _____ Yay        _____ Nay        _____ N/A

Davis:         _____ Yay        _____ Nay        _____ N/A

Truelove       _____ Yay        _____ Nay        _____ N/A

Thackery:      _____ Yay        _____ Nay        _____ N/A

Collier:       _____ Yay        _____ Nay        _____ N/A

Bean:          _____ Yay        _____ Nay        _____ N/A

# EXHIBIT 3

# ORDINANCE NO. 4620-25

**AN ORDINANCE TO AMEND CHAPTER 1102 OF THE CODIFIED ORDINANCES**
(Three (3) readings required, public hearing required. Public Hearing Advertisement date: Friday, April 4, 2025)

**Department Requesting: Zoning**                    **Sponsor: Councilwoman Audra Bean**

**WHEREAS,** Chapter 1102 of the Urbana Codified Ordinances, which contains the definitions applicable to the Planning and Zoning Code, was originally codified in 1998; and

**WHEREAS,** Chapter 1102 of the Urbana Codified Ordinances has, from time to time, been updated to include new or modified definitions as the need arises; and

**WHEREAS,** the need has arisen to update some such definitions,

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

**SECTION ONE:** That Chapter 1102 of the Codified Ordinances is hereby amended as follows, with the stricken language to be removed, and the boldface language to be added:

"Definitions

1102.01   Definitions.

CROSS REFERENCES

General definitions - see ADM. 101.02
Subdivision Regulations definitions - see P. & Z. 1155.03

1102.01 DEFINITIONS

For the purpose of Part Eleven, certain terms or words shall have the meanings as provided in this chapter. Where terms or words are not defined, they shall have their ordinary accepted meanings.

1. *Adult Entertainment Facility.* "Adult Entertainment Facility" means a facility having a significant portion of its function as adult entertainment which includes the following listed categories.

   A. *Adult Book/Video Store.* An establishment which deals in books, magazines or other periodicals, or video tapes of which at least ten percent (10%) as measured by publicly accessible display area, is distinguished or characterized by an emphasis on depiction or descriptions relating to specified sexual activities or specified anatomical areas, as defined below, or an establishment having an area devoted primarily to the sale or display of such materials.

   B. *Adult Entertainment Theater.* A facility used to a substantial extent for presenting material distinguished or characterized by an emphasis on matter depicting, describing or related to specified sexual activities, or specified anatomical areas as herein defined for the observation by patrons therein.

C. *Adult Entertainment Business.* Any establishment involved in the sale of services or products characterized by salacious conduct appealing to prurient interest for the observation or participation in by patrons, the exposure or presentation of specified anatomical areas or physical contact of live males or females, and characterized by including but not limited to photography, dancing, stripping, reading, massage, male or female impersonation, and similar functions which utilize activities as specified below:

(1) Specified Sexual Activities:

   a. Human genitals in a state of sexual stimulation or arousal;

   b. Acts, real or simulated, of human masturbation, sexual intercourse, sodomy, cunnilingus, or fellatio;

   c. Fondling or other erotic touching of human genitals, pubic region, buttock or female breasts.

(2) Specified Anatomical Areas:

   a. Less than completely and opaquely covered human genitals, pubic region, buttock, and female breasts below a point immediately above the top of the areola; and

   b. Human male genitals in a discernibly turgid state even if completely and opaquely covered.

2. *Agricultural.* "Agricultural" means the use of land for agricultural purposes, including farming of crops, horticulture, floriculture, viticulture and the necessary accessory uses for parking, treating or storing the produce; however, the operation of such accessory uses shall be secondary to that of normal agricultural activities.

3. *Airport.* "Airport" means any runway, land area or other facility designed or used either publicly or privately by any person for the landing and taking-off of aircraft, including all necessary taxiways, aircraft storage and tie-down areas, hangers and other necessary buildings and open spaces.

4. *Alley.* See "Thoroughfare, Alley".

5. *Alterations, Structural.* "Alterations, Structural" means any change in the supporting members of a building such as bearing walls, columns, beams or girders.

6. *Automotive Filling Station.* "Automotive Filling Station" means any building, land or area used or intended to be used for the retail dispensing or sales of vehicular fuels; and including as an accessory use, the sale and installation of lubricants, tires, batteries and similar accessories.

7. *Automotive Repair.* "Auto Repair" means the repair, rebuilding or reconditioning of motor vehicles or parts thereof, including collision services, painting and steam cleaning of vehicles.

8. *Basement.* "Basement" means a story all or partly under ground but having at least one- half of its height below the average level of the adjoining ground.

9. *Bed and Breakfast Establishment.* "Bed and Breakfast Establishment" means any owner occupied dwelling unit that contains no more than four rooms where lodging, with or without meals, is provided for compensation to guests.

10. *Building.* "Building" means any structure designed or intended for the support, enclosure, shelter or protection of persons, animals, chattels or property.

11. *Building, Accessory.* "Building, Accessory" means a subordinate building detached from, but located on the same lot as the principal building, the use of which is incidental and accessory to that of the main building or use.

12. *Building, Height.* "Building, Height" means the vertical distance measured from the average elevation of the proposed finished grade at the front of the building to the highest point of the roof or flat roofs, to the deck line of mansard roofs, and the mean height between eaves and ridge for gable, hip and gambrel roofs.

13. *Building Line.* See "Setback Line".

14. *Building, Principal.* "Building, Principal" means a building in which is conducted the main or principal use of the lot on which the building is situated.

15. *Child Day Care Facility.* "Child Day Care Facility" shall mean a building or structure where care, protection and supervision are provided on a regular schedule, for a fee, at least twice a week, to at least six children at one time.

16. *Clinic.* "Clinic" means a place used for the care, diagnosis and treatment of sick, ailing, infirm or injured persons, and those who are in need of medical and surgical attention, but who are provided with board or room or kept overnight on the premises.

17. *Club.* "Club" means a building or portion thereof or premises owned or operated by a person for a social, literary, political, educational or recreational purpose primarily for the exclusive use of members and their guests.

18. *Commission.* "Commission" means the Planning Commission of the City of Urbana.

19. *Comprehensive Plan.* "Comprehensive Plan" means a plan or any portion thereof, adopted by the Planning Commission and the legislative authority of the City, showing the general location and extent of present and proposed physical facilities including housing, industrial and commercial uses, major thoroughfares, parks, schools and other community facilities. This plan establishes the goals, objectives and policies of the community.

20. **Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services.** "Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services" means establishments primarily engaged in providing computing infrastructure, data processing services, Web hosting services (except software publishing), and related services, including streaming support services (except streaming distribution services). Data processing establishments provide complete processing and specialized reports from data supplied by clients or provide automated data processing and data entry services.

~~20~~ 21. *Convalescent Care Facility.* "Convalescent Care Facility" means a building or group of buildings, public or private, which provides personal care or nursing to ill, physically infirm or aged persons for more than sixteen (16) persons who are not related by blood or marriage to the operator.

~~21~~ 22. *Council.* "Council" means the City Council of the City of Urbana.

~~22~~ 23. *Density.* "Density" means a unit of measurement; the number of dwelling units per acre of land.

   A. "Gross Density" means the number of dwelling units per acre of the total land to be developed.

   B. "Net Density" means the number of dwelling units per acre of land when the acreage involved includes only the land devoted to residential uses.

~~23~~ 24. *District.* "District" means any portion of the territory of the City, within which certain uniform regulations and requirements or various combinations thereof apply under the provisions of this chapter.

~~24~~ 25. *Drinking and Eating Establishment.* "Drinking and Eating Establishment" means an establishment serving alcoholic beverages in which the principal business is the sale of such beverages at retail for consumption on the premises and where food may be available for consumption on the premises.

~~25~~ 26. *Drive-Through Facility.* "Drive-Through Facility" means any portion of a building or structure from which business is transacted, or is capable of being transacted, directly with customers located in a motor vehicle during such business transactions.

~~26~~ 27. *Dwelling.* "Dwelling" means any building or portion thereof designed or used exclusively

as the residence or sleeping place of one or more families, but not including a tent, cabin, trailer or trailer coach, boarding or rooming house, hotel or motel, or mobile home.

27 28. *Dwelling, Mobile Home.* "Dwelling, Mobile Home" means a modular unit built on a chassis, with body width exceeding eight feet or body length exceeding thirty-two feet, designed to be used as a dwelling, with or without a permanent foundation, when connected to the required utilities, or two or three sections combined horizontally at the site to form a single dwelling, while still retaining their individual chassis for possible future movement, or one or more room sections that fold, collapse or telescope into the principal unit when being transported and which can be expanded at the site to provide additional living area.

28 29. *Dwelling, Multi-Family.* "Dwelling, Multi- Family" means a dwelling consisting of two or more dwelling units including condominiums with varying arrangements of entrances and party walls. Multi-family housing may include public housing and industrialized units.

29 30. *Dwelling, Single Family.* "Dwelling, Single Family" means a dwelling consisting of a single dwelling unit only, separated from other dwelling units by open space.

30 31. *Dwelling Unit.* "Dwelling Unit" means space, within a dwelling, comprising living, dining, sleeping room or rooms, storage closets, as well as space and equipment for cooking, bathing and toilet facilities, all used by only one family and its household employees.

31 32. *Easement.* "Easement" means authorization by a property owner for the use by another, and for a specified purpose, of any designated part of his property.

32 33. *Educational Institution.* "Educational Institution" means a facility that provides a curriculum of elementary, secondary or continuing academic instruction, including kindergarten, elementary schools, junior high schools, high schools and technical and collegiate level courses.

33 34. *Essential Services.* "Essential Services" means the erection, construction, alteration or maintenance, by public utilities or municipal or other governmental agencies, of underground gas, electrical, water transmission or distribution systems, collection, communication, supply or disposal systems or sites, including poles, wires, mains, drains, sewers, pipes, traffic signals, hydrants or other similar equipment and accessories in connection therewith which are reasonably necessary for the furnishing of adequate service by the public utilities or municipal or other governmental agencies or for the public health or safety or general welfare, but not including buildings.

34 35. *Family.* "Family" means one or more individuals related by blood, marriage, or adoption, or not more than five individuals who are not so related, living together as a single housekeeping unit in a dwelling, and maintaining and using the same and certain other housekeeping facilities in common.

35 36. *Family Care Home.* "Family Care Home" means a licensed residential facility that provides room and board, personal care, habilitation services and supervision in a family setting for at least six but not more than eight persons with developmental disabilities.

36 37. *Fence.* "Fence" means any artificial barrier or divider intended to prevent escape or intrusion, to mark a boundary, or to enclose an area.

37 38. *Floodplain.* "Floodplain" means that land, including the flood fringe and floodway, subject to inundation by the regional flood.

38 39. *Flood, Regional.* "Flood, Regional" means large floods which have previously occurred or which may be expected to occur on a particular stream because of like physical characteristics. The regional flood generally has an average frequency of the one hundred year recurrence interval flood.

39 40. *Floodway.* "Floodway" means that portion of the floodplain, including the channel, which is reasonably required to convey the regional floodwaters. Floods of less frequent recurrence are

usually contained completely within the floodway.

40 41. *Floodway Fringe.* "Floodway Fringe" means that portion of the floodplain, excluding the floodway, where development may be allowed under certain restrictions.

41 42. *Flood Area of a Residential Building.* "Flood Area of a Residential Building" means the sum of the gross horizontal area of the several floors of a residential building, excluding basement floor areas not devoted to residential use, but including the area of roofed porches and roofed terraces. All dimensions shall be measured between interior faces of walls.

42 43. *Floor Area.* "Floor Area" means the sum of the gross horizontal areas of each floor of the principal building, measured from the exterior walls or from the centerline of party walls, including the floor area of accessory buildings and structures.

43 44. *Floor Area Ratio.* "Floor Area Ratio" means the total floor area of the building or buildings on a lot or parcel divided by the gross area of the lot or parcel.

44 45. *Food Processing.* "Food Processing" means the preparation, storage or processing of food products. Examples of these activities include dairies, canneries and other similar businesses.

45 46. *Group Home.* "Group Home" means a residential facility that provides room and board, personal care, habilitation services and supervision in a family setting for at least nine but not more than sixteen persons with developmental disabilities.

46 47. *Home Occupation.* "Home Occupation" means any occupation, profession, activity or use which is accessory to the principal use of the premises and is conducted by a resident occupant, within the dwelling, which does not alter the exterior of the property or affect the residential character of the neighborhood.

47 48. *Hospital.* "Hospital" means an institution providing health services primarily for human in-patient medical or surgical care for the sick or injured and including related facilities such as laboratories, out-patient departments, training facilities, central service facilities and staff offices that are an integral part of the facility.

48 49. *Hotel or Motel.* "Hotel or Motel" means a facility offering transient lodging accommodations on a daily rate to the general public and providing additional services, such as restaurants, meeting rooms and recreational facilities.

49 50. *Junk.* "Junk" means old scrap copper, brass, rope, rags, trash, waste, batteries, paper, rubber, junked, dismantled or wrecked automobiles or parts thereof, iron, steel and other old or scrap ferrous or nonferrous materials.

50 51. *Junkyard.* "Junkyard" means an establishment, place or business used or operated for buying or selling or storing wrecked, scrapped, ruined or dismantled motor vehicles or motor vehicle parts and includes scrap metal processing or storage facilities.

51 52. *Loading Space, Off-Street.* "Loading Space, Off-Street" means space logically and conveniently located for bulk pickups and deliveries, scaled to delivery vehicles expected to be used, and accessible to such vehicles when required off-street parking spaces are filled. Required off-street loading space is not to be included as off-street parking space in computation of required off-street parking space. All off-street loading spaces shall be located totally outside of any street or alley right-of-way.

52 53. *Lot.* "Lot" means a parcel or plot of land of sufficient size to meet minimum zoning requirements for use, coverage and area, and to provide yards and other open spaces as are herein required. The lot shall have frontage on an improved public street or on an approved private street and may consist of:

  A.  A single lot of record;

  B.  A portion of a lot of record;

  C.  A combination of complete lots of record, of complete lots of record and portions of lots of

record, or of portions of lots of record.

~~53~~ **54.** *Lot Area.* "Lot Area" means the computed horizontal area contained within the lot lines.

~~54~~ **55.** *Lot Coverage.* "Lot Coverage" means the ratio of the enclosed ground floor area of all buildings on a lot to the horizontally projected area of the lot, expressed as a percentage.

~~55~~ **56.** *Lot Frontage.* "Lot Frontage." The front of a lot shall be construed to be the portion at the street or road R.O.W. line. For the purpose of determining yard requirements on corner lots and through lots, all sides of a lot adjacent to streets shall be considered frontage and yards shall be provided as indicated under "Yards" in this section.

~~56~~ **57.** *Lot, Minimum Area of.* "Lot, Minimum Area of." The area of a lot is computed exclusive of any portion of the right-of-way of any public or private street.

~~57~~ **58.** *Lot Measurement.* "Lot Measurement" means that a lot shall be measured as follows:

A. "Depth" means the distance between the midpoints of straight lines connecting the foremost points of the side lot lines in front and the rearmost points of the side lot lines in the rear.

B. "Width" means the distance between straight lines connecting front and rear lot lines at each side of the lot, measured at the R.O.W. line except for lots on cul-de- sac streets where it is measured at the setback line.

~~58~~ **59.** *Lot of Record.* "Lot of Record" means a lot which is part of a subdivision recorded in the office of the County Recorder, or a lot or parcel described by metes and bounds, the description of which has been so recorded.

~~59~~ **60.** *Lot Types.* "Lot Types." Terminology used in this Part with reference to corner lots, interior lots and through lots is as follows:

A. "Corner Lot" means a lot located at the intersection of two or more streets. A lot abutting on a curved street or streets shall be considered a corner lot if straight lines drawn from the foremost points of the side lot lines to the foremost point of the lot meet at an interior angle of less than 135 degrees.

B. "Interior Lot" means a lot with only one frontage on a street.

C. "Through Lot" means a lot other than a corner lot with frontage on more than one street. Through lots abutting two streets may be referred to as double frontage lots.

D. "Reversed Frontage Lot" means a lot on which frontage is at right angles to the general pattern in the area. A reversed frontage lot may also be a corner lot.

~~60~~ **61.** *Major Thoroughfare Plan.* "Major Thoroughfare Plan" means the portion of Comprehensive Plan adopted by the City Planning Commission indicating the general location recommended for arterial, collector and local thoroughfares within the appropriate jurisdiction. (Ord. 4059. Passed 5-26-98.)

~~61~~ **62.** *Manufacturing.* "Manufacturing" means the assembling, altering, converting, fabricating, finishing, processing or treatment of a product.

~~62~~ **63.** *Manufacturing, Light.* "Light Manufacturing" means lower-intensity manufacturing uses that require a finished product consisting of small machine parts or electronic equipment, the manufacturing or assembling of small products within a business and elements of wholesale and storage of products in a manner and character that does not create significant negative impacts to the environment or surrounding area. (Ord. 4346. Passed 8-24-10.)

~~63~~ **64.** *Mobile Home Park.* "Mobile Home Park" means any site or tract of land under single ownership, upon which three or more mobile homes used for habitation are parked, either free of charge or for revenue purposes; including any roadway, building, structure, vehicle or enclosure used or intended for use as a part of the facilities of the park.

~~64~~ **65.** *Non-conforming.* "Non-conforming" means a building, structure or use of land existing at the time of enactment of this Part and which does not conform to the regulations of the district or

zone in which it is situated.

65 **66.** *Office.* "Office" means quasi-commercial uses which may often be transitional between retail business and/or manufacturing, and residential uses. Office business generally accommodates such occupations as administrative, executive, professional, accounting, clerical, drafting, etc. Institutional offices of a charitable, philanthropic or religious or educational nature are also included in this classification.

66 **67.** *Open Space.* "Open Space" means land used for resource protection, recreation, amenity and/or buffers.

67 **68.** *Parking Space, Off-Street.* "Parking Space, Off-Street" means an area adequate for parking an automobile with room for opening doors on both sides, together with properly related access to a public street or alley and maneuvering room, but shall be located totally outside of any street or alley right-of-way.

68 **69.** *Performance Bond.* "Performance Bond or Surety Bond" means an agreement by a subdivider or developer with the City for the amount of the estimated construction cost guaranteeing the completion of physical improvements according to plans and specifications within the time prescribed by the subdivider's agreement.

69 **70.** *Personal Services.* "Personal Services" means an establishment primarily engaged in providing services generally involving the care of the person or his/her apparel. Such establishments include but are not limited to the following: laundry, cleaning and garment services; photographic studios; **automobile wash; dog wash;** beauty parlors (including manicure and pedicure salons); barber shops; shoe repair shops, shoe shine parlors, and hat cleaning shops; funeral homes; and other establishments engaged in providing personal services such as tanning salons, steam baths, reducing salons and health clubs, clothing rental, locker rental, and porter services ( see major group 72 of the Standard Manufacturing Classification Manual). For purposes of this code, an adult business is not defined as a personal service establishment.

70 **71.** *Personal Storage Facility.* See "Storage Facility, Personal".

71 **72.** *Planned Unit Development.* "Planned Unit Development" means an area of land in which a variety of housing types and subordinate commercial and industrial facilities are accommodated in a preplanned environment under more flexible standards, such as lot sizes and setbacks, than those restrictions that would normally apply under these Regulations. The procedure for approval of the development contains requirements in addition to those of the standard subdivision, such as building design principles and landscaping plans.

72 **73.** *Printing and Publishing.* "Printing and Publishing" means any business which is engaged in the printing and/or publishing of newspapers, magazines, brochures, business cards and similar activities either for profit or nonprofit.

73 **74.** *Public Service Facility.* "Public Service Facility" means the erection, construction, alteration, operation or maintenance of buildings, power plants or substations, water treatment plants or pumping stations, sewage disposal or pumping plants, or other similar public service structures by a public utility, by a railroad, whether publicly or privately owned, or by a Municipal or other governmental agency, including the furnishing of electrical, gas, rail transport, communication, public or private water and sewage service.

74 **75.** *Public Uses.* "Public Uses" means public parks, schools, administrative and cultural buildings and structures, not including public land or buildings devoted solely to the storage and maintenance of equipment and materials and public service facilities.

75 **76.** *Public Way.* "Public Way" means an alley, avenue, boulevard, bridge, channel, ditch, easement, expressway, freeway, highway, land, parkway, right-of-way, road, sidewalk, street, tunnel, viaduct, walk, bicycle path; or other ways in which the general public or public entity has

a right, or which are dedicated whether improved or not.

~~76~~ 77. *Quasi-Public Use.* "Quasi-Public Use" means churches, parochial schools, hospitals and other facilities of an educational, religious, charitable, philanthropic or nonprofit nature.

~~77~~ 78. *Recreation, Commercial.* "Recreation, Commercial" means any business which is operated as a recreation enterprise, either publicly or privately owned, for profit. Examples include, but are not limited to: golf courses, arcades, bowling alleys, theaters, etc.

~~78~~ 79. *Recreation, Non-Commercial.* "Recreation Non-Commercial" means any business which is operated as a recreational enterprise, either publicly or privately owned, for nonprofit. Examples include, but are not limited to: fishing areas, parks, archery ranges, etc.

~~79~~ 80. *Recycling Center.* "Recycling Center" means an establishment or place of business used, maintained or operated for the purpose of collecting, sorting, cleansing, treating and reconstituting waste or other discarded material for the purpose of recovering and reusing the materials.

~~80~~ 81. *Religious Places of Worship.* "Religious Places of Worship" means an institution that a congregation of people regularly attend to participate in or hold religious services, meetings and other activities, including buildings in which the religious services of any denomination are held.

~~81~~ 82. *Residential Care Facility.* "Residential Care Facility" means a home, that provides either of the following:

   A. Accommodations for seventeen and not more than forty-two unrelated individuals and supervision and personal care services for three or more of those individuals who are dependent on the services of others by reason of age or physical or mental impairment; or

   B. Accommodations for three or more unrelated individuals, supervision and personal care services for at least three of those individuals who are dependent on the services of others by reason of age or physical or mental impairment, and, to at least one of those individuals, any of the skilled nursing care authorized by Ohio R.C. 3721.011.

~~82~~ 83. *Restaurant.* "Restaurant" means a business where the dispensing at indoor tables and the consumption at indoor or outdoor tables of edible foodstuff and/or beverage is the principal business. This definition includes a cafe, cafeteria, coffee shop, delicatessen, lunch room, tearoom, dining room, bar, cocktail lounge and tavern. The total seating area located within the enclosed portion of the premises is more than fifty percent (50%) of the total floor area for the restaurant. This definition does not include a drive-in or carry-out restaurant.

~~83~~ 84. *Restaurant, Fast Food.* "Restaurant, fast food" means a food establishment so developed that its retail or service character is dependent upon providing stacking spaces for motor vehicles so patrons can be served while in their motor vehicles rather than in a building or structure.

~~84~~ 85. *Restaurant, Drive-in.* "Restaurant, Drive-In" means an automobile and truck-oriented use whose principal operation is the dispensing of edible foodstuff and/or beverage for consumption in vehicles, at indoor or outdoor tables, at stand-up counters or to be carried off the premises. Orders generally are not taken at the customer's table and the food is generally served in disposable wrapping or containers. The total seating area, if provided, is less than fifty percent (50%) of the total floor area of the restaurant.

85 86. *Restaurant, Carryout.* "Restaurant, Carryout" means any establishment that provides, as a principal use, the preparation and sale of food and/or beverages in a ready-to-consume state, primarily for consumption off the premises. A carryout restaurant shall not include drive-through facilities, and up to six ( 6) seats may be provided for onsite consumption and/or customer waiting.

~~86~~ 87. *Retail Business.* "Retail Business" means any business selling goods, wares or merchandise directly to the ultimate consumer for direct consumption and not for resale.

~~87~~ 88. *Right-of-Way.* "Right-of-Way" means a strip of land taken or dedicated for use as a public way. In addition to the roadway, it normally incorporates the curbs, lawn strips, sidewalks,

lighting and drainage facilities, and may include special features (required by the topography or treatment) such as grade separation, landscaped areas, viaducts and bridges.

88 89. *Seat*. "Seat", means for the purposes of determining the number of off-street parking spaces for certain uses, the number of seats is the number of seating units installed or indicated, or each twenty-four linear inches of benches, pews or space for loose chairs.

89 90. *Setback Line*. "Setback Line" means a line established under this Part generally parallel with and measured from the lot line, defining the limits of a yard in which no building, other than accessory building, or structure may be located above ground, except as may be otherwise provided herein.

90 91. *Sewers, Central or Group*. "Sewers, Central or Group" means an approved sewage disposal system which provides a collection network and disposal system and central sewage treatment facility for a single development, community or region.

91 92. *Sewers, On-Site*. "Sewers, On-Site" means a septic tank or similar installation on an individual lot which utilizes an aerobic bacteriological process or equally satisfactory process for the elimination of sewage and provides for the proper and safe disposal of the effluent, subject to the approval of health and sanitation officials having jurisdiction.

92 93. *Shopping Center*. "Shopping Center" means a grouping of retail and service uses on a single site that is developed, owned and managed as a unit with off-street parking as an integral part of the unit.

93 94. *Sign*. "Sign" means an outdoor advertising structure, device or visual communication designed or intended to convey information to the public in written or pictorial form.

94 95. *Sign, Abandoned*. "Sign, Abandoned" means a sign which no longer identifies or advertises a bona fide business, lessor, owner, service, product or activity and/or which no legal owner can be found.

95 96. *Sign, Animated*. "Sign, Animated" means any sign which uses movement or change of lighting to depict action or to create a special effect or scene.

96 97. *Sign, Area of*. "Sign, Area of" means the area of a freestanding or projecting sign shall have only one face (the largest) of any double or multi-faced sign counted in calculating its area. The area of a sign shall be measured as follows if the sign is composed of one or two individual cabinets:

A.   The area around and enclosing the perimeter of each cabinet or module shall be summed and then totaled to determine total area. The perimeter of measurable area shall not include embellishments such as pole covers, framing, decorative roofing, etc., provided that there is not written advertising copy on such embellishments.

B.   The sign is composed of more than two sign cabinets or modules, the area enclosing the entire perimeter of all cabinets and/or modules within a single, continuous geometric figure shall be the area of the sign. Pole covers and other embellishments shall not be included in the area of measurement if they do not bear advertising copy.

97 98. *Sign, Awning*. "Sign, Awning" means a sign painted on, printed on or attached flat against the surface of an awning.

98 99. *Sign, Banner*. "Sign, Banner" means a sign made of fabric or any non-rigid material with no enclosing framework.

99 100. *Sign, Changeable Copy*. "Sign, Changeable Copy" means a sign on which the copy changes automatically or manually.

100 101. *Sign, Construction*. "Sign, Construction" means a temporary sign identifying an architect, contractor, subcontractor and/or material supplier, participating in the construction on the property on which the sign is located.

~~101~~ **102.** *Sign, Directional/Informational.* "Sign, Directional/Informational" means an on-premise sign giving directions, instructions or facility information and which may contain the name or logo of an establishment but no advertising copy, for example, parking or entrance and exit signs.

~~102~~ **103.** *Sign, Face of.* "Sign, Face of" means the area of a sign on which the copy is placed.

~~103~~ **104.** *Sign, Flashing.* "Sign, Flashing" means a sign which contains an intermittent or sequential flashing light source used primarily to attract attention. "Flashing sign" does not include changeable copy signs, animated signs or signs which, through reflection or other means, create an illusion of flashing of intermittent light.

~~104~~ **105.** *Sign, Freestanding.* "Sign, Freestanding" means a sign supported upon the ground by poles or braces and not attached to any building.

~~105~~ **106.** *Sign, Governmental.* "Sign, Governmental" means any temporary or permanent sign erected and maintained by the City, County, State or Federal Government for traffic direction or for designation of or direction to any school, hospital, historical site or public service, property or facility.

~~106~~ **107.** *Sign, Height of.* "Sign, Height of" means the vertical distance measured from the highest point of a sign, excluding decorative embellishments, to the grade of the adjacent street or surface grade beneath the sign, whichever is less.

~~107~~ **108.** *Sign, Identification.* "Sign, Identification" means a sign whose copy is limited to the name and address of a building, institution, or person and/or the activity or occupation being identified.

~~108~~ **109.** *Sign, Marquee.* "Sign, Marquee" means any sign attached to or supported by a marquee structure; a roof-like structure or canopy extended from the facade of a building.

~~109~~ **110.** *Sign, Nameplate.* "Sign, Nameplate" means a non-electric on-premise identification sign giving only the name, address and/or occupation of an occupant or group of occupants.

~~110~~ **111.** *Sign, Non-Conforming.* "Sign, Non-Conforming" means a sign which was erected legally, but which does not comply with subsequently enacted sign restrictions and regulations.

~~111~~ **112.** *Sign, Off-Premises.* "Sign, Off-Premises" means a sign structure advertising an establishment, merchandise, service or entertainment which is not sold, produced, manufactured or furnished at the property on which such sign is located, for example, billboards or outdoor advertising.

~~112~~ **113.** *Sign, On-Premises.* "Sign, On-Premises" means a sign which pertains to the use of the premises on which it is located.

~~113~~ **114.** *Sign, Political.* "Sign, Political" means a temporary sign used in connection with a local, state or national election or referendum.

~~114~~ **115.** *Sign, Portable.* "Sign, Portable" means any sign designed to be moved easily and not permanently affixed to the ground or to a structure or building.

~~115~~ **116.** *Sign, Projecting.* "Sign, Projecting" means a sign, other than a flat wall sign, which is attached to and projects from a building wall or other structure not specifically designed to support the sign.

~~116~~ **117.** *Sign, Real Estate.* "Sign, Real Estate" means a temporary sign advertising the real estate upon which the sign is located as being for rent, lease or sale.

~~117~~ **118.** *Sign, Rotating.* "Sign, Rotating" means a sign in which the sign itself or any portion of the sign moves in a revolving or similar manner. Such motion does not refer to methods of changing copy.

~~118~~ **119.** *Sign, Snipe.* "Sign, Snipe" means a temporary sign or poster affixed to a tree, fence, etc.

~~119~~ **120.** *Sign, Subdivision Identification.* "Sign, Subdivision Identification" means a freestanding or wall sign identifying a recognized subdivision, condominium complex or residential development.

~~120~~ **121.** *Sign, Temporary.* "Sign, Temporary" means a sign not constructed or intended for long term use.

~~121~~ **122.** *Sign, Under-Canopy.* "Sign, Under-Canopy" means a sign suspended beneath a canopy, ceiling, roof or marquee.

~~122~~ **123.** *Sign, Wall.* "Sign, Wall" means a sign attached parallel to and extending not more than fifteen inches from the wall of a building. "Wall Sign" includes painted, individual letter and cabinet signs, and signs on a mansard.

~~123~~ **124.** *Sign, Window.* "Sign, Window" means a window sign installed inside a window and intended to be viewed from the outside.

~~124~~ **125.** *Site Plan.* "Site Plan" means a plan, prepared to scale, showing accurately and with complete dimensioning, the boundaries of a site and the location of all buildings, structures, uses and principal site development features proposed for a specific parcel of land.

~~125~~ **126.** *Story.* "Story" means that part of a building between the surface of a floor and the ceiling immediately above.

~~126~~ **127.** *Storage Facility.* "Storage Facility" means a building used primarily for the holding of goods and merchandise.

~~127~~ **128.** *Storage Facility, Personal.* "Storage Facility, Personal" means a building or group of buildings in a controlled access compound that contains equal or varying sizes of individual compartmentalized, and controlled access stalls or lockers for the storage of residential customers' goods or wares.

~~128~~ **129.** *Structure.* "Structure" means anything constructed or erected, the use of which requires location on the ground or attachment to something having a fixed location on the ground. Among other things, structures include buildings, mobile homes, walls, fences and billboards.

~~129~~ **130.** *Swimming Pool.* "Swimming Pool" means a pool, pond, lake or open tank containing at least 1.5 feet of water at any point and maintained by the owner or manager.

A. "Private" means exclusively used without paying an additional charge for admission by the residents and guests of a single household, a multi-family development, or a community, the members and guests of a club, or the patrons of a motel or hotel; an accessory use.

B. "Community" means operated with a charge for admission; a primary use.

~~130~~ **131.** *Thoroughfare, Street or Road.* "Thoroughfare, Street or Road" means the full width between property lines bounding every public way of whatever nature, with a part thereof to be used for vehicular traffic and designated as follows:

A. "Alley" means a minor street used primarily for vehicular service access to the back or side of properties abutting on another street.

B. "Arterial Street" means a highway primarily for through traffic, carrying heavy loads and a large volume of traffic, usually on a continuous route.

C. "Collector Street" means a thoroughfare, whether within a residential, industrial, commercial or other type of development, which primarily carries traffic from local streets to arterial streets, including the principal entrance and circulation routes within residential subdivisions.

D. "Cul-de-sac" means a local street of relatively short length with one end open to traffic and the other end terminating in a vehicular turnaround.

E. "Dead-end Street" means a street temporarily having only one outlet for vehicular traffic and intended to be extended or continued in the future.

F. "Local Street" means a street primarily for providing access to residential or other abutting property.

G. "Loop Street" means a type of local street, each end of which terminates at an intersection with the same arterial or collector street, and whose principal radius points of the 180 degree system of turns are not more than 1,000 feet from the arterial or collector street, nor normally more than 600 feet from each other.

H. "Marginal Access Street" means a local or collector street, parallel and adjacent to an arterial or collector street, providing access to abutting properties and protection from arterial or collector streets. Also called a frontage street.

~~131~~ 132. *Transport Terminals.* "Transport Terminals" means any business, structure or premise which primarily receives or distributes goods **and/or a facility where trucks load and unload cargo and freight and where the cargo and freight may be broken down or aggregated into smaller or larger loads for transfer to other vehicles or other modes of transportation.** any business, structure or premise which primarily receives or distributes goods.

~~132~~ 133. *Use.* "Use" means the specific purposes for which land or a building is designated, arranged, intended or for which it is or may be occupied or maintained. "Used" or "occupied" includes "intended, designed or arranged to be used or occupied."

~~133~~ 134. *Use, Accessory.* "Use, Accessory" means a use or structure subordinate to the principal use of a building or to the principal use of the land, which is located on the same lot as the principal use, and which is serving a purpose customarily incidental to the use of the principal building or land use.

~~134~~ 135. *Use, Conditional.* "Use, Conditional" means a use which is permitted in a district only if a zoning certificate therefore is expressly authorized by the Building and Zoning Appeals Board.

~~135~~ 136. *Use, Non-Conforming.* "Use, Non-Conforming" means any building, structure, or premises legally existing or used at the time of adoption of this chapter, or any amendment thereto, and which does not conform with the use regulations of the district in which located. Any such building, structure, or premises conforming in respect to use but not in respect to height, area, yards, or courts, or distance requirements from more restricted districts or uses, shall not be considered a non-conforming use.

~~136~~ 137. *Use, Principal Permitted.* "Use, Principal Permitted" means a use which is permitted outright in a district for which a zoning certificate shall be issued by the Zoning Inspector provided that the applicant meets the applicable requirements of the Part.

~~137~~ 138. *Variance.* "Variance" means a modification of the strict terms of the relevant regulations where the modification will not be contrary to the public interest and where owing to conditions peculiar to the property and not the result of the action of the applicant, a literal enforcement of the regulations would result in unnecessary and undue hardship.

~~138~~ 139. *Veterinary Animal Hospital or Clinic.* "Veterinary Animal Hospital or Clinic" means a place used for the care, grooming, diagnosis and treatment of sick, ailing, infirm or injured animals, and those who are in need of medical or surgical attention, and may include overnight accommodations on the premises for the treatment, observation and/or recuperation. It may also include boarding that is incidental to the primary activity.

~~139~~ 140. *Vicinity Map.* "Vicinity Map" means a drawing located on the plat which sets forth by dimensions or other means, the relationship of the proposed subdivision or use to other nearby developments or landmarks and community facilities and services within the general area in order to better locate and orient the area in question.

~~140~~ 141. *Walkway.* "Walkway" means a public way, four feet or more in width, for pedestrian use only, whether along the side of a road or not.

141 **142.** *Wholesale and Warehousing.* "Wholesale and Warehousing" means business establishments that generally store and sell commodities in large quantities or by the piece to retailers, jobbers, other wholesale establishments or manufacturing establishments. These commodities are basically for further resale, for use in the fabrication of a product or for use by a business service.

142 **143.** *Yard.* "Yard" means a required open space other than a court unoccupied and unobstructed by any structure or portion of a structure from three feet above the general ground level of the graded lot upward; provided, accessories, ornaments and furniture may be permitted in any yard, subject to height limitations and requirements limiting obstruction of visibility.

143 **144.** *Yard, Front.* "Yard, Front" means a yard extending between side lot lines across the front of a lot and from the front lot line to the front of the principal building.

144 **145.** *Yard, Rear.* "Yard, Rear" means a yard extending between side lot lines across the rear of a lot and from the rear lot line to the rear of the principal building.

145 **146.** *Yard, Side.* "Yard, Side" means a yard extending from the principal building to the side lot line on both sides of the principal building between the lines establishing the front and rear yards.

146 **147.** *Zoning Certificate.* "Zoning Certificate" means a document issued by the Zoning Inspector authorizing the occupancy or use of a building or structure or the actual use of lots or land in accordance with the previously issued zoning permit.

147 **148.** *Zoning Inspector.* "Zoning Inspector" means the Zoning Inspector of the City, empowered by the Director of Administration to administer, enforce, and interpret the provisions, regulations, and requirements of this Part.

148 **149.** *Zoning Permit.* "Zoning Permit" means a document issued by the Zoning Inspector authorizing the use of lots, structures, uses of land and structures, and the characteristics of the uses."

**SECTION TWO:**
All actions of City Council related to this legislation were conducted in open meetings pursuant to Urbana Codified Ordinance 107.01 and Ohio Revised Code 121.22.

**SECTION THREE:**
This ordinance shall become effective at the earliest date permitted by law.

_____
President, City of Urbana Council

PASSED:_____

ATTEST: _____
      Clerk of Council

This Ordinance approved by me this _____ day of _____, 2025.

_____
Mayor, City of Urbana

REVIEWED: _____ 3/26/2025
    Director of Law      Date

Jumper: _____ Yay _____ Nay _____ N/A

Scott: _____ Yay _____ Nay _____ N/A

Davis: _____ Yay _____ Nay _____ N/A

Truelove: _____ Yay _____ Nay _____ N/A

Thackery: _____ Yay _____ Nay _____ N/A

Collier: _____ Yay _____ Nay _____ N/A

Bean: _____ Yay _____ Nay _____ N/A

# EXHIBIT 4

# ORDINANCE NO. 4621-25

**AN ORDINANCE TO AMEND CHAPTER 1126 OF THE CODIFIED ORDINANCES** (Three (3) readings required, public hearing required.  Public Hearing Advertisement date: Friday, April 4, 2025)

**Department Requesting: Zoning**                **Sponsor:  Councilwoman Audra Bean**

**WHEREAS,** Chapter 1126 of the Urbana Codified Ordinances, addresses Planning and Zoning requirements for the M-1 Manufacturing District; and

**WHEREAS,** Chapter 1126 of the Urbana Codified Ordinances has, from time to time, been updated to include modifications as the need arises; and

**WHEREAS,** the need has arisen to make such modifications,

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

**SECTION ONE:** That Chapter 1126 of the Codified Ordinances is hereby amended as follows, with the stricken language to be removed, and the boldface language to be added:

"CHAPTER 1126
M-1 Manufacturing District

1126.01  Purpose.
1126.02  Principally permitted uses.
1126.03  Permitted accessory uses.
1126.04  Conditionally permitted uses.
1126.05  Minimum lot area and width.
1126.06  Minimum front yard setback.
1126.07  Minimum side yard setback.
1126.08  Minimum rear yard setback.
1126.09  Maximum height regulations.
1126.10  Minimum floor area.
1126.11  Maximum lot occupation.
1126.12  Off-street parking and loading.
1126.13  Land use intensity.

CROSS REFERENCES

District established - see P. & Z. 1103.01
Special provisions for industrial uses - see P. & Z. 1129.07
Signs permitted in manufacturing zones - see P. & Z. 1137.03(e)

1126.01 PURPOSE.

~~It is the purpose of the M-1 Manufacturing District to accommodate manufacturing and~~

~~industrial establishments and related uses.~~ **It is the purpose of the M-1 Manufacturing District to accommodate manufacturing, industrial and technology establishments and related uses.**

1126.02 PRINCIPALLY PERMITTED USES.
   Principally permitted uses are as follows:
   (a)  Personal Services
   (b)  Offices
   (c)  ~~Automotive Repair~~ **Light Manufacturing**
   (d)  Automotive Filling Station
   (e)  Manufacturing
   (f)  Wholesale **and** Warehousing
   (g)  Food Processing
   (h)  Transport Terminals
   (i)  Printing and Publishing
   (j)  Recycling Centers
   **(k) Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services**


1126.03 PERMITTED ACCESSORY USES.
   Accessory permitted uses are as follows:
   (a)  Outside Storage Facilities
   (b)  Outdoor Storage Display
   (c)  Silos
   (d)  Radio Towers
   (e)  Communication Towers
   (f)  Signs
   (g)  Off-Street Parking and Loading
   (h)  Guard Houses
   (i)  Fences and Walls: see Section 1129.10 for regulations
   (j)  Refuse Facilities (Dumpsters): see Section 1129.05 for regulations
   (k)  Garages
   (l)  Uses which are similar or clearly incidental to the Principally Permitted Uses on the Lot.
   **(m) Emergency Generators**

1126.04 CONDITIONALLY PERMITTED USES.
   Conditionally permitted uses are as follows:
   (a)  Non-Commercial Recreation
   (b)  Commercial Recreation
   (c)  Restaurants
   (d)  Child Day Care Facilities
   (e)  Clubs
   (f)  Public Service Facilities
   (g)  Public and Quasi-Public Uses
   (h)  **Personal** Storage Facilities
   (i)  Adult Entertainment Facility.
   **(j) Automotive Repair**

(Ord. 4059. Passed 5-26-98.)

1126.05 MINIMUM LOT AREA AND WIDTH.
   The minimum lot area for properties in the M-1 Manufacturing District shall not be less than 15,000 square feet with a width of not less than 100 feet.

1126.06 MINIMUM FRONT YARD SETBACK.
   The minimum front yard setback for properties in the M-1 Manufacturing District shall not be less than 50 feet from the front lot line.

1126.07 MINIMUM SIDE YARD SETBACK.
   The minimum side yard setback for properties in the M-1 Manufacturing District shall be as follows:
   (a)  Principal structures shall not be closer than 10 feet from the side lot line.
   (b)  Accessory structures shall not be closer than 5 feet from the side lot line.

1126.08 MINIMUM REAR YARD SETBACK.
   The minimum rear yard setback for properties in the M-1 Manufacturing District shall not be less than 40 feet from the rear lot line.

1126.09 MAXIMUM HEIGHT REGULATIONS.
   (a)  The maximum height for any building or structure located within 200 feet of a residential district or use shall be 50 feet. **An additional 1' in building height shall be permitted for each additional 1' in setback provided beyond the minimums listed herein, not to exceed 200 feet.**

   (b)  The maximum height for any building or structure not located within 200 feet of a residential district or use shall be the distance measured from the nearest adjoining right-of-way line and the closest point of the proposed building or structure.
(Ord. 4521-20. Passed 4-7-20.)

1126.10 MINIMUM FLOOR AREA.
   There shall be no minimum floor area for structures in the M-1 Manufacturing District.

1126.11 MAXIMUM LOT OCCUPATION.
   The maximum percentage of any property in the M-1 Manufacturing District to be covered by principal and accessory uses is 50 percent. **Required off-street parking and loading areas are not included in lot occupancy calculation.**

1126.12 OFF-STREET PARKING AND LOADING.
   Off-street parking and loading shall be required as specified in Section 1133.01 , Off-Street Parking and Loading.

~~1126.13 LAND USE INTENSITY.~~
   ~~The floor area ratio for properties in the M-1 Manufacturing District shall not exceed .50.~~"

**SECTION TWO:**
All actions of City Council related to this legislation were conducted in open meetings pursuant

to Urbana Codified Ordinance 107.01 and Ohio Revised Code 121.22.

**SECTION THREE:**
This ordinance shall become effective at the earliest date permitted by law.

_____
President, City of Urbana Council

PASSED:_____

ATTEST: _____
     Clerk of Council

This Ordinance approved by me this _____ day of _____, 2025.

_____
Mayor, City of Urbana

REVIEWED: _~signature~_ 3/26/2025
   Director of Law    Date

Jumper: _____ Yay _____ Nay _____ N/A

Scott: _____ Yay _____ Nay _____ N/A

Davis: _____ Yay _____ Nay _____ N/A

Truelove: _____ Yay _____ Nay _____ N/A

Thackery: _____ Yay _____ Nay _____ N/A

Collier: _____ Yay _____ Nay _____ N/A

Bean: _____ Yay _____ Nay _____ N/A

# EXHIBIT 5

# RESOLUTION NO. 2727-26

A RESOLUTION IMPOSING A TEMPORARY MORATORIUM ON THE ESTABLISHMENT OR CONVERSION OF OTHER STRUCTURES OR BUILDINGS INTO A DATA CENTER, INCLUDING THE DEVELOPMENT AND CONSTRUCTION OF ANY BUILDING, STRUCTURE, USE OR CHANGE OF USE, THAT WOULD ALLOW DATA CENTERS, AND FOR A PERIOD OF TWELVE (12) MONTHS FROM THE EFFECTIVE DATE OF THIS RESOLUTION, IN ORDER TO ALLOW THE CITY ADMINISTRATION AND CITY COUNCIL TIME TO INVESTIGATE THE FINDINGS OF THE STATE OF OHIO LEGISLATURE'S EVALUATION OF IMPACT THAT A DATA CENTER WOULD HAVE ON LOCAL COMMUNITY IE; WATER, ELECTRIC, ENVIRONMENT, CRITICAL INFRASTRUCTURE AND FUTURE COMMUNITY PLANNING, TO INVESTIGATE THE IMPACT OF A DATA CENTER ON CITY RESOURCES AND PROPERTY VALUES AND TO BETTER UNDERSTAND ANY NOISE OR POLLUTION GENERATED THEREBY, AND THE IMPACT ON SAFETY, THE POWER GRID, AND WATER USAGE, AND TO FURTHER REVIEW APPLICABLE FEDERAL CODES, OHIO STATUTES, CODES AND REGULATIONS ALONG WITH THE CITY'S CODIFIED ORDINANCES RELATIVE TO SUCH ACTIVITY, AND DECLARING AN EMERGENCY. (One (1) reading required, no public hearing required).

**Department Requesting: N/A**                **Sponsor: Councilwoman Amy Jumper**

**WHEREAS,** pursuant to the Constitution of the State of Ohio, the Ohio Revised Code, and the City of Urbana Charter provide that municipalities have the power to enact laws that are for the health, safety, and welfare of their citizens, which may include restricting areas used for certain businesses and trades.

**WHEREAS,** the Council finds it to be in the best interest of the health, safety, and general welfare of the citizens of Urbana to adopt a twelve (12) month moratorium on the establishment, constructions, conversion of other structure for data centers or commencement of construction of data centers within the City while it undertakes a review and/or study of the ordinances of the City of Urbana, including zoning, building, and business regulation sections of the Urbana Codified Ordinances to assure that such facilities are properly zoned, safe for the community, properly constructed or rehabilitated to mitigate the potential harmful impact such facilities can have on residential and commercial areas.

**WHEREAS,** City Council wishes to study the impact of data centers on the public health and safety of surrounding neighborhoods and consider and study the benefits that a data center may bring to the community. Groups have raised concerns about property values, noise, safety, the power grid, the environment, and water usage in areas surrounding these facilities.

**WHEREAS,** this Council will be able to enact reasonable regulations to protect the health, safety, welfare, peace, and comfort of the citizens of Urbana more effectively if a moratorium is in place.

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

**SECTION ONE:**
That the Council of the City of Urbana hereby imposes a twelve (12) month moratorium on the consideration, approval or authorization of any licenses, permits, permitted uses, special uses, accessory uses or variances that would enable the granting of any permits, allow establishment, construction, conversion of other structures into data centers, or commencement of construction of data centers within the City of Urbana. Said moratorium extends to the submission, consideration or approval of all applications for licenses, permits, general development plans, final development plans, special or accessory use permits, occupancy permits, or building permits. Data centers are defined for this moratorium as AI data centers, enterprise data centers, managed services data centers, colocation data centers, cloud data centers, or edge data centers, as well as physical facilities that organizations use to store their computing machines and related hardware that exceed 10,000 square feet in size. This moratorium includes construction of structures that house information technology (IT) systems infrastructure like servers, data storage drives, and network equipment and construction of accompanying accessory uses such as utilities, external mechanical equipment, water towers, and security facilities that may be located on the site of a data center. This moratorium does not apply to repair or replacement of existing data centers or the data centers contained in existing businesses within the City of Urbana.

**SECTION TWO:**
That this moratorium shall become effective on the date that this resolution, following its passage by the Council, shall remain effective for twelve (12) months following the date upon which it became effective unless extended upon a majority vote of the Council, if the Council finds such continuance is required to allow sufficient time for the administration to complete its study and recommend what action, if any, the City of Urbana should take to safeguard the public health, safety, and welfare through the provision of adequate planning, zoning, land use, or other regulatory controls that are specifically applicable to activities covered under this resolution. City Council may also lift the moratorium prior to its expiration.

**SECTION THREE:**
That this moratorium suspends and tolls the Urbana Codified Ordinances, any time periods prescribed by law, within which any public official or official body of the City of Urbana is required to take action upon any application for a permit, license, special use permit, building permit, site plan approval or the like, for data centers, and no such application shall be deemed to be approved by the failure of any other public official or official body to approve or deny said application during the time when this moratorium shall be in effect.

**SECTION FOUR:**
That the City Administration is hereby directed to begin a study to recommend what action, if any, the City of Urbana should take to preserve the public health, safety, and welfare through the provision of adequate planning, zoning, land use, or other regulatory controls that are specifically applicable to data centers.

**SECTION FIVE:**
If any section, phrase, sentence, or portion of this resolution is for any reason held invalid or unconstitutional by any Court of competent jurisdiction, such portion shall be deemed a separate,

distinct, and independent provision, and such holding shall not affect the validity of the remaining portions thereof.

**SECTION SIX:**
All actions of City Council related to this legislation were conducted in open meetings pursuant to Urbana Codified Ordinance 107.01 and Ohio Revised Code 121.22.

**SECTION SEVEN:**
This ordinance is hereby declared to be an emergency in nature and, therefore, shall become effective upon signature by the Mayor.

_____
President, City of Urbana Council

PASSED: 3/3/2026

ATTEST: _____
Clerk of Council

This Ordinance approved by me this _____ day of _____, 2026.

*Effective 3/13/2026.*
*Pursuant to*
*Section 3.04 of*  _____
*the Urbana City Charter*  Mayor, City of Urbana

REVIEWED: _____ 2/12/2026
Director of Law        Date

| | Yay | Nay | N/A |
|---|---|---|---|
| Jumper: | ✓ | | |
| Scott: | ✓ | | |
| Davis: | ✓ | | |
| Truelove | ✓ | | |
| Thackery: | ✓ | | |
| Collier: | ✓ | | |
| Bean: | | ✓ | |

# EXHIBIT 6



52 East Gay Street
P.O. Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | vorys.com

Founded 1909

Joseph R. Miller
Direct Dial   (614) 464-6233
Direct Fax    (614) 464-6233
Email jrmiller@vorys.com

April 10, 2026

**VIA EMAIL**

Preston Carter, Zoning and Compliance Officer
Spencer Mitchell, Director of Administration
Mark Feinstein, Director of Law
205 S Main Street
Urbana, OH  43078
preston.carter@ci.urbana.oh.us
spencer.mitchell@ci.urbana.oh.us
mark.feinstein@ci.urbana.oh.us

Brodi J. Conover
Bricker Graydon Wyatt LLP
2 East Mulberry Street
Lebanon, OH  45036
bconover@bricker.com

Re:     Immediate Confirmation Required – BZA Hearing Date for Appeal

Dear City Officials:

We write to you regarding the appeal submitted on March 20, 2026 ("Appeal") to the Building and Zoning Board of Appeals ("BZA") for the City of Urbana ("City") on behalf of Thor Equities, LLC, Urbana Owner I LLC, and Highland55 Investments LLC (collectively, "Appellants").  In accordance with Mr. Carter's explicit instructions, we sent the Appeal directly to Mr. Carter via email, copying Mr. Feinstein, Mr. Conover, and the Department of Zoning and Compliance.  As a courtesy, we also submitted two hard copies of the Appeal – one for Mr. Carter and one for the BZA – and paid the required $200.00 fee to the City, for which we received a receipt.

Under Zoning Code Sections 1105.06 and 1105.09, the BZA is required to hear Appellants' Appeal.  Zoning Code Section 1105.36 states, "[t]he Building and Zoning Appeals Board shall hold a public hearing within thirty (30) days after the receipt of an application for an appeal or variance from the Zoning Inspector or an applicant."  The City's failure to do so violates its own



April 10, 2026
Page 2

Zoning Code and the Appellants' constitutionally protected due process rights, which guarantee "the opportunity to be heard at a meaningful time and in a meaningful manner." *Bierlein v. City of Grandview Heights Bd. of Zoning Appeals*, Franklin C.P. No. 17CVF-5071, 2018 Ohio Misc. LEXIS 6139, *7 (Oct. 19, 2018) (explaining that proceedings before a board of zoning appeals are administrative proceedings that "must comport with due process[]") (internal quotations and citation omitted); *Cleveland Skydiving Ctr., Inc. v. Troy Twp. Bd. of Zoning Appeals*, 2025-Ohio-2808, ¶ 48 (11th Dist.) ("The fundamental principle of procedural due process is the right to reasonable notice and a reasonable opportunity to be heard."). *See Turner v. City of Englewood*, 2010-Ohio-5881, ¶¶ 15, 20 (holding that a municipality's failure to comply with its own procedures, including failing to conduct a mandatory hearing, deprived the property owner of procedural due process, rendered its actions without proper authorization, and precluded collection of demolition costs).

Despite our timely and complete submission, we have yet to receive any acknowledgment or confirmation from the City regarding the status of the Appeal. The next BZA hearing is scheduled for April 13, 2026. It is unacceptable – and a violation of Appellants' rights – that, to date, we have not been informed whether the Appeal will be placed on the agenda and considered during this next BZA hearing. Under Zoning Code Sections 1105.37 and 1105.38, notice of a BZA hearing for an appeal must be provided at least ten days before the hearing. Because the City has failed to provide proper notice as required by Zoning Code Section 1105.37, we expect the Appeal to be placed on the agenda for the scheduled BZA meeting on May 11, 2026, with the required notice given.

We request immediate confirmation that the Appeal will be heard by the BZA on May 11, 2026. Thank you in advance for your cooperation and attention to this request. We look forward to your prompt response.

Very truly yours,

Joseph R. Miller

cc: Christopher L. Ingram
Elizabeth S. Alexander
Garrett M. Anderson
Brodi S. Voight
Department of Zoning and Compliance (ZoningandCompliance@ci.urbana.oh.us)

# EXHIBIT 7

**Voight, Brodi S.**

| | |
|---|---|
| **From:** | Conover, Brodi <BConover@bricker.com> |
| **Sent:** | Friday, April 10, 2026 4:25 PM |
| **To:** | Miller, Joseph R.; preston.carter@ci.urbana.oh.us; spencer.mitchell@ci.urbana.oh.us; mark.feinstein@ci.urbana.oh.us |
| **Cc:** | ZoningandCompliance@ci.urbana.oh.us; Ingram, Christopher L.; Alexander, Elizabeth S. (Liz); Anderson, Garrett M.; Voight, Brodi S.; Sherman, Carly |
| **Subject:** | [EXTERNAL] RE: Immediate Confirmation Required – BZA Hearing Date for Appeal |

**CAUTION EXTERNAL:** Confirm you trust **bconover@bricker.com**.

Joe –

Your client's appeal is on the BZA's agenda for Monday night (April 13)—consistent with the timing requirements in the City's codified ordinances.  The notices under Section 1105.37 and .38 were timely issued, so there is no concern there—but thanks for checking.

Thanks,
Brodi



**Brodi J. Conover**

Partner

bricker.com                bconover@bricker.com

2 East Mulberry Street      **Direct**    513 870 6693
Lebanon, OH 45036          **Mobile**   513 518 2109

*Please note our Firm's new name – **Bricker Graydon Wyatt LLP** – and email domain – **@bricker.com**.*

This message, including any attachments, is confidential and may be privileged or protected by work product rules. If you received it in error, please delete it from your system and notify us at 614 227 8899 or info@bricker.com. Bricker Graydon LLP and Wyatt, Tarrant & Combs, LLP merged effective January 1, 2026, forming Bricker Graydon Wyatt LLP, an expanded firm serving clients across multiple states. Our email addresses now use the **@bricker.com** domain. To ensure you continue receiving our communications, please add **@bricker.com** to your email safelist or approved senders list.

**From:** Doughty, Nina M. <nmdoughty@vorys.com> **On Behalf Of** Miller, Joseph R.
**Sent:** Friday, April 10, 2026 3:43 PM
**To:** preston.carter@ci.urbana.oh.us; spencer.mitchell@ci.urbana.oh.us; mark.feinstein@ci.urbana.oh.us; Conover, Brodi <BConover@bricker.com>
**Cc:** ZoningandCompliance@ci.urbana.oh.us; Miller, Joseph R. <JRMiller@vorys.com>; Ingram, Christopher L. <clingram@vorys.com>; Alexander, Elizabeth S. (Liz) <esalexander@vorys.com>; Anderson, Garrett M. <gmanderson@vorys.com>; Voight, Brodi S. <bsvoight@vorys.com>
**Subject:** [EXT] Immediate Confirmation Required – BZA Hearing Date for Appeal

Please see the attached correspondence sent on behalf of Joe Miller.

1



**Joseph R. Miller**
Partner

**o:** 614.464.6233
jrmiller@vorys.com
**vorys.com**

From the law offices of Vorys, Sater, Seymour and Pease LLP.

This email has been sent for the sole use of the intended recipient(s), and may contain private, confidential or privileged information. If you are not the intended recipient, please advise the sender by reply email and destroy all copies of this email. Any unauthorized review, use, disclosure or distribution is prohibited.

2

# EXHIBIT 8

**BEFORE THE CITY OF URBANA, OHIO**
**BUILDING AND ZONING APPEALS BOARD**

| | | |
|---|---|---|
| **THOR EQUITIES, LLC,** | : | |
| 25 WEST 39TH STREET | : | |
| NEW YORK, NY 10018, | : | |
| | : | |
| **URBANA OWNER I LLC,** | : | **APPEAL FROM THE CITY OF** |
| 3040 RIVERSIDE DRIVE, STE 122 | : | **URBANA'S FEBRUARY 20, 2026** |
| COLUMBUS, OHIO 43221, | : | **DENIAL OF SITE PLAN** |
| | : | **APPLICATION** |
| AND | : | |
| | : | |
| **HIGHLAND55 INVESTMENTS LLC,** | : | |
| 3040 RIVERSIDE DRIVE, STE 122 | : | |
| COLUMBUS, OHIO 43221, | : | |
| | : | |
| APPLICANTS-APPELLANTS | : | |
| | : | |

---

**MOTION OF APPLICANTS-APPELLANTS THOR EQUITIES, LLC, URBANA
OWNER I LLC, AND HIGHLAND55 INVESTMENTS LLC TO CONTINUE THE
APRIL 13, 2026 BUILDING AND ZONING APPEALS BOARD HEARING**

---

Applicants-Appellants Thor Equities, LLC, Urbana Owner I LLC, and Highland55

Investments LLC (collectively, "Thor"), by and through the undersigned counsel, move for a

continuance of the hearing of the Building and Zoning Appeals Board ("BZA") of the City of

Urbana, Ohio ("City") currently scheduled for April 13, 2026.  Thor's appeal of the denial of its

Site Plan Application (the "Appeal") is set to be heard at the BZA hearing on April 13, 2026.

Section 1105.38 of the City's Zoning Code requires that:

> Before holding the public hearing required in Section 1105.36, written notice of the
> hearing shall be mailed by the chairman of the Building and Zoning Appeals Board,
> by first class mail, at least ten days before the day of the hearing to all parties in
> interest including all contiguous and adjoining properties. The notice shall contain
> the same information as required of notices published in newspapers as specified
> in Section 1105.37.

Despite this requirement, Thor and its counsel did not receive any notice of the April 13, 2026 BZA hearing.  Counsel for Thor was clearly identified in the Appeal to the BZA and in correspondence with the City regarding Thor's Site Plan Application and the Appeal.  Thor only became aware of the scheduled hearing after sending a letter to the City on April 10, 2026 requesting confirmation of the hearing date (the "Letter"), explaining that Thor's Appeal could not lawfully be considered during the April 13, 2026 hearing because Thor had not received notice of such hearing.  *See* Zoning Code § 1105.38.  A true and accurate copy of the Letter is attached hereto as **Exhibit A**.  A true and accurate copy of the City's response to the Letter is attached hereto as **Exhibit B**.  Had Thor not proactively inquired, Thor would not have learned of the hearing at all.  The City's failure to provide the required notice to Thor and its counsel has prevented Thor from preparing its appeal and meaningfully participating in the April 13, 2026 hearing, in violation of its constitutionally protected due process rights.

Thor respectfully requests that the BZA continue the April 13, 2026 hearing to the scheduled May 11, 2026 BZA meeting.

DATE: April 13, 2026

VORYS, SATER, SEYMOUR AND PEASE LLP,

*/s/ Joseph R. Miller*
Joseph R. Miller (0068463)
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
Garrett M. Anderson (0100121)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone/Fax: (614) 464-6233
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com
gmanderson@vorys.com

*Counsel for Applicants-Appellants*
*Thor Equities LLC, Urbana Owner I LLC,*
*and Highland55 Investments LLC*

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing has been

served this 13th day of April, 2026, via email upon:


Preston Carter, Zoning and Compliance Officer
Spencer Mitchell, Director of Administration
Mark Feinstein, Director of Law
205 S Main Street
Urbana, OH  43078
preston.carter@ci.urbana.oh.us
spencer.mitchell@ci.urbana.oh.us
mark.feinstein@ci.urbana.oh.us

Brodi J. Conover
Bricker Graydon Wyatt LLP
2 East Mulberry Street
Lebanon, OH  45036
bconover@bricker.com




                                                    */s/ Joseph R. Miller*
                                                    Joseph R. Miller

3

# EXHIBIT A



**52 East Gay Street**
**P.O. Box 1008**
**Columbus, Ohio 43216-1008**

**614.464.6400 | vorys.com**

**Founded 1909**

**Joseph R. Miller**
**Direct Dial  (614) 464-6233**
**Direct Fax  (614) 464-6233**
**Email jrmiller@vorys.com**

April 10, 2026

## VIA EMAIL

Preston Carter, Zoning and Compliance Officer
Spencer Mitchell, Director of Administration
Mark Feinstein, Director of Law
205 S Main Street
Urbana, OH  43078
preston.carter@ci.urbana.oh.us
spencer.mitchell@ci.urbana.oh.us
mark.feinstein@ci.urbana.oh.us

Brodi J. Conover
Bricker Graydon Wyatt LLP
2 East Mulberry Street
Lebanon, OH  45036
bconover@bricker.com

Re:     Immediate Confirmation Required – BZA Hearing Date for Appeal

Dear City Officials:

We write to you regarding the appeal submitted on March 20, 2026 ("Appeal") to the Building and Zoning Board of Appeals ("BZA") for the City of Urbana ("City") on behalf of Thor Equities, LLC, Urbana Owner I LLC, and Highland55 Investments LLC (collectively, "Appellants").  In accordance with Mr. Carter's explicit instructions, we sent the Appeal directly to Mr. Carter via email, copying Mr. Feinstein, Mr. Conover, and the Department of Zoning and Compliance.  As a courtesy, we also submitted two hard copies of the Appeal – one for Mr. Carter and one for the BZA – and paid the required $200.00 fee to the City, for which we received a receipt.

Under Zoning Code Sections 1105.06 and 1105.09, the BZA is required to hear Appellants' Appeal.  Zoning Code Section 1105.36 states, "[t]he Building and Zoning Appeals Board shall hold a public hearing within thirty (30) days after the receipt of an application for an appeal or variance from the Zoning Inspector or an applicant."  The City's failure to do so violates its own

**Ohio  |  Washington, D.C.  |  Texas  |  Pennsylvania  |  California  |  London  |  Berlin**



April 10, 2026
Page 2

Zoning Code and the Appellants' constitutionally protected due process rights, which guarantee "the opportunity to be heard at a meaningful time and in a meaningful manner." *Bierlein v. City of Grandview Heights Bd. of Zoning Appeals*, Franklin C.P. No. 17CVF-5071, 2018 Ohio Misc. LEXIS 6139, *7 (Oct. 19, 2018) (explaining that proceedings before a board of zoning appeals are administrative proceedings that "must comport with due process[]") (internal quotations and citation omitted); *Cleveland Skydiving Ctr., Inc. v. Troy Twp. Bd. of Zoning Appeals*, 2025-Ohio-2808, ¶ 48 (11th Dist.) ("The fundamental principle of procedural due process is the right to reasonable notice and a reasonable opportunity to be heard."). *See Turner v. City of Englewood*, 2010-Ohio-5881, ¶¶ 15, 20 (holding that a municipality's failure to comply with its own procedures, including failing to conduct a mandatory hearing, deprived the property owner of procedural due process, rendered its actions without proper authorization, and precluded collection of demolition costs).

Despite our timely and complete submission, we have yet to receive any acknowledgment or confirmation from the City regarding the status of the Appeal. The next BZA hearing is scheduled for April 13, 2026. It is unacceptable – and a violation of Appellants' rights – that, to date, we have not been informed whether the Appeal will be placed on the agenda and considered during this next BZA hearing. Under Zoning Code Sections 1105.37 and 1105.38, notice of a BZA hearing for an appeal must be provided at least ten days before the hearing. Because the City has failed to provide proper notice as required by Zoning Code Section 1105.37, we expect the Appeal to be placed on the agenda for the scheduled BZA meeting on May 11, 2026, with the required notice given.

We request immediate confirmation that the Appeal will be heard by the BZA on May 11, 2026. Thank you in advance for your cooperation and attention to this request. We look forward to your prompt response.

Very truly yours,

Joseph R. Miller

cc:     Christopher L. Ingram
        Elizabeth S. Alexander
        Garrett M. Anderson
        Brodi S. Voight
        Department of Zoning and Compliance (ZoningandCompliance@ci.urbana.oh.us)

# EXHIBIT B

| | |
|---|---|
| **From:** | Conover, Brodi <BConover@bricker.com> |
| **Sent:** | Friday, April 10, 2026 4:25 PM |
| **To:** | Miller, Joseph R.; preston.carter@ci.urbana.oh.us; spencer.mitchell@ci.urbana.oh.us; mark.feinstein@ci.urbana.oh.us |
| **Cc:** | ZoningandCompliance@ci.urbana.oh.us; Ingram, Christopher L.; Alexander, Elizabeth S. (Liz); Anderson, Garrett M.; Voight, Brodi S.; Sherman, Carly |
| **Subject:** | [EXTERNAL] RE: Immediate Confirmation Required – BZA Hearing Date for Appeal |

**CAUTION EXTERNAL:** Confirm you trust **bconover@bricker.com**.

Joe –

Your client's appeal is on the BZA's agenda for Monday night (April 13)—consistent with the timing requirements in the City's codified ordinances.  The notices under Section 1105.37 and .38 were timely issued, so there is no concern there—but thanks for checking.

Thanks,
Brodi



**Brodi J. Conover**

Partner

bricker.com

bconover@bricker.com

2 East Mulberry Street      **Direct**   513 870 6693
Lebanon, OH 45036           **Mobile**   513 518 2109

*Please note our Firm's new name – **Bricker Graydon Wyatt LLP** – and email domain – **@bricker.com**.*

This message, including any attachments, is confidential and may be privileged or protected by work product rules. If you received it in error, please delete it from your system and notify us at 614 227 8899 or info@bricker.com. Bricker Graydon LLP and Wyatt, Tarrant & Combs, LLP merged effective January 1, 2026, forming Bricker Graydon Wyatt LLP, an expanded firm serving clients across multiple states. Our email addresses now use the **@bricker.com** domain. To ensure you continue receiving our communications, please add **@bricker.com** to your email safelist or approved senders list.

1

**From:** Doughty, Nina M. <nmdoughty@vorys.com> **On Behalf Of** Miller, Joseph R.
**Sent:** Friday, April 10, 2026 3:43 PM
**To:** preston.carter@ci.urbana.oh.us; spencer.mitchell@ci.urbana.oh.us; mark.feinstein@ci.urbana.oh.us; Conover, Brodi <BConover@bricker.com>
**Cc:** ZoningandCompliance@ci.urbana.oh.us; Miller, Joseph R. <JRMiller@vorys.com>; Ingram, Christopher L. <clingram@vorys.com>; Alexander, Elizabeth S. (Liz) <esalexander@vorys.com>; Anderson, Garrett M. <gmanderson@vorys.com>; Voight, Brodi S. <bsvoight@vorys.com>
**Subject:** [EXT] Immediate Confirmation Required – BZA Hearing Date for Appeal

Please see the attached correspondence sent on behalf of Joe Miller.



**Joseph R. Miller**
Partner

**o:** 614.464.6233
jrmiller@vorys.com
**vorys.com**

From the law offices of Vorys, Sater, Seymour and Pease LLP.

This email has been sent for the sole use of the intended recipient(s), and may contain private, confidential or privileged information. If you are not the intended recipient, please advise the sender by reply email and destroy all copies of this email. Any unauthorized review, use, disclosure or distribution is prohibited.

2

# EXHIBIT 9

# ORDINANCE NO. 4635-26

**AN ORDINANCE TO ADOPT THE PLANNING COMMISSION RECOMMENDATION APPROVING THE APPLICATION TO AMEND THE TEXT OF CHAPTER 1126 OF THE URBANA CODIFIED ORDINANCES TO THE VERSION THEREOF THAT WAS IN EFFECT PRIOR TO THE PASSAGE OF ORDINANCE 4621-25. (Three (3) readings required, Public Hearing required. Public Hearing Advertisement date: Friday, May 29, 2026)**

**Department Requesting: N/A**          **Sponsor: Councilwoman Amy Jumper**

**WHEREAS,** pursuant to Chapter 1113 of the Codified Ordinances of the City of Urbana, Ohio, whenever the public necessity, convenience, general welfare or good zoning practices require, Council may by ordinance after receipt of a recommendation thereon from the Planning Commission and subject to procedures provided by law, amend, supplement, change or repeal the regulations, restrictions and boundaries or classifications of property; and

**WHEREAS,** on May 18, 2026, the Planning and Zoning Staff presented an amendment to the text of Chapter 1126 of the Urbana Codified Ordinances to the version thereof prior to the passage of Ordinance 4621-25; and

**WHEREAS,** on May 18, 2026, the City of Urbana Planning Commission recommended by a 7-0 vote to *approve* the amendment to the text of Chapter 1126 of the Urbana Codified Ordinances to the version thereof prior to the passage of Ordinance 4621-25 (*See Exhibit A, attached hereto and incorporated herein*); and

**WHEREAS,** Council held a public hearing pursuant to Chapter 1113.09 of the Codified Ordinances of the City of Urbana on June 9, 2026.

**NOW, THEREFORE, BE IT ORDAINED** by the Council of the City of Urbana, County of Champaign and State of Ohio:

**SECTION ONE:**
The recommendation of the Planning Commission to approve the amendment to the text of Chapter 1126 of the Urbana Codified Ordinances to the version thereof prior to the passage of Ordinance 4621-25 is hereby adopted.

**SECTION TWO:**
All actions of City Council and the Planning Commission related to this legislation were conducted in open meetings pursuant to Urbana Codified Ordinance 107.01 and Ohio Revised Code 121.22.

**SECTION THREE:**
This ordinance shall become effective at the earliest time provided by law.


_____
President, City of Urbana Council

PASSED:_____

ATTEST: _____
         Clerk of Council

This Ordinance approved by me this _____ day of _____, 2026.


_____
Mayor, City of Urbana

REVIEWED: _Mark M. Feinstein_  _5/27/2026_
      Director of Law           Date

Jumper:       _____ Yay   _____ Nay   _____ N/A

Scott:         _____ Yay   _____ Nay   _____ N/A

Davis:         _____ Yay   _____ Nay   _____ N/A

Truelove      _____ Yay   _____ Nay   _____ N/A

Thackery:     _____ Yay   _____ Nay   _____ N/A

Collier:       _____ Yay   _____ Nay   _____ N/A

Bean:          _____ Yay   _____ Nay   _____ N/A