**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **THOR EQUITIES, LLC, *et al.***, | : | |
| | : | Case No. 3:26-CV-00196-MJN-CHG |
| Plaintiffs, | : | |
| | : | District Judge Michael J. Newman |
| v. | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| **CITY OF URBANA, OHIO**, ***et al.***, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE**

## I. INTRODUCTION

This action arises from an abrupt and unlawful effort by the City of Urbana (the "City") to stop a development that the City expressly authorized as a permitted, by-right use. The City erroneously rejected the site plan application submitted by Plaintiffs Thor Equities, LLC, Urbana Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland55 Investments LLC (collectively, "Thor") and enacted a targeted moratorium to block Thor's data center project. Thor brought this action to vindicate its vested right to develop its data center under the zoning rules in effect when Thor's application was filed.

Proposed Intervenors John B. Winner, Megan Crist, Andrew Crist, Connie Flanly, Patton Property LLC, Summer Woodburn, Robert Woodburn, and Woodburn Farms Inc. (collectively, "Proposed Intervenors") now seek to interject themselves into this focused dispute over Thor's private property rights. Proposed Intervenors, however, do not seek to address a discrete issue that is before the Court. They instead propose to transform this action into their own lawsuit involving completely different claims alleged against new and different parties that challenge a series of agreements, applications, and ordinances dating back to 2024. Their proposed claims concern

different alleged injuries, different legal duties, different factual issues, and different forms of relief from those asserted in Thor's Complaint.

Proposed Intervenors' motion should be denied for three reasons. First, Proposed Intervenors cannot establish their own Article III standing. Proposed Intervenors allege only generalized concerns about municipal transparency, public participation, and the development's potential effects – not a concrete and particularized injury to any legally protected interest.

Second, the Proposed Intervenors cannot satisfy the requirements for mandatory intervention. Their motion is untimely: Proposed Intervenors admittedly knew of the proposed development and their asserted interests months before seeking intervention, yet they waited until three days before the parties' scheduled mediation to file their motion. They identify no direct, substantial, or legally protectable interest in the City's processing of Thor's site plan application and the resolution of this action will not impair their ability to pursue any independently cognizable claims they may possess. To the extent they share the City's interest in defending the challenged municipal decisions, the City adequately represents that interest.

Third, permissive intervention is equally unwarranted. The Proposed Intervenors' claims do not share the operative questions of law or fact presented by Thor's Complaint. At most, both sets of claims relate generally to the same proposed development, which is insufficient to warrant intervention under Rule 24(b). Permitting intervention also would inject collateral issues far beyond the scope of this action, require extensive additional discovery, and prejudice the existing parties by disrupting their substantial progress toward resolving the dispute.

Proposed Intervenors' motion should therefore be denied.

## II. BACKGROUND

### A. The City Annexes and Rezones Thor's Property to Permit Data Centers.

Thor's Property consists of approximately 230 acres of land it owns and approximately 94

acres of land under contract to purchase located in Urbana, Ohio. (Compl., ECF No. 1 at PageID 2, ¶ 13.) Beginning in late 2024, Thor began working with the City's planning and zoning staff to determine what would be required for Thor to develop a data center on the Property ("Project"). (*Id.* at PageID 10, ¶ 41.) The City's feedback was positive. (*Id.* at PageID 10-11, ¶¶ 42-47.) Therefore, on April 22, 2025, City Council approved four ordinances that together annexed part of the Property into Urbana, zoned the Property M-1 Manufacturing, and amended the Zoning Code to expressly permit data centers as a use in that district. (*Id.* at PageID 9-10, ¶¶ 36-39.) City Council passed those ordinances after three readings and public hearings in accordance with the City's procedures. (*Id.* at PageID 10, ¶ 40.)

### B. Thor Relies on the City's Actions, Invests Millions, and Files a Complete Application to Use Its Property as a Data Center.

Thor relied on the City's annexation, rezoning, and zoning-text amendments by acquiring and assembling the Property, committing to developing it as a data center, and undertaking substantial planning and design work. (*Id.* at PageID 11-12, ¶¶ 48, 50-51.) The City itself publicly acknowledged Thor's reliance on purchasing the land. (*Id.* at ¶ 49.) To date, Thor has invested more than $19.6 million in the Project, including more than $12.5 million in land purchases, $5.1 million in design costs, and nearly $2 million in due diligence costs. (*Id.* at ¶¶ 51-52.)

On February 13, 2026, Thor submitted its site plan application to the City to develop a data center on the Property (the "Application"). (*Id.* at PageID 12, ¶ 54.) The Application complied with Zoning Code Chapter 1110 – which governs site plan review – and was prepared in accordance with the City's published checklist. (*Id.* at PageID 12-13, ¶¶ 54-55, 57.) On February 20, 2026, the City improperly rejected the Application as incomplete, asserting that Thor failed to: (1) hold a pre-application meeting pursuant to Zoning Code Section 1161.01; (2) provide a preliminary plat pursuant to Zoning Code Section 1161.02; and (3) provide a completed traffic

impact study. (*Id.* at ¶ 56.) However, none of those requirements apply to a site plan application under Chapter 1110; rather, each arises from Chapter 1161 – governing major subdivision applications – which does not apply to Thor's Application. (*Id.* at PageID 13, ¶ 57.)

**C. The City Enacts the Moratorium and Obstructs Thor's Appeal.**

On March 3, 2026, only weeks after Thor had filed its Application, City Council enacted the Moratorium through Resolution No. 2727-26, which placed a twelve-month pause on approvals and authorizations that would permit the establishment of data centers within the City. (*Id.* at PageID 13, ¶ 61.) But, in enacting the Moratorium, the City failed to comply with its Charter, Zoning Code, and Ohio law. Notably, the City:

- Failed to provide proper notice of the City's consideration of Resolution 2727-26 as required by Charter Section 2.16 and Zoning Code Chapter 1113;
- Passed the Moratorium based on generalized concerns and a desire to study potential data center impacts, an insufficient basis to constitute an emergency under Charter Section 2.11;
- Passed the Moratorium as an emergency in violation of Charter Section 2.12;
- Used the Moratorium to effectively amend the procedures for site plan applications as set forth in the Zoning Code without following the proper procedures in Charter Sections 2.10 and 2.16 and Zoning Code Chapter 1113;
- Used the Moratorium to constructively rezone private property by forbidding an expressly permitted use of the Property without following the proper procedures in Charter Sections 2.10 and 2.16 and Zoning Code Chapter 1113; and
- Impaired Thor's vested rights by prohibiting a use that was expressly permitted at the time Thor submitted its Application.

(*Id.* at PageID 7-9, 14-15, ¶¶ 27-35, 63-64.)

Around this time, City Council held a special City Council meeting convened to discuss the formation of a data center research committee. (*Id.* at PageID 15, ¶ 65.) Although framed as a fact-finding effort, the committee was not intended to evaluate data centers in a neutral way. (*Id.*)

Further demonstrating the City's opposition to the Project, the City continued to violate Thor's rights by engaging in a pattern of obstruction and delay. (*Id.* at PageID 15-17, ¶¶ 67-75.) By way of example, in its denial of the Application, the City failed to clearly identify who denied the Application – *i.e.*, the Zoning Inspector or the BZA – forcing Thor to file the appeal to both the Champaign County Court of Common Pleas and the BZA. (*Id.* at PageID 16, ¶ 71.) In response to Thor's first public records request, the City refused to provide Thor with a copy of the Moratorium until Thor's counsel informed the City that it was violating Ohio law. (*Id.* at PageID 15-16, ¶¶ 68-70.) Thor served a second public records request on April 3, 2026, and the City has, to date, failed to produce even a single document in response. (*Id.* at PageID 16-17, ¶¶ 73-75.)

Worse, the City obstructed Thor from receiving a fair and adequate appeal to the BZA. (*Id.* at PageID 17, ¶ 76.) The City first refused to formally accept Thor's appeal papers but accepted the appeal fee. (*Id.* at PageID 16, ¶ 72.) The BZA then held a hearing without the ten days' notice required by the Zoning Code, denied Thor's motion for continuance in light of that error, heard public comments expressing generic opposition to data centers rather than addressing the governing standards applicable to Thor's Application, and affirmed the City's denial of the Application, even though only four BZA members were present. (*Id.* at PageID 17-19, ¶¶ 77-85.) At the hearing, Thor presented unrebutted evidence that its Application was complete under Zoning Code Section 1110.02 and that the three additional requirements cited by the City were not mandated by Chapter 1110 for site plan applications. (*Id.* at PageID 18, ¶¶ 81-82.)

### D. The City Pursues Permanent Legislation to Eliminate Data Centers from the Manufacturing District.

The City's efforts did not end with the Moratorium or the improper denial of Thor's appeal. On May 5, 2026, City Council referred Resolution No. 2731-26 to the Planning Commission to initiate an amendment to the Zoning Code to remove data centers as a permitted use in the

Manufacturing District. (*Id.* at PageID 19, ¶ 87.) The Planning Commission recommended approval of that amendment, and on June 2, 2026, City Council held the first reading of Ordinance No. 4635-26, which would adopt that recommendation. (*Id.* at ¶¶ 88-89.) On June 16, 2026, City Council enacted Ordinance No. 4635-26, which, once effective, will permanently bar Thor's planned use of the Property and eliminate the Project. (*Id.* at PageID 12, ¶ 53.)

**E. Thor Files Suit to Vindicate Its Constitutional Rights.**

Due to the unlawful actions of the City, Thor filed its Complaint on June 19, 2026. (ECF No. 1.) Thor asserts claims for violations of procedural and substantive due process and seeks declaratory and injunctive relief concerning the City's unlawful conduct. (*Id.*) The City subsequently filed its Answer on July 14, 2026. (ECF No. 18.) The parties thereafter exchanged initial disclosures and conducted their Rule 26(f) conference. (*See* ECF No. 20.) On August 19, 2026, the Court referred the case to Magistrate Judge Peter B. Silvain, Jr. for mediation. (ECF No. 28.) On September 10, 2026, Magistrate Judge Silvain scheduled a mediation for September 21, 2026. (ECF No. 29.) The parties participated in mediation sessions with Magistrate Judge Silvain on September 21 and September 25, 2026. (*See* Sept. 21, 2026 Notation Order.)

On September 18, 2026 – three days before the first scheduled mediation session – the Proposed Intervenors filed their Motion to Intervene. (ECF No. 30.) The Proposed Intervenors are eight individuals and entities who own property in or near Urbana and oppose the proposed data center development. (*Id.* at PageID 308-09; ECF No. 30-1 at PageID 323-24.)

The Proposed Intervenors attached a proposed 15-count pleading styled as a "Third-Party Complaint" to their motion. (ECF No. 30-1.) That pleading seeks to add several municipal officials and private entities as defendants and to assert claims against both sides of the existing dispute. (*Id.* at PageID 319-23.) Specifically, the Proposed Intervenors seek to assert procedural and substantive due process claims against the City and various City officials, claims for fraudulent

and negligent or reckless misrepresentation, a civil-conspiracy claim against the City, City officials, Thor, and other private entities, and declarations invalidating certain City ordinances. (*Id.* at PageID 346-56.) Their requested relief includes compensatory and punitive damages and an injunction barring the City from enforcing the challenged legislation and halting the continued pursuit of the data-center development. (*Id.* at PageID 356-57.)

## III. ARGUMENT

Proposed Intervenors' motion should be denied because: (1) Proposed Intervenors lack Article III standing to pursue the distinct relief requested in their Proposed Complaint; (2) Proposed Intervenors cannot satisfy the standard for intervention as of right under Rule 24(a); and (3) Proposed Intervenors cannot satisfy the standard for permissive intervention under Rule 24(b).

### A. Proposed Intervenors Lack Standing to Pursue Their Proposed Independent Claims and Requested Relief.

Before Proposed Intervenors may transform this action into a vehicle for their own claimed damages and relief, they must establish that they have standing. A party seeking to intervene as of right under Rule 24(a) "must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing[,]" including for the intervenors' own claims for damages and injunctive relief. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439–40 (2017). Proposed Intervenors do not seek to defend Thor's or the City's existing positions; they seek their own compensatory and punitive damages and an injunction barring the development – relief different in kind from anything the existing parties request. (ECF No. 30-1 at PageID 356-57.) Proposed Intervenors must, therefore, establish independent Article III standing. *Laroe Ests., Inc.*, 581 U.S. at 439–40. They cannot do so.

"[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "To establish injury in fact, a plaintiff must show that he or she suffered an 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal quotation marks and citations omitted). And "[a] concrete injury must be *de facto*; that is, it must actually exist" rather than be "abstract" or "theoretical." *Id.* at 340 (internal quotation marks and citations omitted).

*No concrete, particularized injury.* Proposed Intervenors allege only that the development will "permanently change their community, lives, and property" and that they were deprived of information and a chance to "meaningfully participate" in municipal proceedings. (ECF No. 30-1 at PageID 345-49.) "Standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974). A generalized interest of that kind "will not support a claim for intervention as of right," *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007), and the Sixth Circuit has squarely held that the Article III injury-in-fact requirement is "more rigid" than Rule 24's substantial-interest inquiry – dismissing neighbors who challenged a municipal land-use consent judgment because their generalized interest was not a sufficiently particularized injury. *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005); *see Baird v. Norton*, 266 F.3d 408, 411 (6th Cir. 2001) (holding that plaintiffs lacked standing when plaintiffs "argue[d] that they [had] been injured by being deprived of the procedural safeguards

required by the Michigan Constitution for the passage of legislation" because plaintiffs had, "at most, a generalized grievance shared by all Michigan residents alike[]"). Proposed Intervenors stand in precisely that position here.

*No protected interest in the zoning of land they do not own.* To the extent Proposed Intervenors ground their injury in the regulation of Thor's property, that is not a legally cognizable injury. Neighboring owners have no protected interest in how the zoning laws are applied to land they do not own. *Rieg v. Vill. of Seville*, 725 F. Supp. 3d 758, 762 (N.D. Ohio 2024); *see also Be the Bush Recovery Ministries v. Coffee Cty.*, No. 24-5538, 2025 U.S. App. LEXIS 25855, at *13–16 (6th Cir. Oct. 2, 2025). Their asserted stake in the City's processing of Thor's Application and in the ultimate use of Thor's Property is not an injury to any right of their own. Because Proposed Intervenors cannot satisfy Article III as to the affirmative relief they seek, the Court lacks jurisdiction to adjudicate their claims, and intervention should be denied on that ground alone.

**B. Proposed Intervenors Are Not Entitled to Intervene as of Right.**

Even if Proposed Intervenors had standing, intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Movants must establish all elements of the four-part test, requiring: (1) that the motion was filed timely; (2) that a substantial legal interest is involved; (3) that an interest will be impaired without intervention; and (4) inadequate representation by the current parties." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 U.S. Dist. LEXIS 211324, at *5–6 (S.D. Ohio Dec. 9, 2019). "[F]ailure to meet [any] one of the criteria will require that the motion to intervene be denied." *Doe v. Red Roof Inns, Inc.*, No. 3:21-cv-140, 2021 U.S. Dist. LEXIS 92943, at *4 (N.D. Ohio May 17, 2021) (quotation

omitted). Here, Proposed Intervenors cannot establish any of the elements. Proposed Intervenors are therefore foreclosed from intervening as of right.

**1. Proposed Intervenors Lack a Substantial Legal Interest in This Action.**

A third party must have a "direct, substantial interest in the litigation which must be significantly protectable" in order to intervene. *Purnell v. City of Akron*, 925 F. 2d 941, 947 (6th Cir. 1991); *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 501 (6th Cir. 1993) (the interest must be "legally protectable"). A "[f]ailure to allege a direct and substantial interest in the subject of the litigation is alone fatal to Movants' claim for intervention as of right." *Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 211324, at *8–9. "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Davis v. Lifetime Capital, Inc.*, No. 3:04CV0059, 2006 U.S. Dist. LEXIS 36003, at *10 (S.D. Ohio June 2, 2006) (internal quotation marks and citations omitted). Here, Proposed Intervenors cannot establish "a substantial legal interest" in this case for at least three reasons.

**a. Proposed Intervenors Do Not Claim a Substantial Legal Interest in *This Lawsuit*.**

Proposed Intervenors assert that their "constitutional rights are at stake" because their proposed claims concern the municipal processes related to Thor's development on Thor's property. (ECF No. 30 at PageID 313-14.) But the Proposed Intervenors fail to explain how an interest in prosecuting their own claims establishes a substantial interest in this action. "[T]o warrant intervention under Rule 24(a), a potential intervenor 'must have a direct and substantial interest in the litigation,' such that it is a 'real party in interest in the transaction ***which is the subject of the proceeding***.'" *Al-Menhali v. Marriott Int'l, Inc.*, No. 1:17 CV 1089, 2019 U.S. Dist. LEXIS 150566, at *9 (N.D. Ohio Sep. 4, 2019) (emphasis added) (quoting *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371–72 (6th Cir. 2014)). This action concerns Thor's Property,

Thor's Application, the City's rejection of that Application, and the later-enacted Moratorium. Proposed Intervenors do not own Thor's Property, did not submit the Application, and claim no entitlement to the approval at issue. Their analogy to a separate case in which a data-center developer was permitted to intervene is therefore misplaced. (ECF No. 30 at PageID 313 n.8.) Under the required fact-specific inquiry, a developer whose project and property rights are directly at issue stands differently from neighboring property owners who claim no interest in the project property or application. Here, Proposed Intervenors allege that City officials and private entities concealed information, made misrepresentations, and interfered with their participation in municipal proceedings. (ECF No. 30-1 at PageID 325-46.) Their alleged interest in obtaining relief on those independent claims does not give them an interest in Thor's vested property rights.

**b. Proposed Intervenors' Generalized Concerns About the Development Cannot Rise to a Substantial Legal Interest.**

Nearby property ownership does not automatically create a substantial legal interest in a zoning dispute. In *Nextel West Corp. v. Township of Scio*, nearby property owners argued that construction of a cell-phone tower would reduce property values, destroy wooded areas, and adversely affect the surrounding environment. No. 07-11159, 2007 U.S. Dist. LEXIS 58863, at *5 (E.D. Mich. Aug. 13, 2007). The court held that these concerns did not rise to the level of a legally protectable interest sufficient to justify intervention. *Id.* Other courts likewise have held that neighboring property owners' generalized concerns about adjoining land or enforcement of zoning laws do not require intervention as of right. *See North Shore-Chicago Rehabilitation, Inc. v. Village of Skokie*, No. 93-C-1198, 1993 U.S. Dist. LEXIS 126, at *8 (N.D. Ill. Sept. 13, 1993); *Bachman v. Hecht*, 659 F. Supp. 308, 310 (D.V.I. 1986). Here, the Proposed Intervenors' pleading identifies properties they allegedly own, but it does not allege specific facts establishing how adjudication of Thor's development rights will legally affect those other properties. Instead,

Proposed Intervenors broadly allege that the development will "permanently change their community, lives, and property." (ECF No. 30-1 at PageID 345.) Such generalized allegations do not establish a direct, substantial, and legally protectable interest in this action.

**c. Proposed Intervenors' Generalized Interest in the Legislative Process Cannot Amount to a Substantial Legal Interest.**

The Proposed Intervenors primarily allege that City officials concealed information or made misleading statements, thereby depriving them of a constitutional right to "meaningfully participate" in municipal legislative processes. (ECF No. 30-1 at PageID 346-49.) But they do not identify a protected entitlement to a particular legislative outcome, to any particular amount of information before legislative action, or to individualized participation in generally applicable legislative proceedings.

At most, the Proposed Intervenors assert a generalized interest shared with other Urbana residents in transparency and the ultimate use of Thor's Property. In fact, Proposed Intervenors "seek to intervene" to protect their rights as "community members." (ECF No. 30 at PageID 311.) However, a "general ideological interest" in a law is "so generalized [that it] will not support a claim for intervention as of right." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007). While under Ohio law, "surrounding property owners may have a practical interest in the outcome of a declaratory judgment action attacking the constitutionality of zoning as it applies to a specific parcel of property . . . **they have no legal interest in the outcome**." *Driscoll v. Austintown Assocs.*, 42 Ohio St. 2d 263, 273, 328 N.E.2d 395, 402 (Ohio 1975) (emphasis added). Here, Proposed Intervenors' dissatisfaction with the timing, content, or completeness of information provided during municipal proceedings is a generalized interest that applies to every citizen of the City. This is precisely the kind of "general ideological interest" that the Sixth Circuit has held will not support intervention as of right. *Granholm*, 501 F.3d at 782.

**2. Proposed Intervenors' Motion Is Untimely.**

Independently, the Proposed Intervenors' motion must be denied because their request to intervene is untimely. The Sixth Circuit has held that the following five factors should be considered in determining timeliness:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall v. Glickman*, 226 F.3d 467, 473 (6th Cir. 2000) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No single factor is determinative; instead, timeliness should be evaluated in the context of all relevant circumstances." *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, No. 16-2424, 2017 U.S. App. LEXIS 28212, at *4 (6th Cir. Mar. 27, 2017) (quotation omitted). Here, all five factors counsel in favor of denying the Proposed Intervenors' motion.

*First*, by the time the Proposed Intervenors moved to intervene, Thor had filed its Complaint, the City had filed its Answer, the existing parties had exchanged initial disclosures and conducted their Rule 26(f) conference, and the Court had referred the parties to Magistrate Judge Peter B. Silvain, Jr. for mediation. (ECF Nos. 1, 18, 20, 28-29.) The Proposed Intervenors filed their motion on September 18, 2026, only three days before the scheduled September 21 mediation. (ECF No. 30.) The existing parties then participated in mediation sessions on September 21 and September 25, 2026. (*See* Sep. 21, 2026 Notation Order.)

The Proposed Intervenors argue that the case remains at an early stage because extensive discovery and dispositive-motion practice have not occurred. (ECF No. 30 at PageID 310-11.) But the "time between the filing of the complaint and the motion to intervene, in itself, is among the least important circumstances." *S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-cv-01194, 2020

U.S. Dist. LEXIS 259463, at *6–7 (S.D. Ohio Nov. 18, 2020) (internal citation omitted). "A more critical factor is what steps occurred along the litigation continuum during this period of time." *Stupak-Thrall*, 226 F.3d at 475. The relevant consideration is how far the litigation has progressed in relation to the purpose for which intervention is sought. Here, the existing parties have made substantial progress toward resolving the claims actually presented in this action. Allowing intervention now would disrupt that progress and potentially transform a dispute that is on the verge of resolution into a sprawling new case. *See S.H. v. Stickrath*, 251 F.R.D. 293, 297–99 (S.D. Ohio 2008) (holding that motion for intervention filed just two weeks before parties finalized a settlement agreement was "very late in the proceedings").

*Second*, the purpose of the requested intervention also weighs against timeliness. The Proposed Intervenors state that their purpose for intervention is to "protect[] their constitutional rights and their rights as property owners and community members . . . ." (ECF No. 30 at PageID 311.) But the Proposed Intervenors fail to cite any authority for their proposition that this "purpose" would favor intervention. And "where a court's denial of intervention does not foreclose the only means of seeking relief via a declaratory action, the purposes of intervention prong will also weigh against a finding of timeliness." *S.W. v. Lorain-Elyria Motel*, No. 2:19-cv-01194, 2020 U.S. Dist. LEXIS 259463, at *12 (S.D. Ohio Nov. 18, 2020). If the Court denies the motion to intervene, nothing forecloses the Proposed Intervenors from filing a separate action.

Further, the Sixth Circuit has explained that courts are "more inclined to grant intervention when the purpose of intervention is limited in scope." *In re Auto. Parts Antitrust Litig.*, 33 F.4th 894, 902 (6th Cir. 2022). The Proposed Intervenors' requested intervention is anything but limited. The Proposed Intervenors do not seek merely to offer a defense to Thor's claims or to preserve the City's position. Instead, Proposed Intervenors seek to use intervention as a vehicle for introducing

a materially broader lawsuit through a 15-count pleading that adds several municipal officials and private entities as defendants, seeks compensatory and punitive damages, and requests declarations invalidating multiple agreements, plans, applications, and ordinances. (ECF No. 30-1 at PageID 346-57.) That expansive purpose weighs against allowing intervention at this stage.

*Third*, the Proposed Intervenors' own allegations establish that they knew or should have known of their asserted interests months before filing the motion. They allege that Urbana residents became aware of the proposed data center by January 2026 and describe their participation in City Council proceedings beginning January 20, 2026. (ECF No. 30-1 at PageID 339-44.) The Proposed Intervenors therefore knew of the proposed development, the City's relevant actions, and their alleged opposition well before Thor commenced this action on June 19, 2026. *Stickrath*, 251 F.R.D. at 300 (finding that "[t]he gravamen of the . . . action has not changed" since settlement negotiations commenced, therefore, the proposed intervenor "knew, or should have known that this case implicated its interests long ago"). Indeed, they admit that they "began to become aware that, in fact, a data center was being developed in Urbana in early 2026." (ECF No. 30 at PageID 311.) Thor's publicly filed Complaint then described the Application, the City's denial, the Moratorium, the BZA proceedings, the relevant ordinances, and the relief Thor sought. (ECF No. 1.) The "gravamen" of Thor's action has not changed since that filing.

*Fourth*, the Proposed Intervenors' intervention would be plainly prejudicial to the parties. The Sixth Circuit has instructed that intervention is prejudicial when it would "'force the parties into collateral litigation'" that is "beyond the scope of the original action." *Salem Pointe Capital, LLC v. Rarity Bay Partners*, 854 F. App'x 688, 699 (6th Cir. 2021) (affirming denial of intervention where proposed intervenor sought to add a collateral claim beyond the original action's scope, which would delay and prejudice adjudication of the original parties' dispute)

(quoting *United States v. Tennessee*, 260 F.3d 587, 594 (6th Cir. 2001)). Here, the Proposed Intervenors' "claims asserted are broader than just the Moratorium and the dispute underlying the BZA Case." (ECF No. 30 at PageID 315.) The Proposed Intervenors seek to "derail a painstakingly negotiated agreement at the last minute" and "return the litigation to square one" by introducing a 15-count complaint against existing and additional parties. *See Stickrath*, 251 F.R.D. at 303 (proposed intervenor's attempt to "halt [the settlement negotiations] at the last minute" was "plainly prejudicial to the parties" and "weighed strongly against intervention").

*Finally*, the unusual circumstances weigh against intervention. Rather than file their own lawsuit, the Proposed Intervenors seek to introduce claims against both sides of an existing case only after the original parties began court-referred mediation. Here, "granting intervention will not promote a resolution of the present lawsuit—and may inhibit it[.]" *Enon Sand & Gravel, LLC v. Clark Cty. Bd. of Comm'rs*, No. 3:17-cv-324, 2018 U.S. Dist. LEXIS 73867, at *25 (S.D. Ohio May 2, 2018). Second, many of the Proposed Intervenors are already participating in the related state administrative appeal.[1] (ECF No. 30 at PageID 313 n.8.) Their ability to pursue independent claims or seek relief in another proceeding undermines any contention that intervention in this action is necessary. Taken together, the timeliness factors weigh against intervention.

### 3. Proposed Intervenors Fail to Identify a Cognizable Interest That Will Be Impaired Absent Intervention.

Proposed Intervenors have not shown that they have a substantial legal interest that will be impaired if intervention is denied. A proposed intervenor must show that disposition of the action would place it "at a practical disadvantage in protecting its interest." *Grainger v. Ottawa County*,

---

[1] Proposed Intervenors were permitted to intervene as appellees in the state-court administrative appeal. *See Thor Equities, LLC v. City of Urbana, Ohio*, No. 2026 CV 112 (Champaign C.P. Sept. 3, 2026). That ruling does not control here. The state court applied Ohio Civ.R. 24, and relied specifically on Zoning Code Section 1105.38's notice protections for interested property owners participating in and defending the BZA proceedings. *Id.* at 2.

90 F.4th 507, 516 (6th Cir. 2024) (citation omitted).

In *Grainger*, the Sixth Circuit held that the proposed intervenor failed to establish impairment because he remained free to pursue his claims in a separate action. *Id.* at 516–17. The court explained that, where a proposed intervenor would not be collaterally estopped or otherwise bound by the existing litigation, the ability to "press their claims in separate litigation" weighs against a finding of impairment. *Id.* at 516. The court further held that "intervention is not required when it would only prevent litigants from facing the inconvenience of filing their claims in other litigation." *Id.* (citing *Gautreaux v. Pierce*, 743 F.2d 526, 535 (7th Cir. 1984) ("Refusing to allow intervention effectively would require only that Intervenors refile their motions and supporting documents in another lawsuit which would also be considered by a district judge. Under these circumstances, refusing to allow intervention will cause little if any inconvenience that would not also exist if we allowed intervention.") and *Blake v. Pallan*, 554 F.2d 947, 954 (9th Cir. 1977) ("Mere inconvenience to the [intervenor] caused by requiring him to litigate separately is not the sort of adverse practical effect contemplated by Rule 24(a)(2).")).

The same reasoning applies here. Thor's Complaint presents a narrow dispute over the City's actions after Thor submitted its Application. Specifically, Thor challenges the constitutionality and legality of the City's Moratorium and seeks to exercise the vested rights Thor possessed under the zoning laws in effect when the Application was filed. Resolution of those claims does not require the Court to adjudicate the Proposed Intervenors' separate claims.

Proposed Intervenors incorrectly assert that if this action settles, it would "cement the harm caused to" them. But a settlement or consent decree between Thor and the City would not adjudicate or extinguish Proposed Intervenors' independent claims. As the Sixth Circuit has explained, "[a] consent decree binds only the parties to the settlement agreement, not the rest of

the world or for that matter [nonparties] (who had no say in what the consent decree said)." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 471 (6th Cir. 2008). Any settlement here would resolve and dismiss Thor's claims against the City; it would not prevent Proposed Intervenors from filing a separate action. Proposed Intervenors cannot therefore demonstrate the impairment of any interest sufficient to warrant intervention.

**4. The City Adequately Represents Any Relevant Interest in This Action.**

The Court need not resolve whether the City "adequately represents" Proposed Intervenors, because Proposed Intervenors do not seek to defend the City's position in this action. They are would-be plaintiffs seeking to prosecute their own affirmative claims. There is no existing party charged with "representing" Proposed Intervenors' distinct claims.

In any event, to the extent Proposed Intervenors possess any interest relevant to *this lawsuit*, the City adequately represents it. "[T]he applicant for intervention bears the burden of demonstrating inadequate representation." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citation and quotation marks omitted). This requires overcoming the presumption of adequate representation that arises when the proposed intervenor and an existing party "have the same ultimate objective." *Id.* (citation and quotation marks omitted). To the extent Proposed Intervenors have an interest in preventing Thor from proceeding with the proposed development, they share the City's objective. Through the conduct challenged in this action, the City rejected Thor's Application, enacted a 12-month Moratorium prohibiting data-center approvals, defended the rejection before the BZA, and initiated permanent legislation to remove data centers as a permitted use in the M-1 Manufacturing District. (ECF No. 1 at ¶¶ 54-64, 76-89.) The City also filed an Answer contesting Thor's claims and its entitlement to relief. (ECF No. 18.) Further, the possibility of finalized settlement does not establish inadequate representation. As the *Nextel W. Corp.* court stated:

> Applicants argue that the presumption in this case is invalid because of 'back door dealings' between Plaintiff and Township. However, the applicants have failed to offer verified evidence to support such a finding. **Even if a consent agreement is ultimately reached in this matter, the fact that the parties settle on terms different from those the applicants would have preferred does not negate the adequacy of the Township's representation of Applicants' interests.**

2007 U.S. Dist. LEXIS 58863, at *5–6 (emphasis added). Thus, the fact that the City may evaluate its litigation risks or agree to a negotiated resolution does not mean that it inadequately represents Proposed Intervenors' relevant interests.

Accordingly, the Court need not reach adequate representation because Proposed Intervenors lack a substantial legal interest in this action. But even if Proposed Intervenors possessed such an interest, they have not shown that the City inadequately represents it.

### C. Proposed Intervenors Are Not Entitled to Permissive Intervention.

Permissive intervention under Rule 24(b) permits a court to consider intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." Even when that threshold is met, the Court "must then balance undue delay and prejudice to the original parties . . . ." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Permissive intervention is discretionary. *Grainger*, 90 F.4th at 517–19.

Proposed Intervenors cannot satisfy the requirements to intervene for several reasons. First, their request is untimely. *Supra* Sec. III.A.1. Second, they have not identified a claim sharing an operative question of law or fact with this action. Proposed Intervenors characterize the "most salient common question" as whether Thor has vested rights to develop the proposed data center. (ECF No. 30 at PageID 316.) The central question in this action is whether Thor obtained vested rights by submitting a complete Application under the zoning laws then in effect and, accordingly, whether the City may apply its later-enacted Moratorium to that Application. Proposed Intervenors' claims raise a fundamentally different dispute. They allege that, beginning in 2024,

City officials and private developers concealed the proposed development, made misrepresentations, interfered with public participation, and engaged in a civil conspiracy. (ECF No. 30-1 at PageID 325-356.) "A proposed intervenor may not inject itself into a lawsuit under Rule 24(b) where . . . it has no interest in a factual or legal dispute between the parties, but instead is merely concerned that resolution of the parties' claims might have collateral consequences for the proposed intervenor's independent interests." *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018). "Such orthogonal concerns do not raise common questions of fact or law." *Id.* Proposed Intervenors' claims turn on distinct legal and factual questions – none of which must be decided to resolve Thor's claims in this lawsuit.

Even if some limited overlap exists, intervention would unduly delay and prejudice resolution of the original parties' rights. Proposed Intervenors seek to file a 15-count complaint against the parties, add numerous municipal officials and private entities, litigate alleged conduct dating to March 2024, obtain compensatory and punitive damages, and enjoin continued pursuit of the development. (ECF No. 30-1.) Their claims would require extensive discovery into matters unrelated to Thor's vested-rights and Moratorium claims. The Sixth Circuit has recognized that intervention is prejudicial when it would "'force the parties into collateral litigation'" that is "beyond the scope of the original action." *Salem Pointe Capital, LLC*, 854 F. App'x at 699 (quoting *Tennessee*, 260 F.3d at 594). That is precisely what Proposed Intervenors seek here. Their proposed pleading would transform this focused land-use dispute into a substantially broader municipal-fraud and civil-conspiracy action. Proposed Intervenors remain free to pursue any independently cognizable claims in a separate action. *See Grainger*, 90 F.4th at 516–17. Accordingly, the Court should deny permissive intervention under Rule 24(b).

## IV. CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion to intervene should be denied.

Respectfully submitted,

VORYS, SATER, SEYMOUR AND PEASE LLP

*/s/ Joseph R. Miller*

Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
Christopher J. Belmarez (0101433)
Brodi S. Voight (0105912)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 464-6233
Fax: (614) 464-6233
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com
cjbelmarez@vorys.com
bsvoight@vorys.com

*Counsel for Plaintiffs Thor Equities, LLC, Urbana Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland55 Investments LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Plaintiffs' Memorandum in Opposition to Proposed Intervenors' Motion to Intervene* has been electronically filed using the CM/ECF System, and that notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Joseph R. Miller*
Joseph R. Miller