**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **THOR EQUITIES, ET AL.,** | : | **CASE NO. 3:26-cv-00196** |
| | : | |
| **Plaintiffs,** | : | **Judge Michael J. Newman** |
| | : | **Magistrate Caroline H. Gentry** |
| **v.** | : | |
| | : | **DEFENDANTS CITY OF URBANA,** |
| **CITY OF URBANA, OHIO, ET AL.,** | : | **URBANA CITY COUNCIL AND** |
| | : | **URBANA BZA'S MEMORANDUM IN** |
| **Defendants.** | : | **OPPOSITION TO MOTION TO** |
| | : | **INTERVENE** |

Now come Defendants City of Urbana, Urbana City Council, and Urbana BZA ("City" or "Urbana Defendants"), by and through counsel, and hereby submit their Memorandum in Opposition to the Intervening Third-Party Plaintiffs' ("Intervenors") Motion to Intervene and the Intervenors' Third-Party Complaint. A Memorandum in Opposition is set forth below.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick*_________
Dawn M. Frick (0069068)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
dfrick@sdtlawyers.com
jmarks@sdtlawyers.com
*Trial Attorneys for Defendants*

# MEMORANDUM IN OPPOSITION

## I. INTRODUCTION

This action was filed by Plaintiffs Thor Equities, LLC, Urbana Owner LLC, Urbana Owner I LLC, Urbana Owner II LLC, and Highland Investments LLC (Doc. 1, PgID 1) against the City of Urbana, Urbana City Council, and Urbana BZA on June 19, 2026. (Id., PgID 1-2.) The facts of this case involve Plaintiffs' desire to develop land and build a data center in the City of Urbana, and allegations that the City of Urbana acted in a manner that violated Plaintiffs' rights. Accordingly, the relevant law in this case concerns the City's actions involving the planned development of Plaintiffs, and Plaintiffs' recourse, if any, considering the City's actions. This case, insofar as the law is concerned, is not about the rightness or wrongness of data centers. Nor is it about purported harms done to any party other than Plaintiffs. In short, the only issues of fact and law here pertain to the City and Plaintiffs.

Intervenors move to intervene in this action on two grounds: (1) data centers are, as they allege, objectionable (Doc. 30, PgID 312.) ("[T]he landscape of Ohio communities like Urbana may change drastically[.]"); and (2) that Intervenors desired more information about a potential data center in Urbana, Ohio. (Doc. 30 & Doc. 30-1, generally). As demonstrated below, Intervenors seek to intervene without an objective legal basis. Moreover, they do so late. As such, Intervenors' Motion to Intervene should be denied. It is untimely, irrelevant to the issues in this matter, and would work to substantially prejudice the City.

## II. LAW AND ANALYSIS

### A. Standard of Review

The Intervenors' late motion and proposed Intervening Third Party Complaint should be denied in their entirety. "A party seeking intervention as of right under Rule 24(a)(2) must show

that: (1) the motion was timely; (2) the movant possesses "a substantial legal interest" in the case; (3) the movant's ability to protect its interest will be impaired without intervention; and (4) the existing parties inadequately represent the movant's interest." *United States v. Michigan*, 68 F.4th 1021, 1024 (6th Cir. 2023), *citing Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011). The failure to demonstrate a single element requires the court to deny intervention as of right. *Id*. (citation omitted).

A party seeking permissive intervention must demonstrate that their "motion is timely and that its claim or defense 'shares a common question of law or fact' with those of the existing parties." *Lucas Cnty. Bd. of Comm'rs v. United States EPA*, 169 F.4th 689, 706 (2026), *citing* Fed. R. Civ. P. 24(b)(1)(B). If shown, the court must "balance undue delay, prejudice to the original parties, and any other relevant factors[.]" *Id*.(citation and internal quotations omitted). The City addresses these factors in turn.

**B. The Intervenors' Motion is Not Timely.**

"[T]he purpose of the timeliness inquiry is to prevent 'a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *Blount-Hill v. Zelman*, 636 F.3d 278, 286 fn. 4 (6th Cir. 2011)(citation omitted). Tardiness is gauged under the following: "(1) the stage of the litigation, (2) the intervenor's purpose, (3) the length of time that the intervenor knew about her interest[1], (4) prejudice to the original parties, and (5) unusual circumstances." *Cahoo v. SAS Inst., Inc.*, 71 F.4th 401, 412 (6th Cir. 2023). "No one factor is dispositive, but rather the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances." *Albright v. Michigan*, No. 1:22-cv-638, 2023 LX 24501, at *19 (W.D. Mich. June 13, 2023), *citing Blount-Hill*, 636 F.3d at 284 (quotation omitted); *see also*, *United States v. City of Detroit*, 712

[1] "[K]new or should have known." *Davis v. Lifetime Capital, Inc.*, 560 Fed. Appx. 477, 490 (6th Cir. 2014).

F.3d 925, 930 (6th Cir. 2013) ("[T]imeliness is a matter within the sound discretion of the court[.]").

Intervenors' factual recitation as contained in the proposed Third-Party Complaint facially demonstrates a lack of timeliness. Intervenors allege that Urbana0624, LLC, "submitted a Zoning PUD Application for a zoning map amendment for a PUD district with a preliminary development plan" on January 15, 2025. (Prop. Compl., Doc. 30-1, PgID 334, ¶ 99.) This PUD, as Intervenors allege, "contains various indicia of a data center development." (Id., ¶ 102.) Intervenors also allege that the use contained the application did not exist as a principally permitted, permitted, *or* conditional use in the Urbana zoning code," but that the use was for a data center. (Id., PgID 335, ¶ 105.) Three months later, on April 22, 2025, the City passed legislation specifically recognizing data centers as a *principally permitted* use. (Id., PgID 335-336, ¶ 114 (a)-(d).) Notably, as Intervenors fail to mention, all formal decisions regarding these Ordinances were made in "meetings open to the public" or "in open meetings" in compliance with the law. (Doc. 30-2, PgID 581, "Section Four"; PgID 607, "Section Two"; PgID 611-612, "Section Two"; PgID 615, "Section Two"; PgID 625, "Section Two"; PgID 634, "Section Two"; PgID 637, "Section Six".) Moreover, none of the ordinances at issue were challenged when passed.

Intervenors therefore – to the extent they exercised "community awareness" within their county of residence, Champaign County – were on notice of the potential for data centers as a permitted use since at least April 22, 2025.[2] This is not to mention that Intervenors only now, on September 18, 2026, sought to intervene in this case, almost exactly three months after the current Plaintiffs – Thor, et al. – filed their own Complaint. (Doc. 1.) Generally, a party seeking to intervene in a matter should apply when it first becomes aware of the action. *See Stotts v. Memphis*

[2] April 22, 2025 to September 18, 2026: 514 days; 73 weeks; approximately 1.4 years.

*Fire Dept.*, 679 F.2d 579, 584 n. 3. But there is more. Intervenors seek intervention in this case over four months after Thor, et al.'s Administrative Appeal filed in the Champaign County (OH) Court of Common Pleas, which also put Intervenors on notice of the issues before this Court.

The Sixth Circuit has already found that this type of delay is untimely. *See Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir. 1989)( intervenors motion was untimely when they knew of the issue three to four months before); *see also*, *Blount-Hill*, 636 F.3d at 286 (five months untimely); *Johnson v. City of Memphis*, 73 Fed. Appx. 123, 132 (6th Cir. 2003)(seven months untimely). And generally speaking, apart from calculated dates, a court's finish line is the *critical* reference point. *Michigan*, 68 F.4th at 1024.[3] Here, depending on the starting point, Intervenors had three months to intervene with the federal complaint, over four months to intervene in the state administrative appeal, and 514 days to utilize the political process to speak out against any legislation considered and passed on or about April 22, 2025. This precludes intervention.

***1. Stage of the Litigation, Intervenors' Knowledge, and Prejudice to the Parties.***

This case is close to a resolution. The Court entered an order for mediation on August 19, 2026. (Doc. 28.) The court did so to promote a "just, speedy, and less expensive resolution of this case" (Id., PgID 301.) The parties did mediate the case and agreed to a fair and reasonable Memorandum of Understanding that would permit both sides to move past this litigation. (Docket, Mediation Minutes 09/25/2026.) After mediation was scheduled, but only one week prior to this case reaching finality, the Intervenors moved to join this matter. This despite public knowledge of a proposed data center development since potentially early 2025 but no later than January 2026. (Doc. 30-1, PgID 339, ¶141.)

[3] More on this, below.

Intervenors contend that the case is in the early stages because "[t]here has been no motion practice." (Doc. 30, PgID 311.) Certainly, there has been no motion practice (until now). But at the same time, the case was sent to early mediation such that the parties would attempt an early resolution to preclude motion practice. (Doc. 28.) This is a more efficient way to potentially reach a resolution of a case without drawn out motion practice as this Court acknowledged in its order to do so. Furthermore, "[t]he absolute duration of the litigation matters little to this inquiry; 'the stage of the proceedings and the nature of the case' govern the analysis." *End-Payor Plaintiffs v. Fin. Recovery Servs., LLC (In re Auto. Parts Antitrust Litig.)*, 33 F.4th 894, 901 (2022).

This case is potentially in its end stage. Intervention at this time would work an inherent prejudice to the parties who abided by the Order referring this case to mediation and worked diligently for two days to attempt to reach a fair and reasonable resolution. Despite the fact that the case had been pending for months, Intervenors waited until the day before the mediation date to seek to intervene. This is not timely. *See Albright v. Michigan*, 2023 U.S. Dist. LEXIS 232279, *20 (W.D. Mich.), *citing Ruggles v. Bulkmatic Transp. Co.*, No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345, 2007 WL 496671, at *2 (S.D. Ohio Feb. 7, 2007)("[P]rospective interveners may not wait until a matter is provisionally settled to seek to intervene to object to the settlement.") (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *Navelski v. Int'l Paper Co.*, No. 3:14-cv-445, 2018 U.S. Dist. LEXIS 13381, 2018 WL 577979, at *5 n.13 (N.D. Fla. Jan. 28, 2018) ("Rarely will a motion to intervene be deemed timely where the proposed intervention seeks to undo settlement negotiations.")(citation omitted).

***2. Intervenors' Purpose***

As to the second timeliness factor, or the offered purpose of intervention, the Sixth Circuit sometimes "peek[s] behind the timeliness curtain at the legitimacy of the intervenors' purported

interest, and at other [times], [the court has] analyzed whether the would-be intervenors acted promptly in light of their stated purposes." *Albright*, *supra* at *21-22, *citing In re Auto. Parts Antitrust Litig*., 33 F.4th at 902.

Reviewing Intervenors' Motion and Proposed Third Party Complaint leads to its two purposes noted above: (1) objecting to the development of a data center (Doc. 30, PgID 311); and (2) claiming an alleged due process violation in the passing of municipal legislation. (Doc. 30 & Doc. 30-1, generally). However, these "purposes" cut against the claim of timeliness. Intervenors' proposed Third Party Complaint alleges that "[b]y January 2026, people in Urbana had become aware that a data center may have been being developed in the Urbana area." (Doc 30-1, PgID 339.)

Additionally, the legislation and documents for which Intervenors seek this Court to declare as void, were passed at the latest in 2025. In fact, allegations decrying a lack of transparency are debunked when one looks at Intervenors' own recited facts and exhibits: indeed, data centers were explicitly mentioned in the City's ordinances, which were contemplated and passed at meetings open to the public. (Doc. 30-2, PgID 597("Public Hearing Advertisement Date: Friday, April 4, 2025)). Data centers, as Intervenors proffer, even made the newspaper. (Doc. 30-2, PgID 714-716.) This newspaper article, dated *November 11, 2025*, includes discussion of City officials speaking about data centers. (Id., PgID 715.) The article even includes quotes from a *Brad Winner*. (Id.) Brad Winner's name appears four other times[4] where he (and the remaining Intervenors) spoke at City Council meetings in early 2026, which included discussion of data centers.[5] "Brad Winner" has the same address and is the father of Proposed Third-Party Plaintiff

---

[4] Doc. 30-2, PgID 718, 724, 727, and 742.

[5] *Id*., PgID 718, 724, and 742. *See also*, Intervenor Andy Crist (Doc. 30-2, PgID 729), Intervenor Connie Flanly (Doc. 30-2, PgID 746), Erin Patton (Doc. 30-2, PgID 723)(same address as Intervenor Patton Property LLC), Intervenor

(Intervenor) "John B. Winner." (Compare Doc. 30-2, PgID 718 and Doc. 30-1, PgID 319; 323, ¶ 2.) Thus, Proposed Third-Party Plaintiff John B. Winner – or someone having the same address as him, and the remaining intervenors – have explicitly known about data centers as early as 2025 or early 2026. And the City ordinances they reject were passed in early 2025. But they waited to attempt to intervene until late 2026.

***3. Unusual Circumstances***

Finally, in support of timeliness, Intervenor's argue that there were "unusual circumstances." (Doc. 30, Pg. 312.) However, the "unusual circumstances" Intervenors' cite are not unusual at all. Intervenors' simply claim data centers are "extraordinarily significant developments," and "the subject of intense societal debate." (Doc. 30, 312.) Significant developments and intense societal debates are typically decided via ballot. Moreover, these claims are not unusual in the context of zoning cases—claims of substantive and due process violations when a party disagrees with a proposed development. However, simply objecting to a development is not unusual circumstances supporting a claim of timeliness when this matter and the facts related thereto have been ongoing for months.

**C. The Intervenors Do Not Possess a Substantial Legal Interest.**

***1. Intervenors' allegations in their Proposed Complaint are insufficient and contradictory to support a substantial interest enabling intervention for any reason.***

Neither issue Intervenors pose militate in their favor. Intervenors contend that their liberty interests were violated due to alleged preclusion from participation in the process. That is disingenuous at best. Every Intervenor, save one, intervened in the Administrative Appeal in the

---

Summer Woodburn (Doc. 30-2, PgID 743), Intervenor Robert Woodburn (Doc. 30-2, PgID 744). The remaining Intervenor is *Woodburn* Farms Inc. (Doc. 30-1, PgID 320.)

Champaign County Court of Common Pleas.[6] Therein, Intervenors represented to "have standing to appear in this appeal because they actively participated in the administrative proceedings below before the BZA." (Exh. A, State MII at *3, attached hereto.) They also allege "[they] have continued to attend City meetings, zoning hearings, and other municipal events to make their voices heard that the community is opposed to the current data center development in Urbana." (Id., ¶ 190.) At the same time, however, Intervenors assert that the City "deprived" them of procedural due substantive due process rights to "meaningfully participate." (Prop. Compl, ¶¶ 204; 213.) The contradictions within the Proposed Third-Party Complaint sufficiently demonstrate the allegations' futility.

Intervenors simultaneously allege that they have been deprived of "their property and liberty interests." (Id., ¶¶ 199; 209.) Notably absent from the Proposed Third-Party Complaint is an allegation as to what those property and liberty interests are. Moreover, courts have held that legislative acts equally effecting many people, such as the adoption of the identified Ordinances, do not implicate due process concerns. *Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 301-02 (6th Cir. 2025) citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445, 36 S. Ct. 141 (1915); *Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 216-17; *Pickney Bros. v. Robinson*, 194 F.3d 1313, 1999 WL 801514, at *4 (6th Cir. 1999) (unpublished table decision) (holding that because municipal board's actions were legislative in nature, plaintiffs were "not entitled to actual notice and, therefore, was not deprived of procedural due process"); see also *Chicago Area Council, Inc. v. Blue Lake Twp.*, No. 285691, 2010 Mich. App. LEXIS 533, 2010 WL 986500, at *10 (Mich. Ct. App. Mar. 18, 2010) (per curiam) (holding that plaintiff could not allege a property interest because the adoption of a municipal ordinance is part of the legislative

---

[6] *Thor Equities, LLC, et al. v. City of Urbana, Ohio, et al.*, 2026 CV 00112, Motion to Intervene, Champaign County Court of Common Pleas (filed August 12, 2026).

process). Intervenors merely allege that they are property owners in Urbana, Ohio. (Id., ¶¶ 2-9.) But there are no allegations describing how the City has affected any specific property rights. The closest Intervenors come is by way of alleging a "drastic changing of the landscape of their lives." (Id., ¶ 32.) This is insufficient. Speculative property interests "are insufficient to support intervention under Rule 24(a)(2)." *Tarpon Towers II, LLC v. City of Sylvania*, 586 F. Supp. 3d 755, 757 (N.D. Ohio 2022)(collecting cases). Thus, they lack a substantial legal interest.

***2. The Intervenors do not have a substantial legal interest in the outcome***

Intervenors' Motion to Intervene fares no better and fails to connect the dots between their desire for intervention in this case between the City of Urbana and Plaintiffs and a substantial legal interest in the outcome. They proffer that they should be allowed to intervene because the Third-Party Complaint alleges fifteen counts. (Doc. 30, PgID 314.) However circular that argument is, it does not fulfill the requirements to intervene here. That is, even if Intervenors have an interest of some sort, it is separate and apart from the controversy between the City and Plaintiffs.

Contrary to Intervenors' argument, interests are not impaired absent intervention where intervenors "could press their claims in separate litigation." *Grainger v. Ottawa Cty.*, 90 F.4th 507, 516 (6th Cir. 2024)(citation omitted). In other words, intervention is improper where the intervenor could file their own case. *Id*. While it is true that, "proposed intervenors need not have 'a specific legal or equitable interest' in the litigation for the interest to qualify as substantial," *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022)(citation omitted), there must be more than "a general ideological interest." *Est. of Lewis v. City of Columbus*, 158 F.4th 814, 823 (6th Cir. 2025), *citing Wineries of the Old Mission¸ Peninsula Ass'n*, 41 F.4th at 773.

True, Intervenors seem to rely on the notion that "an intervenor need not have the same standing necessary to initiate a lawsuit." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th 1999). However, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017). *Friends of George's, Inc. v. Mulroy*, 2023 U.S. App. LEXIS 24666, **2-3 (6th Cir. September 15, 2023), *citing Laroe Estates, Inc.*, supra. Here, Intervenors' claims or causes – all of them – affect them no more than any other resident (or property owner) in the City or in Champaign County, Ohio. Moreover, the relief Intervenors seek is grossly contrary to that of the Plaintiffs. Indeed, Plaintiffs seek to develop land and build a data center while Intervenors seek to stop them from doing it.

Intervenors' claims also relate to transparency of government officials and participation in governance. Intervenors' failure to participate in the early public meetings passing ordinances have no bearing on the legal claims between Plaintiffs and the City. The *pending action* involves the City of Urbana being sued because Plaintiffs' allege *their* rights were violated as to Plaintiff's prospective use and/or development on their own land. This is quite different than Intervenors' transparency and participation interests, which are always at issue for the general public.

As laid above, Intervenors' allegations as to property rights – to the extent they exist – fare no better. Evening assuming Intervenors own property in Urbana, Ohio, how Plaintiffs' property rights will affect Intervenors' own rights is not defined. Intervention may be plausible to this element "when the outcome of the litigation would affect those property rights[.]" *Grainger*, 90 F.4th at 514. But a proposed intervenor does not "ha[ve] a substantial interest in the procedural mechanism by which litigation proceeds." *Id.* And a "procedural interest likely cannot suffice to

create 'an interest relating to the property or transaction that is the *subject* of the action."' *Id*., *citing* Fed. R. Civ. P. 24(a)(2).

The Intervenors seek relief that is entirely different from that of Thor, which necessitates that they have Article III standing. *Laroe Estates, Inc.*, 581 U.S. at 440. Intervenors must therefore show they: 1) suffered an injury; 2) traceable to the Defendant (or Plaintiffs in this case; and 3) that a ruling in their favor would redress the injury. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 488 (6th Cir. 2021). Intervenors have shown no such cognizable injury. Mere potential for a data center is not such a harm, and the allegations are insufficient to show how a data center would in fact cause harm. The United States Supreme Court has made clear that "a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). That is, "[a] litigant 'raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Id*., quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992). Accordingly, there is no harm traceable to Plaintiff or Defendant as to that matter so allowing intervention would not redress anything. As to Intervenors' other issue – alleged lack of transparency and access to information (though they had both) – is not cognizable. Moreover, that allegation is about the City – not Thor – which goes to show that any claim regarding it, cognizable or not, does not belong in the instant action.

***3. The Intervenors' alleged harms are not cognizable, generally.***

Equally important is the harm alleged. Intervenors' basis of all claims are allegations of "affirmativ[e] withholding [of] relevant information." (Prop. Compl. ¶¶ 203; 213.) But the Constitution does not "mandate[] a right of access to government information." *Zillow, Inc. v.*

*Miller*, 126 F.4th 445, 457 (6th Cir. 2025), *citing Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S. Ct. 2588 (1978). Thus, “the mere denial of information is insufficient to support standing.” *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023). Rather, a party must identify “downstream consequences.” *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021). The Intervenors fail to identify such, but merely allege vague harms of data center that somehow hampers their own property interest, and further allege vague harms by a lack of transparency via lack of information. Intervenors provide no legal authority establishing any requirement that a municipality notify citizens while a proposed development remains at the preliminary-discussion or due-diligence stage before a formal application or plan has been submitted. Notice duties only arise after specified formal zoning or other review processes occur. Intervenors make no showing of how their property interests are affected, and the alleged lack of information – though not cognizable – is the harm in and of itself. Intervenors therefore have no “substantial legal interest" such to allow them to join this case at all.

**D. That Intervenors’ Interests Could Not Be Represented by Any Party Merely Highlights That Intervention is Improper.**

Again, Intervenors’ basis to interfere in this case is: 1) alleged diminishment in their capability to participate in the City’s governance; and 2) alleged ill-effects of a data center in Urbana, Ohio.[7] To the latter, Intervenors have not sufficiently detailed the harms of data centers but rather denote vague concerns bolstered by a *survey* of unidentified people across the United States.[8] In any event, the actual substance of the case is not the rightness or wrongness of data

---

[7] “Data center developments are extraordinarily significant developments, and Ohio is currently experiencing a vast number of them, such that the landscape of Ohio communities like Urbana may change drastically. In addition, data center developments are the subject of intense societal debate, which a substantial majority of Americans opposing them[.]” (Doc. 30, PgID 312.)

[8] https://news.gallup.com/poll/709772/americans-oppose-data-centers-area.aspx. (Doc. 30, PgID 312, fn.7.) The irony is not lost that the Intervenors use a survey (similar to casting a vote) in attempt to make their point. Surveys and votes involve numbers. Intervention involves law.

centers, but about Plaintiffs' alleged constitutional rights to develop and construct upon land they own.

Moreover, Intervenors concede they bring claims against the City and Plaintiffs. (Doc. 30, PgID 314.) To that end, the City cannot argue that they protect Intervenors' interests, and, as they suggest, government entities typically do not represent the interests of private parties. *See Wash. All. of Tech Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 21 (D.D.C. 2019); *Blankenship v. Blackwell*, 341 F. Supp. 2d 911, 918 (S.D. Ohio 2004).

The separateness of this interest – and that no party could adequately represent Intervenors' interests – highlights Intervenors' inability to show a substantial interest in the subject matter of the suit. The subject matter of the suit has nothing to do with them apart from the fact that they purport to own property in or around Urbana, Ohio. Plaintiffs' alleged rights to develop and construct on their own land *is* the issue in the *pending* case. The case is not about Intervenors like or dislike of said development and construction (data centers). It has never been.

The City rejects the proposition of Intervenors contentions of a lack of transparency. In any event, the City could not adequately represent Intervenors in that venture. Again, this merely highlights the distinct, unrelated interest between and of any party in the current suit and Intervenors' generalized claims that a lack of transparency is unbecoming. After all, one could assume that Intervenors believe that government transparency is always preferable. But that preference does not depend on the possibility of a data center more than any other topic. If the Intervenors desire to crown themselves "data center watchdogs," they are free to do so. But what the law says they cannot do is interject themselves into a case involving different issues.

**E. The Intervenors Are Not Entitled to Intervene Via Permissive Intervention.**

**1. There is No Commonality of Law or Fact.**

As noted above, Intervenors' motion is untimely. But more, while their proposed Third-Party Complaint relates to the same development at issue in this case, their claims do not "share[] a common question of law or fact' with those of the existing parties."' *Lucas Cnty. Bd. of Comm'rs*, 169 F.4th at 706 (2026). Here, the "common question[s] of law or fact" relate to Intervenors' claims of property or liberty interests and government transparency. But those alleged interests vary greatly from the alleged interests of the Plaintiffs.

As to a purported "common question of law," Intervenors contend that "whether Thor . . . actually has "vested rights" to develop its data center in Urbana" is a common question of law. (Doc. 30, PgID 316.) They argue that those rights "were improperly obtained or voidable." However, this is the issue in the State Court proceeding in which they have already intervened because they participated in the City's process that was appealed by Thor. As to a purported "common question of fact," Intervenors portend that CRA #2 was enacted to support the [data center], but that the City's support was misleading and somehow injured them. (Id.)

The determination of whether Plaintiffs [Thor, etc.] had a vested right is certainly a matter of law. Accordingly, Intervenors allege that Plaintiffs did not have a vested right – just as the City once answered – in Intervenors' attempt to find legal commonality. But as the Sixth Circuit finds, "[p]ermissive intervention cannot be interpreted so broadly." *Bay Mills Indian Cmty. v. Snyder*, 720 Fed. Appx. 754, 758 (6th 2018). It is not enough that an intervenor "simply reiterate the pleadings of that side." *Id*. By analogy, this would allow permissive intervention any time in any way a law is implicated; "it would allow any employer to intervene in any Title VII suit." *Id*. The "real issue" of the original case governs intervention, but "side effects" do not. *Id.*

Similarly, the ins and outs of "CRA #2" have no bearing upon Intervenors apart from being plucked from the pleadings in attempt to establish a "common fact." The existence or lack of

existence of CRA #2 carries no more weight to being a common fact as would Intervenors' having property within Defendant City of Urbana. Frankly, "a common question of fact does not exist simply because the [matter] is featured in both [a] motion to intervene and [the existing lawsuit]." *Kirsch v. Dean*, 733 Fed. Appx. 268, 279 (6th Cir. 2018). As to commonalities, "a proposed intervenor may not inject itself into a lawsuit under Rule 24(b) where, like here, it has no substantial legal interest in a factual or legal dispute between the parties, but instead is merely concerned that resolution of the parties' claims might have collateral consequences for the proposed intervenor's independent interests." *Id*. This is what happened here.

**2. Intervention Would Work to Prejudice Both Parties.**

Intervention is improper even if there was a common question of law or fact as it would cause undue delay and prejudice to the actual parties. *See Lucas Cnty. Bd. of Comm'rs*, 169 F.4th at 706. This Court ordered a referral to mediation on August 19, 2026. (Doc. 28.): "The Court **ORDERS** the parties to participate in good faith in the mediation conference(s)." (Id.) On September 10, 2026, the Court ordered mediation specifically to occur on September 21, 2026. (Doc. 29.) The mediation was continued to September 25, 2025. (Notation Order 09/21/2026.) Both parties participated in good faith and the parties agreed to a proposed terms of a settlement of the case to be presented to city council. (Mediation Minutes 09/25/2026.) The parties sought to settle the case because it would procure "a just, speedy, and less expensive resolution of this case[.]" (Doc. 28., PgID 301.) In the midst of it all, Intervenors filed to intervene on September 18, 2026. (Doc. 30.). If permitted, it could undo the "just, speedy, and less expensive resolution of this case."

Proposed Intervenors were "not entitled to wait and see if negotiations would have been fruitful when it had actual notice that its interests were adverse." *End-Payor Plaintiffs v. Fin.*

*Recovery Servs., LLC (In re Auto. Parts Antitrust Litig.),* 33 F.4th 894, 904 (6th Cir. 2022)(citation and internal quotations omitted). That is what they did here. As their Motion and Proposed Complaint reads, Plaintiffs are adverse because Plaintiffs represent an incoming data center. The City's interests were adverse (apparently) due to alleged lack of transparency regarding a data center. That Plaintiffs filed their Complaint in June and Intervenors allege wrongdoing dating back to 2025 merely demonstrates that their "wait and see" approach was a strategic measure as opposed to intervening in June 2026 or acting otherwise in accordance with their interests and concerns earlier than September 18, 2026. Thus, the prejudice to the parties to this action, outweighs that claimed by the Intervenors. Additionally, the Intervenors seek to introduce a Third-Party Complaint against both parties to this action, forcing the parties into effectively another suit beyond the scope of this case.

## III. CONCLUSION

In light of the above, the City respectfully requests this Honorable Court issue an order denying Intervenors' Motion to Intervene. Intervenors' claims, to the extent any exist, are untimely, separate and apart from the existing case, and would work undue prejudice on the real parties.

Respectfully submitted,

SURDYK, DOWD & TURNER CO., L.P.A.

*/s/ Dawn M. Frick*_________
Dawn M. Frick (0069068)
Justin R. Marks (0103811)
8163 Old Yankee Street, Suite C
Dayton, Ohio 45458
(937) 222-2333, (937) 222-1970 (fax)
dfrick@sdtlawyers.com
jmarks@sdtlawyers.com
*Trial Attorneys for Urbana Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, a copy of which will automatically be forwarded to the parties or their counsel of record:

*/s/ Dawn M. Frick*_________
Dawn M. Frick (0069068)