**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| THOR EQUITIES, LLC, *et al.*, | : | Case No. 3:26-cv-00196 |
| | : | |
| Plaintiffs, | : | Judge Michael J. Newman |
| | : | Magistrate Judge Caroline H. Gentry |
| v. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (Settlement) |
| CITY OF URBANA, OHIO, *et al.*, | : | |
| | : | **PROPOSED INTERVENORS'** |
| Defendants. | : | **COMBINED REPLY IN SUPPORT OF** |
| | : | **MOTION TO INTERVENE** |
| | : | |

---

Now come Intervening Plaintiffs[1], by and through undersigned counsel, and hereby submit their combined Reply in support of their Motion to Intervene [Doc. 30]. Plaintiffs Thor Equities, LLC; Urbana Owner LLC; Urbana Owner I LLC; Urbana Owner II LLC; and Highland55 Investments LLC (collectively, "Thor") and Defendants City of Urbana, Urbana City Council, and Urbana BZA (collectively, "City") have each filed respective memoranda in opposition to Intervening Plaintiffs' Motion to Intervene [Docs. 32, 33] (together, the "Opposition"). For the reasons set forth in the following Memorandum, this Court should overrule the Opposition and GRANT Intervening Plaintiffs' Motion to Intervene.

Respectfully submitted,

*<u>/s/ Austin Z. Baurichter</u>*
Austin Z. Baurichter (0104539)
BAURICHTER LAW LLC
410 White Oak Street
Georgetown, Ohio 45121
Phone: (513) 693-8565
Email: abaurichter@protonmail.com

*Counsel for Intervening Plaintiffs*

---

[1] Capitalized terms not expressly defined herein shall have that definition ascribed to them in the Motion to Intervene [Doc. 30].

**MEMORANDUM**

First and foremost, this case has not settled. Perhaps Thor and the City have arrived at a conceptual settlement, but unless and until the Urbana City Council votes to approve the City's entry into a settlement agreement with Thor, this case remains open and pending.

The City and Thor each in their Opposition manipulate the aperture of things to serve their purpose: keeping the doors of justice closed to Intervening Plaintiffs. On the one hand, both parties try to carve the issues into compartments designed to suggest that this is just about *Thor's* property rights, *Thor's* failure to get its site plan approved by the City, *Thor's* attempt to "vindicate its constitutional rights[2]." Thor's and the City's argument is that because this is *Thor's* case with the City, Intervening Plaintiffs must go elsewhere to find their rights. One imagines old Narcissus, gazing into the pond, unaware of the rest of the world around him, and the fact that actions are not taken in a vacuum, and that one billion-dollar-corporation's gain is another human being's loss.

On the other hand, the parties try to expand the frame until they finally reach the anodyne, arguing that Intervening Plaintiffs "simply object[][3]" to the data center development ideologically or that Intervening Plaintiffs only have "generalized concerns[4]" about having a data center developed in their community against their will. *Intervening Plaintiffs are just unhappy with the legislative action and should go to the ballot box*, the Opposition says. This argument is carried along the lines of the position that, somehow, legislative action that involves Thor and its alleged rights somehow does not also involve Intervening Plaintiffs and *their* rights (who are, in fact, part of the inherent political authority underlying the City). This argument, of course,

[2] [Doc. 32, PgID 762]. Indeed, if this were such a "focused dispute," why would Thor need to recite six pages of background facts in its Opposition, beginning in 2024?
[3] [Doc. 33, PgID 786].
[4] [Doc. 32, PgID 758].

divests Intervening Plaintiffs of that throughline of rights that is inherent to them[5]. If something is *just* between the City and Thor's constitutional rights, it should exclude Intervening Plaintiffs and theirs. If that argument is persuasive, it is not without its danger to Thor's position. After all, couldn't it be said that *Thor* is just unhappy with the moratorium and their site plan denial? Isn't Thor just unhappy with the legislative action, and shouldn't Thor just try to lobby votes for the ballot box? In fact, Intervening Plaintiffs basic argument is that Thor's claimed "rights" are based on fraud and deception and should not exist, and that in any event, Thor only obtained those rights in *violation* of fundamental rights of Intervening Plaintiffs, by virtue of violative conduct of both Thor and the City, together[6]. If that is not a commonality of law and fact, the undersigned would be hard-pressed to describe what is.

And what's more, Intervening Plaintiffs *have* gone to the ballot box on a citizen-initiated charter amendment effort. The electors of the City will have a chance to vote on November 3, 2026 on whether they would like to prohibit the construction of data centers like Thor's in Urbana. This will be discussed further below. Thor's and the City's race to a settlement on the very same issue that Intervening Plaintiffs and the other Urbana electors have secured for themselves the chance to vote on in November reeks of gamesmanship.

The truth is this: this case is about a pattern of conduct spanning between 2024 and 2026. Without the preceding months of conduct and legislation, Thor wouldn't even *arrive* at the site plan application that was denied. Thor's claim to vested rights would not have any legs at all without the preceding course of action: the land sale, the annexation, the PUD, the zoning, the CRA #2. By the same token, Intervening Plaintiffs allege that that *same conduct*, among other

---

[5] This is not to mention the tortious conduct of Defendants that, as alleged in Intervening Plaintiff's proposed complaint, gives independent rise to its own causes of action asserted by Intervening Plaintiffs.

[6] Recall that Thor's own words are that "Thor and the City worked together [on certain legislation] specifically to support the Project." [See, Doc. 1, PgID 11, ¶46].

things, was tortious and violative of Intervening Plaintiffs' rights. It is far more particularized than a "general dissatisfaction" with the data center development and it is also far more connected than *just* a site plan application being denied. At the heart of the issue is Thor's fundamental right to build a data center in Urbana. Can it, or can it not? Both Thor's complaint and Intervening Plaintiffs' complaint turn on that same question.

***

Intervening Plaintiffs disagree with neither the City's nor Thor's recitation of the legal framework that must be followed for this Court to authorize intervention. Intervening Plaintiffs do, of course, disagree with the City's and Thor's application of that framework to this case and the outcome that that application yields.

## I. <u>Timeliness</u>

The City's and Thor's arguments on why the Motion to Intervene is untimely boil down to two positions: (i) Intervening Plaintiffs knew or should have known about their rights sooner and therefore should have moved to intervene sooner; and (ii) that, by virtue of the mediation and putative settlement, this case is too far progressed to allow for intervention. Intervening Plaintiffs do not dispute that their intervention would increase the scope of the litigation (intervention, categorically, always exceeds the scope of the original litigation) substantially.

Regarding Intervening Plaintiffs' rights and when they knew about them, Intervening Plaintiffs moved to intervene just as soon as they could have. While it is true that as of January 2026, Intervening Plaintiffs[7] had become aware that a data center was being developed in the Urbana area[8], that is something entirely different than actual or constructive knowledge of the

[7] For clarity, Brad Winner and John B. Winner are the same person. Mr. Winner is identified by his formal name in this lawsuit.
[8] [Doc. 30-1, PgID 339, ¶141].

full-fledged legal claims set forth in Intervening Plaintiffs' proposed third-party complaint. It is legally axiomatic that allegations of fraud must be plead with particularity. Identifying and assessing the facts – especially nearly eighteen months' worth of facts – that give rise to legitimate legal claims sturdy enough to survive immediate dismissal is process that takes time. This process is made especially time-consuming considering that in this particular case the party from whom Intervening Plaintiffs were obliged to seek the facts – the City – is precisely one of the parties Intervening Plaintiffs are alleging acted fraudulently. Put more straightforwardly – it is hard to wrest the truth from one who is lying. Intervening Plaintiffs are still waiting for the City to fulfill public records requests that were submitted approximately four months ago. The fact that the City – a governing body inherently answerable to Intervening Plaintiffs – has had unique control of Intervening Plaintiffs access to the public records needed to assess whether a violation of Intervening Plaintiffs' rights occurred, has been alleged to have acted fraudulently, and is now arguing that Intervening Plaintiffs should have acted sooner is, to put it charitably, myopic.

Regarding the progression of the case, it is true that Intervening Plaintiffs moved to intervene three calendar days before the mediation started. At the time of Intervening Plaintiffs' filing, this case had not been mediated, and, according to the available record, the parties had not made "substantial progress toward resolving the claims actually presented in this action[9]." Accordingly, Intervening Plaintiffs cannot be said to have sought intervention only to "object to the settlement" of a "provisionally settled [dispute]" or to "undo settlement negotiations[10]." As stated above, but for the mediation and the putative settlement agreement, this case is in its nascency. And on the point of the putative settlement agreement, at least from the perspective of

[9] [Doc. 32, PgID 770].
[10] [Doc. 32, PgID 784].

Intervening Plaintiffs, it is not readily apparent that the putative settlement will matriculate into something dispositive. The City elected to table consideration of the settlement at its October 6, 2026 meeting and, as of the date of this filing[11], has not established a time where it will have that consideration. If the parties were truly as close to a final settlement as their Opposition suggests, the tabling of the formal entering into the agreement – which is a requirement to finalize settlement – is inapposite and suggestive of a different state of affairs.

Both the City and Thor speak of Intervening Plaintiffs' purpose in intervention. The City discusses in its purpose analysis the "known or should have known" argument that is assessed above. Thor cites *S.W. v. Lorain-Elyria Motel*, No. 2:1-cv-01194, 2020 U.S. Dist. LEXIS 259463, at *12 (S.D. Ohio Nov. 18, 2020) to advance the position that "where a court's denial of intervention does not foreclose the only means of seeking relief via declaratory action, the purposes of intervention prong will also weigh against a finding of timeliness[12]." On the surface, Thor is arguing that because Intervening Plaintiffs could theoretically seek their own, independent declaratory action on the subject[13], intervention in this action is not favored. However, considering the actual posture of this case, without intervention, Intervening Plaintiffs indeed risk foreclosure of their means of relief and if not foreclosure, at minimum an additional hurdle.

Attached as **Exhibit A** is a Memorandum of Understanding which the City and Thor, together through counsel, entered into on September 25, 2026 in connection with this case (the "MOU")[14]. The upshot, as Intervening Plaintiffs see it, of the MOU is that the City and Thor

---

[11] To the extent of Intervening Plaintiffs current knowledge and belief.
[12] [Doc. 32, PgID 770].
[13] Which proposition Intervening Plaintiffs do not disagree with.
[14] This document was obtained through public records request(s). Per correspondence from counsel for the City, the City and Thor agreed that this document could be publicly disclosed and so disclosed it. On this basis, Intervening Plaintiffs submit that any putative claims for its exclusion from being attached to this reply as an exhibit, whether

would pave the way for Thor's data center development (e.g. "The City and its staff shall review in good faith and shall not take any action to unreasonably delay or unreasonably withhold approval or acceptance of any plans, permits, plats, or other approvals necessary to zone, develop, construct, complete, or occupy the [data center] development" [See, Ex. A at ¶7]). This is a far-reaching arrangement.

Moreover, it appears as though the City and Thor have chosen a "Consent Decree" – issuing by this Court – as the vehicle for carrying these agreements through[15]. (See, Ex. A at ¶11). Should this Court enter such a Consent Decree, it would serve to place the weight of this judicial authority behind the City and Thor's arrangements to do the very thing that Intervening Plaintiffs claim have violated their rights. *At minimum*, Intervening Plaintiffs would have to contend with this extra hurdle between them and a clear opportunity to try their rights in court. Doubtless, the City and/or Thor would wield as both a sword and shield such a decree against Intervening Plaintiffs however they could in any subsequent, separate action.

In all of this, the actual relationship between the parties cannot be forgotten, and it is these relationship considerations and what is happening with data center development in the United States and Ohio in particular at this present moment that Intervening Plaintiffs argue activate the "unusual circumstances" prong of the timeliness analysis. There are three parties here, and Thor is the one odd-one out. There are the City and Intervening Plaintiffs, who form one body politic. The City, in the most important sense, is the municipal manifestation of the whim of the people as expressed through elected officials. The relationship between the City and Intervening Plaintiffs – indeed, between any governing body and its underlying electorate – is

---

based in privilege or otherwise, have been waived and further that, if and only to the extent that Fed. R. Evid. 408 applies to its submission as an exhibit to this reply, it is admissible pursuant to Fed. R. Evid. 408(b).

[15] Simultaneous with the filing of this Reply, Intervening Plaintiffs are filing a *Notice of Objection to Proposed Consent Decree* in this case.

therefore uniquely intertwined. The same cannot be said for Thor. Thor is a corporation, an entity whose constitutional identity is a construct, not inherent.

The specific unusual circumstances here are threefold: (i) the proliferation of data centers currently happening in the State of Ohio and the scale and degree of uniformity of the citizen opposition to them is an unusual context that demands to be taken into consideration in cases like this; (ii) Thor's and the City's arguments can be construed as an attempt to wedge apart the City and Intervening Plaintiffs and treat the City, from a legal standpoint, as a party that exists without any fundamental duty towards Intervening Plaintiffs; and (iii) the fact that, right this very moment, Intervening Plaintiffs and the rest of the Urbana electors are awaiting their opportunity to decide at the ballot on November 3, 2026 whether they want data centers over 7.5MW (Thor appears keen to build one many times this size).

The City says that "intense societal debates are typically decided via ballot[16]." **Attached as <u>Exhibit B</u> hereto is the ballot at which this intense societal debate will be decided in eighteen mere days.** How can the City possibly make that argument in its Opposition while at the same time being under a written understanding with Thor that would undermine that decision before it even happens? The list of charitable ways to describe this position has been exhausted.

Intervening Plaintiffs argue that the unusual circumstances in this case should be taken together by this Court to weigh heavily in favor of intervention here.

For these reasons, for this case, the Motion to Intervene was timely.

## II. <u>Standing/Legal Interest</u>

Thor's and the City's attacks on Intervening Plaintiffs' standing read much like the all-too-familiar arguments for why citizen actions like this should not be given a chance.

---

[16] [Doc. 33, PgID 786].

"Ideological differences," "transparency," and "participation interests" the City says[17]. "*No concrete, particularized injury*," Thor says, *with* the italics[18]. If one thing is transparent, it is that the City and Thor are trying hard to minimize Intervening Plaintiffs claims, but Intervening Plaintiffs' claims are bona fide. The causes of action set forth in the complaint, coupled with the preceding 197 particular factual allegations asserted set forth the concrete, particularized injury that Intervening Plaintiffs have suffered.

In addition to the constitutional and declaratory judgment claims, Intervening Plaintiffs have brought counts of fraudulent misrepresentation, reckless or negligent misrepresentation, and civil conspiracy against either or both the City and Thor. These claims, Intervening Plaintiffs submit, are supported by factual allegations that meet the elements required for these claims, and Intervening Plaintiffs have the standing to bring them.

Like Thor, Intervening Plaintiffs own property in Urbana. In fact, Intervening Plaintiffs were there *before* Thor. Like Thor, Intervening Plaintiffs allege that legislation passed is going to have an impact on their property and the bundle of rights that come with that property: namely – the development of Thor's data center. Unlike Thor, however, Intervening Plaintiffs assert that it was actually the City and Thor *working together* that served specifically to deprive Intervening Plaintiffs of their legal rights by means of affirmative misrepresentation. The fact of the matter is, as the City (ironically) acknowledges, that Intervening Plaintiffs *were* going to the meetings. They *were* participating. They still are, with their charter vote. And they were, as they allege, misled at key junctions in the development process that resulted in harm. What was the harm? Intervening Plaintiffs' ability to pursue their rights, inclusive, *at the time these events were*

[17] [Doc. 33, PgID 789].
[18] [Doc. 32, PgID 764].

*happening*. For one example, it is legally axiomatic that a legal claim has value. A person's exercise or non-exercise of legal rights is a thing of value.

Allegedly, if the City and Thor had not engaged in civil conspiracy to conceal the true nature of the burgeoning development between late 2024 and 2026, Intervening Plaintiffs could have exercised their rights in any number of ways to better protect their property interests – as they saw them – from a burgeoning data center development. They could have voted at the ballot box *sooner*. This alone could have made all the difference. They could have advocated or pursued legislation via municipal initiative. They could have identified and pursued legal rights that existed at the time. However, *they didn't even get the chance to*, because the City, working specifically with Thor, made *affirmative representations* to *Intervening Plaintiffs* that were designed to have the effect and did indeed have the effect of causing Intervening Plaintiffs to refrain from exercising those rights.

Intervening Plaintiffs were made to believe that it "could be anything" other than a data center while everyone but Intervening Plaintiffs knew it in fact was going to be nothing *but* a data center. That is tortious activity. That is not an "ideological difference." That is an intentional and malicious, coordinated effort to deprive Intervening Plaintiffs of a thing of value: their legal rights. An simple analogy to contract law lends itself here: if two parties are engaged in negotiating a contract, and party A owes party B a duty to disclose certain information, and party A omits such information, and party B goes on to rely on that omission in the negotiation to party B's detriment, then party B has a colorable claim against party A. The logic is apparent: party B was deprived by party A of the ability to negotiate fully because party A was missing information to which party A was entitled. This same logic can be applied to this case: Intervening Plaintiffs were owed a duty of the disclosure of information about what was coming into their city; and

Thor and the City worked together to deprive Intervening Plaintiffs of that information to Intervening Plaintiffs' detriment[19].

For these reasons, Intervening Plaintiffs have particular, concrete, cognizable, substantial interests in this case and the standing to claim them.

## III. <u>Common Questions of Law or Fact</u>

Regarding permissive intervention, the City and Thor both argue that Intervening Plaintiffs lack the requisite "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)[20]. Intervening Plaintiffs need only be brief to show that that is incorrect: both Thor and Intervening Plaintiffs are relying on *substantially the same set of legislative background facts*. Thor says it has vested rights due, in part, to the joint work with the City "specifically to support the Project." Intervening Plaintiffs say they have a set of violated rights, requiring judicial redress, based on *that exact same joint work* between the City and Thor. Whether Thor had its rights vested (such that it could then claim a violation thereof when the City denied the site plan and issued the moratorium) and whether the vesting of Thor's rights, such as they are alleged, as a predicate violated Intervening Plaintiffs' turn on the same factual body. That is a common question of fact. Intervening Plaintiffs only need the common question of fact, but it is also a common question of law because those facts are held up to the same assessment: how did they bear on claimed constitutional rights?[21]

Finally, in this section, Intervening Plaintiffs note that Thor argues that the City adequately represents [Intervening Plaintiffs'] interest in this action, and that because of that,

[19] On a more abstract level, it is interesting that both the City and Thor suggest that somehow because there may be a larger class of possible plaintiffs here, Intervening Plaintiffs cannot bring their own claims as a subset. Co-existence of legal claims across different parties does not perform a self-extinguishing function. [Contrast with, Doc. 33, PgID 789, 791; Doc. 32, PgID 764].

[20] [See, Doc.33, PgID 792; Doc. 32, PgID 775].

[21] And, Intervening Plaintiffs, submit, a fundamental and extremely salient question: when it comes down to it, whose constitutional rights prevail, a corporation's or citizens'?

intervention is not proper[22]. The City states that it "cannot argue that [the City] protect[s] Intervenors' interests[23]." Intervening Plaintiffs argue that the horse's mouth should have the say here: the City cannot adequately represent Intervening Plaintiffs' interests in this action. This is in addition to the arguments that Intervening Plaintiffs assert in the Motion to Intervene itself for why the City cannot.

For these reasons, even if this Court declines to permit Intervening Plaintiffs' intervention as a matter of right, it should permit their intervention.

***

For the foregoing reasons – and suffice it to say at the end of this reply – the stakes are high. Intervening Plaintiffs stand respectfully before the doors of justice, asking for their voice to be heard.

[22] [Doc. 32, PgID 774].
[23] [Doc. 33, PgID 792].

Respectfully submitted,

*/s/ Austin Z. Baurichter*
Austin Z. Baurichter (0104539)
BAURICHTER LAW LLC
410 White Oak Street
Georgetown, Ohio 45121
Phone: (513) 693-8565
Email: abaurichter@protonmail.com

*Counsel for Intervening Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of October 2026, the foregoing was filed electronically through this Court's CM/ECF system, which will automatically send a copy to counsel of record for each of the parties pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Austin Z. Baurichter*
Austin Z. Baurichter (0104539)