# EXHIBIT A

## Memorandum of Understanding

Terms of Proposed Settlement
September 25, 2026

(1) Plaintiffs to this action ("Thor") shall have the right to use the parcels described herein and identified in Complaint ¶¶ 9-13[1] ("UTH Parcels") for the Urbana Technology Hub ("UTH"), as previously defined in the City's Zoning Code as "Computing Infrastructure Providers, Data Processing, Web Hosting, and Related Services" and as set forth in Ordinance No. 4620-25.

(2) The Parties acknowledge and agree the zoning, subdivision, building, and other applicable regulations, ordinances and City processes and procedures that were in effect as of February 13, 2026 (collectively, the "Standards") govern the current and future phases of the development of the UTH Parcels. The City shall therefore apply the Standards to all future applications, plans, permits, and approvals that are necessary for the completion of current and future phases of the UTH development.

(3) Thor shall submit a site plan with a building that is similar in size to the Site Plan Application filed on February 13, 2026 ("Phase One") of the UTH. The Phase One site plan shall be deemed administratively approved provided that it contains:

a. The materials set forth in the attached Checklist attached to and incorporated herein as Exhibit 1;

b. Excludes the proposed loop road that connected Ohio Route 55 and Ohio Route 68; and

c. A landscape plan that provides reasonable buffering and screening with the inclusion of some earthen berms.

(4) Approvals for future phases of UTH that are each reasonably consistent in approximate size and dimension of Phase One shall also be administratively approved, provided that such phases:

a. Do not exceed an aggregate total of 2,000,000 sq.ft. of net floor space among the data center buildings and ancillary buildings or structures. For purposes of calculating such net floor space, power-generation, electrical, mechanical, and cooling infrastructure serving the data center shall be excluded. For the avoidance of doubt, substations, switchyards, transformers, generators, fuel-storage equipment, and heating, ventilation, air-conditioning, and cooling equipment, whether located within a building, in a separate structure, or outdoors shall be excluded from the calculation of net floor space; and

[1] Parcel Nos. K48-25-11-01-36-001-00; K48-25-11-01-37-001-00; K48-25-11-01-30-005-00; K48-25-11-01-30-006-00; and K48-25-11-01-32-005-00.

**Subject to Evid.R. 408**

b. Comply with the applicable land use regulations set forth in Chapters 1126 and 1129 of the Zoning Code (in effect as of February 13, 2026) and contains the materials set forth in Exhibit 1.

(5) Any change from the Standards concerning the size of the UTH improvements on the UTH Parcels may be considered and agreed to only by written, mutual agreement of Thor and the City Council.

(6) The parties acknowledge that the Ohio Power Siting Board is responsible for reviewing, permitting, and regulating electric utilities. To the extent the City has an opportunity to be heard by the OPSB, the City will not intentionally interfere or cause a delay in Thor seeking to have the electrical facilities necessary to receive power for its operational needs. The City shall cooperate and provide the approvals necessary, if any, for the energy infrastructure needed for the operation of the UTH development.

(7) The City and its staff, shall review in good faith and shall not take any action to unreasonably delay or unreasonably withhold approval or acceptance of any plans, permits, plats, or other approvals necessary to zone, develop, construct, complete, or occupy the UTH development.

(8) Thor agrees to enter into a Community Betterment/Development Agreement with the City on or before the date the building permit for Phase One is issued, or December 31, 2026, whichever is later. Such agreement shall include, but not be limited to, the following material terms:

a. Thor will agree to make an initial payment to the City in the amount of $5,000,000.00 within thirty (30) days of receipt of the building permit for Phase One ("Initial Payment").

b. Upon the issuance of a certificate of occupancy for each phase of the UTH development, Thor shall pay to the City within thirty (30) days of the issuance of a certificate of occupancy (each, a "COO Payment") that will total $45,000,000.00 as follows:

i. $20,000,000.00 for the certificate of occupancy for Phase One;

ii. $15,000,000.00 for the certificate of occupancy for Phase Two; and

iii. $10,000,000.00 for the certificate of occupancy for Phase Three.

c. City Council shall have the discretion to appropriate such funds for community improvement projects, necessary emergency services, and necessary City improvements.

d. Thor shall at its sole cost and expense, prior to the issuance of the building permit for Phase One, cause a comprehensive independent environmental study of the

**Subject to Evid.R. 408**

UTH Parcels and the anticipated operations thereon to be prepared and delivered to the City.

i. The study shall be performed by a qualified, licensed environmental consulting firm mutually agreed upon in writing by Thor and the City.

ii. The scope of the study shall be mutually agreed upon in writing and shall address UTH's impact, if any, on the local environment, including the Cedar Bog and the provision of electricity to the City and the City's water and sewer capacity. Including, but not limited to Thor's water usage and wastewater discharge.

iii. The completed study shall be delivered simultaneously to both parties. The City may use the study solely to assist City Council in identifying community needs and determining how the payments described in subsection (a) should be spent. The study shall be subject to Ohio's public records law set forth in R.C. 149.43. For the avoidance of doubt, Thor may designate specific material as trade secret(s), subject to the City's reasonable determination of that designation under Ohio law.

iv. The study shall be updated prior to the issuance of a building permit for each subsequent phase.

e. Thor will agree to subsidize any infrastructure improvements to the City's water and wastewater services in an amount commensurate to accommodate Thor's actual water usage and wastewater discharge.

f. An emergency management plan to address facility specific emergency response protocols.

g. A mutually agreeable decommissioning plan that includes an environmental study of Phase 1 and, if necessary, Phase 2. Any remediation that is required by such study shall be at Thor's cost.

h. The plans described within this Section 9 shall be provided for informational purposes to assist the City in evaluating community needs and determining how the payments described in subsection (a) should be spent. Unless a particular plan is independently and expressly required by the Standards, the plans shall not require City approval, establish development or operational standards, or constitute prerequisites or conditions to any permit or approval.

i. Provision of a publicly accessible website in which Thor will post relevant information regarding the development, construction and operations of the facility (non-proprietary information) with sufficient contact information for residents and property owners to pose questions and concerns to Thor.

**Subject to Evid.R. 408**

j. Agreememt that Thor will make a good faith effort to hire local residents and companies for construction labor, materials and permanent positions at the development.

(9) Thor will not seek a Community Reinvestment Area agreement for the UTH Property.

(10) Thor shall waive and release all claims for damages alleged in the Complaint.

(11) Federal litigation between the Parties to be terminated through a Consent Decree. The Parties shall endeavor to complete a settlement agreement and proposed consent decree to be approved by City Council on or before October 7, 2026. Upon entry of the Consent Decree, Thor shall dismiss the state court administrative appeal.

(12) Each party to pay its own fees and costs related to the federal litigation and the state court administrative appeal.

Date: September 25, 2026

Joseph R. Miller
Counsel for Plaintiffs

Dawn M. Frick
Counsel for Defendants

**CHECKLIST**

**REQUIRED ITEMS TO BE SUBMITTED FOR SITE PLAN REVIEW**
**Note: additional information *may be required* depending on the actual project**

- Set requirements:
  - One (1) full sized set printed
  - Electronic copy in PDF
  - Colored rendition of elevation; materials list
- Project name, scale (not to exceed 1" = 100'), north arrow
- Date the site plan is prepared
- Designer of record
- Street names and locations of all existing and proposed streets, curbs, and sidewalks within or adjacent to the proposed development. Show distance to centerline of street.
- Location of all proposed and existing buildings, fences and structures within the project area. Indicate which ones are to remain and which are to be remove
- Setbacks of all principal and accessory structures including parking areas/lots
- Square footages by use – existing and proposed (storage, office, meeting, etc.)
- Percentage of lot coverage and square footage by:
  - a) structures
  - b) recreation areas
  - c) landscaping
  - d) non-permeable surfaces (including parking areas, access aisles)
- Total number of parking spaces, including ADA regulations (existing and proposed) where required
- Signage plans including renderings, mockups, etc.
- Total landscaped area square footage (existing and proposed) where required
- Detailed landscape design plan
- Photometric plan
- All vehicle and pedestrian access points and paths
- Service plans (deliveries, refuse collection, etc.)
- Details for storage areas and/or dumpster enclosures
- For auto oriented uses only include stacking plan
- Location and size of all public utilities in and adjacent to the site, including:
  - a) Water lines and meter sizes
  - b) Sewers, manholes and cleanouts
  - c) Storm drains and catch basins
- The proposed location of:
  - a) Connection to the City water system including backflow prevention details
  - b) Connection to the City sewer system
  - c) Drainage of the site including detention or retention details
  - d) Existing swales and drainage paths
- Existing easements on the property
- Site grading plan with 1 ft contours and spot elevation as required